E-FILED
Friday, 04 February, 2022  05:51:22 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

**ORION EDDLEMON,** individually and on behalf of all others similarly situated,

         **Plaintiff,**

v.

**BRADLEY UNIVERSITY,** an Illinois not-for-profit corporation,

         **Defendant.**

**Case Number: 1:20-cv-01264-MMM-JEH**

**JURY TRIAL DEMANDED**

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND SUPPORTING MEMORANDUM OF LAW

Plaintiff Orion Eddlemon ("Plaintiff" or "Class Representative"), individually and on behalf of all others similarly situated (the "Activity Fee Class," "Course Surcharge Fee Class," and "Tuition Class", as defined herein, collectively the "Classes"), by his undersigned counsel, hereby moves this Court for an Order: (i) granting class certification under Rule 23(b)(2) and/or (b)(3), (ii) appointing the named Plaintiff as Class Representative; and (iii) appointing the undersigned counsel as Class Counsel, pursuant to Fed. R. Civ. P. 23(g). Plaintiff seeks certification of the following Classes:

> All students and former students of Bradley University who paid, or on whose behalf payment was made for tuition for on-campus classes for the Spring 2020 Semester (the "Tuition Class")

> All students and former students of Bradley University who paid, or on whose behalf payment was made, for an Activity Fee for the Spring 2020 Semester (the "Activity Fee Class")

> All students and former students of Bradley University who paid, or on whose behalf payment was made for a Course Surcharge Fee for the Spring 2020 Semester (the "Course Surcharge Class")

Collectively (the "Classes").   This Motion is supported by the following Memorandum of Points and Authorities, and the supporting exhibits, and upon such matters as may be presented to the Court at the time of any associated hearing.

## MEMORANDUM IN SUPPORT

## I.    INTRODUCTION

Plaintiff's action arises out of Defendant Bradley University's ("Bradley") decision during the Spring 2020 Semester to retain the full amount of tuition and full amount of Activity and Course Surcharge Fees paid, despite being unable to provide students, like Plaintiff, with the entire 15 weeks of in-person and on-campus educational services that they agreed to, contracted for, and paid for. See [D.E. 39], Second Amended Complaint ("SAC"). Plaintiff paid for the Spring 2020 tuition, Activity Fee, and Course Surcharge Fees in exchange for in-person and on-campus educational services, experiences, and opportunities as detailed in Bradley's marketing, advertisements, and other public representations. SAC ¶¶14-17.

In response to the COVID-19 pandemic, Bradley canceled all in-person and on-campus educational services and then transitioned to online only education. Therefore, Plaintiff and the Class did not receive the benefit and services that they bargained for when they paid Bradley tuition, the Activity Fee, and Course Surcharge Fees. Accordingly, Plaintiff properly asserts claims for breach of contract and unjust enrichment. This Court's earlier decision denying Bradley's Motion to Dismiss confirms the same. [D.E. 19]. The question today is whether the 7,000 or so students who bear the same loss as Plaintiff should be allowed to prosecute their claim in a class setting—under identical legal and factual questions.

Therefore, there are two predominant common issues at the center of this litigation.  First, did Bradley breach its contractual obligations to students like Plaintiff when Bradley closed its

campus and moved all educational services to an online-only model in reaction to the COVID-19 pandemic? Specifically, for 1 out of the 15 week Spring 2020 Semester, between March 23, 2020 through March 29, 2020, Bradley did not provide any classes (on-campus or remote) funded by tuition, or access to services/facilities (on-campus or remote) funded by the Activity and Course Surcharge Fees at all due to the COVID-19 pandemic. This week was never made up. Additionally, the remaining 6 weeks (after a 1 week shut down) of the 15 week semester were moved to a remote learning format. During this time, there were no labs available or activities provided.

Alternatively, even if Bradley did not breach a specific contractual obligation to students like Plaintiff, was Bradley nonetheless unjustly enriched by retaining all of their tuition, Activity Fees, and Course Surcharge Fees for services no longer available?

This action is ideally suited to be litigated as a class action because answering these straightforward questions will ultimately resolve Plaintiff and the putative Classes' claims. At this stage of the litigation, the Court need "not adjudicate the case; rather, [the Court must] select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013). Proceeding as a class action will undoubtedly provide the most efficient and fair method of adjudication, and there is no reason to delay that decision. Indeed, this case is tailor-made for class certification and class adjudication. It would be inefficient and a waste of judicial resources to require thousands of students to file individual lawsuits seeking the same relief and based on the same facts. The answers to the common questions regarding Bradley's liability and the method for calculating damages will be the same for all members of the Classes. *See Wal-Mart Stores, Inc. v. Dukes, et al.*, 564 U.S. 338, 350 (2011) (recognizing that a proceeding's ability to "generate common answers" is "what matters"). In addition, since Bradley has refused to—and should be ordered to—take action on grounds that

apply to every member of the Classes, declaratory and injunctive relief are also appropriate for the Classes as a whole. *Dukes*, 564 at 360 ("Rule 23(b)(2) allows class treatment when… final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."). Identifying the Classes will not be difficult in this case: it is the student accounts for the Spring 2020; nor will class notice be difficult to achieve. Plaintiff's motion for class certification and appointment of Class Representative and Class Counsel should be granted.

## II.      BACKGROUND

All of the Classes members, including Plaintiff, were charged and paid tuition for 15 full weeks of the Spring 2020 semester, mandatory Activity Fees, and mandatory Course Surcharge Fees in connection with on-campus classes at Bradley University.   SAC ¶¶ 36, 39, 52-55, 58- 61. The Spring 2020 Semester was to take place from Wednesday, January 22, 2020 through Tuesday, May 5, 2020, with a one week spring break built in. **Exhibit A** (Bradley 2193-2197). The Covid-19 pandemic hit in force and required substantial changes to be made.  On March 12, 2020, Bradley sent an email to all students, faculty and staff informing them that Bradley had decided to eliminate one week (March 23, 2020 through March 29, 2020) of the 15-week Spring 2020 Semester. SAC ¶62.  During this time, students were sent home and no on-campus or remote learning classes took place.  *Id.* The same email informed that after March 29, 2020, all on-campus classes, events, and on-campus course specific services (such as laboratories) would no longer be available and all classes would be conducted through a remote learning format for the rest of the Spring 2020 semester. *Id.* The end date of the Spring 2020 Semester did not change.  This means that the one-week suspension of instruction (March 23 through 29, 2020) was never made up.

Despite the campus shutdown, Bradley never offered its students any refund of tuition for the one week no instruction was provided, mandatory Activity Fees, or mandatory Course

Surcharge Fees despite the material change in circumstances. However, Bradley did refund students who moved out of their on-campus housing their pro-rata share of Room and Board costs. SAC ¶76. Plaintiff argues that the Tuition, Activity Fees, and Course Surcharge Fees should be treated the same as on-campus housing and dining because like those services the scheduled activities could not be engaged in and the labs could not be completed. Why should Room and Board be refunded, but not tuition, Activity Fees, and Course Surcharge Fees that were likewise not available? Bradley has no real answer for its disparate treatment of these related issues.

## III.    CLASS CLAIMS

First, Plaintiff and the class are seeking a refund equal to 6.6% of their total Spring 2020 tuition paid because Bradley shut down completely for 1 week of the 15-week semester (March 23, 2020 through March 29, 2020) and did not make up that week of instruction (6.667% x 15 weeks = 100%). Because Bradley's standard tuition rate for the Spring 2020 Semester was $17,100.00, the monetary value of the lost week of instruction equates to $1,140.57 per student. **Exhibit B** (Bradley 1876); **Exhibit C** (Orion 10-11)[1]

Damages can also be calculated under a similarly methodology for the Activity Fees and Course Surcharge Fees. Because there were no on-campus activities or on-campus courses for 7 of the 15-weeks in the Spring 2020 Semester, there were no on-campus activities or on-campus classes using laboratory or other supplies for 47% of the Semester. Thus, Plaintiff seeks a refund of 47% of the Activity Fees and Course Surcharge Fees paid for the Spring 2020 Semester. Therefore, damages equal $39.95 of the $85 Activity Fee paid by Plaintiff and the Class and 47% of any Course Surcharges paid. For example, Plaintiff paid a total of $200 in Course Surcharge Fees ($50 for Biology 250 and $150 for Biology 484). He would therefore be due a refund of $94

---

[1] Plaintiff inadvertently marked this document as confidential when it is not.

5

(47% of $200). **Exhibit C**. The Course Fees paid by other students and corresponding refund amounts would also be easily calculated by reviewing Bradley's standard form Tuition Invoices which detail each charge imposed.  (*Id*.).

## IV.  LEGAL LANDSCAPE

This case is not the first of its kind.  To the contrary, Federal Courts throughout the country have addressed class action plaintiffs seeking refunds from universities for COVID-19 related refunds for claims that are nearly identical to claims advanced here.

To begin, in the only known COVID-19 college tuition and fee refund case alleging breach of contract and unjust enrichment claims that has issued a final order for a contested motion for class certification, the Ohio Court of Claims certified the following classes under the Ohio state law equivalent of Rule 23:

> *Tuition Class*: All people who were charged for or paid tuition for students enrolled in classes at the University for the Spring 2020 semester who were denied live in-person instruction and forced to use online distance learning platforms for the remainder of the academic year.
>
> *Fee Class*: All people who were charged for or paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester.
>
> *Room and Board Class*: All people who were charged for or paid the costs of room and board (housing and meals) for students enrolled in classes at the University for the Spring 2020 semester who moved out of their on-campus housing prior to the completion of that semester because of the University's policies and announcements related to COVID-19.

*Cross v. University of Toledo*, No. 2020-00274JD, 2021 WL 1822676, at *6 (Ohio Ct.Cl. Apr. 26, 2021).

The Ohio Court held, "Where [the named plaintiff], as well as those similarly situated, are entitled to remediation for tuition … and fees are questions of law or fact common to [class representative] and those similarly situated, and, in the Court's view, [the class representative]'s

claims relate to remediation for tuition … and fees are typical of the claims of the proposed classes. The Court therefore finds that there are questions of law or fact common to members of the proposed classes …" *Id.*

Additionally, several federal courts have certified and approved class action settlements involving refunds of tuition and/or fees nearly identical to the claims at issue here.  Although these cases involve settlement classes, each of these Courts were required to find and did find that the requirements for certification pursuant to Rule 23(a) and (b) were satisfied, save manageability. *See*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Accordingly, these cases strongly support certification here as manageability is not an issue that will defeat certification.

First, on September 7, 2021, the Honorable Jose E. Martinez of the Southern District of Florida issued an Order granting final approval of a $2,400,000 common fund class action settlement to refund students' tuition and fees at Barry University.  A class of Barry University students sued for breach of contract and unjust enrichment for moving classes and services from on-campus to online during the Spring 2020 Semester. *See Marlena Rosado v. Barry University, Inc.* [D.E. 84] (S.D.F.L., Case No: 1:20-cv-03208). The Settlement Class was defined as:

> All Students who were enrolled during the Class Period as well as others who paid or were charged Tuition Fees, Room and Board Fees, Health Fees, Lab and Materials Fees, or Other Fees on behalf of such Students. Excluded from the Settlement Class is any Student who previously signed a release with Barry University relative to their enrollment, Barry University, its parents, subsidiaries, affiliates, officers and directors; and all judges assigned to this litigation and their immediate family members.

In certifying the Settlement Class under Rule 23, the Honorable Jose E. Martinez found:

> The Court previously found the requirements of Rule 23(a) and 23(b)(3) satisfied when it granted Preliminary Approval to the Settlement. [ECF No. 73]. The Court reiterates its findings, for settlement purposes only, that: (a) the Settlement Class as defined is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class; (c) the claims of the Plaintiff are typical of the claims of the Settlement Class; (d) the Class

Representative and Class Counsel will fairly and adequately protect the interests of the Settlement Class Members; (e) Plaintiff alleges that Defendant has acted on grounds that apply generally to the class; (f) the questions of law or fact common to the Settlement Class predominate over the questions affecting on individual Settlement Class Members; and (g) certification of the Settlement Class is superior to the other methods for the fair and efficient adjudication of the controversy. The Court, therefore, certifies the Settlement Class as defined in the Settlement Agreement.

*Id.*

Additionally, on September 21, 2021, the Honorable Landya McCafferty of the United States District Court for the District of New Hampshire issued an order granting final approval of a $1,250,000 class action settlement for Southern New Hampshire University students who had paid tuition and fees during the Spring 2020 semester. Again, the students alleged breach of contract and unjust enrichment for the move from on-campus classes and services to online teaching. *Briana Wright v. Southern New Hampshire University* [D.E. 37] (S.D.N.H., Case No.: 1:20-cv-00609). The Order defined the Settlement Class as:

> All students and former students [of defendant SNHU] who paid, or on whose behalf payment was made to [defendant in connection with its] Spring 2020 Semester for tuition and fees for in-person educational services, and whose tuition and fees have not been refunded.

*Id.*

The Honorable Landya McCafferty found that Rule 23(a) and (b) were satisfied to certify the class:

> Specifically, the court now finds that, for purposes of settlement only, the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of settlement class members is so numerous that joinder thereof is impracticable; (b) there are questions of law and fact common to the settlement class; (c) the claims of the class representative are typical of the claims of the settlement class members; (d) the class representative and class counsel have and will fairly and adequately represent the interests of the settlement class members; (e) the questions of law and fact common to the settlement class members predominate over any questions affectingly only individual settlement class members; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the parties' dispute.

*Id.*

On December 3, 2021, the Southern District of New York preliminarily approved a $12.5 million dollar settlement class for the refund student fees for Columbia University. [D.E. 87] *In Re Columbia University Tuition Refund Action* (S.D.N.Y. 2021, Case No.: 1:20-cv-03208)[2] *See also* (Preliminary Class Action Settlement Order, *Rocchio et al. v. Rutgers University* (Sup. Ct. of New Jersey, Middlesex County, Docket No. MID-L-003039-20)(**Exhibit D**, preliminary approval order, final approval granted January 28, 2022).

   In *Columbia*, the Class was defined as:

> All students enrolled in Columbia's Programs who were assessed Spring 2020 Fees. The Settlement Class excludes: (i) any person who withdrew from Columbia on or before March 13, 2020; (ii) any person enrolled solely in a program for the Spring 2020 semester that was always and originally delivered as an online program; (iii) any person who properly executes and files a timely opt-out request to be excluded from the Settlement Class; and (iv) the legal representatives, successors or assigns of any such excluded person.

*Id.*

The Court also found that Rule 23(a) and (b) were satisfied. *Id.*

Plaintiff's claims do not substantially differ from the claims certified in these cases, which hereinafter are collectively referred to as the "College Covid Cases". Although they were all certified for settlement purposes, they are instructive as each Court still had to find, as a matter of law, that all the requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy were established and that the common questions predominated over any individual ones. *Lucas v. Vee Pak, Inc*., 2017 WL 6733688, at *4 (N.D.Ill., 2017)("[W]hen considering certification of a settlement-only class, the Court is obligated to give "undiluted, even heightened, attention" to each requirement of Rule 23.").

---

[2] Final Approval Hearing at 3:30 p.m. on March 24, 2022.

## V.      LEGAL STANDARD

This Court has broad discretion to grant class certification. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.2d 935, 942 (2009). Federal Rule Civil Procedure 23(c)(1)(A) provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Rule 23(b)(2) requires that the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires that common questions of law and fact predominate over questions affecting only individual class members, and that a class action is "superior to other available methods of adjudicating the controversy." Fed. R.Civ. P. 23(b)(3). When assessing whether Plaintiff has met the Rule 23 requirements, the court must conduct a "rigorous analysis." *Dukes*, 564 U.S. at 351 n. 6. Moreover, although Plaintiff is confident that he, individually and on behalf of members of the Classes, will prevail on the merits, now is not the time for the court to dive into merits inquiries. *Amgen*, 568 U.S. at 466. Rather, the Court may consider merits questions "only to the extent… that they are relevant to determining whether" Plaintiff has satisfied the Rule 23 prerequisites. *Id.* at 460.

## VI.     ARGUMENT

As explained herein, Plaintiff is able to demonstrate that he meets the enumerated prerequisites of Rule 23(a) and at least one prong of Rule 23(b).

### A.      The Classes are Definite and Ascertainable

Rule 23 contains an implicit threshold that members of a class be "identifiable and ascertainable." The definition of the class must be clearly defined and its parameters based on objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). Exhibit C is

a standard Bradley University Tuition Invoice detailing the tuition paid by each student, the Activity Fees and Course Surcharge Fees imposed on Plaintiff.  These same Tuition Invoices have been used by Bradley for some time and can be used to determine class membership and damages within each of the defined classes. **Exhibit E** (Orion 9-13).  As a result, class membership is based on objective criteria and is ascertainable.

### B. The Classes Satisfy the Requirements of Rule 23(a)

Under Rule 23(a), a class action may be maintained when: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1. The Classes are Sufficiently Numerous

Rule 23(a)(1) requires that class membership be so numerous that joinder of all members is impractical. Fed. R. Civ. P. 23(a)(1); *Mullen*, 2019 U.S. Dist. LEXIS 9034, at *4. Impracticability exists where individual adjudication would take an extended period of time and joinder of all claims would be expensive, time-consuming and drastically increase the legal expense for all the parties. *In re Drexal Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir. 1992). Although the numerosity requirement does not rest on any magic number, joinder is usually deemed impracticable when the class number is forty or more. *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017). When determining numerosity, the exact number of class members does not need to be established. *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009). A finding of numerosity can be based on common sense assumptions. *Id.*

11

Rule 23(a)(1)'s numerosity standard is easily met here, just like in the other Spring 2020 College COVID cases.

Discovery has revealed that there were 7,759 students in Bradley's student database for the Spring 2020 Semester. **Exhibit F** (Bradley's First Supplemental Responses to Plaintiff's First Interrogatories #3). While Bradley has refused to provide the exact number until after the class is certified, these numbers are sufficient to meet Plaintiff's burden on numerosity.   Therefore, Plaintiff estimates that there are 7,759 students who fall within the Tuition Class.  Additionally, the Activity Fee Class consists of 4,622 student accounts that paid an Activity Fee for the Spring 2020 Semester. **Exhibit G** (Defendant's answer to Interrogatory number 6). The Course Surcharge Class consists of 2,122 student accounts that paid a Course Surcharge Fee for the Spring 2020 Semester. **Exhibit G**. The impracticability of joining even the smallest of the three classes would still entail joining more than 2,000 persons into a single case.  Thus, the numerosity requirement of Fed. R. Civ. P. 23(a)(1) is easily established.

### 2.    There are Questions of Law and Fact Common to the Class Members

Rule 23(a)(2) requires that plaintiffs seeking class certification demonstrate that class members share "common questions of law or fact." Fed. R. Civ. P. 23(a)(2). This requirement is construed permissively and is less stringent than the predominance requirement of Rule 23(b)(3). *E.g.*, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 609 (1997); *Brown v. Cameron-Brown Co.*, 93 F.R.D. 32, 37 (E.D.Va. 1981). "[E]ven a single question" will suffice. *Dukes*, 564 U.S. at 350. "What matters to class certification… is not the raising of common 'questions'—even in droves— but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (internal quotations and citations omitted).

This case centers on Bradley's misconduct, which was uniformly experienced by the entirety of each member of the Classes, raising common issues of fact and law, as set out in the SAC ¶84. All of Plaintiff's and members of the Classes' claims arise from the same common nucleus of operative facts. Here, Bradley's acts and omission affected all students enrolled in the Spring 2020 Semester and paid tuition, an Activity Fee, and/or a Course Surcharge Fee. The predominant factual and/or legal questions in this case will be resolved through common evidence. Either Bradley has the legal ability to only provide instruction for 14 weeks of a 15 week semester or it does not. Similarly, Bradley will either be able to retain the entirety of its Activity Fee or it will have to return a portion due to on-campus classes and activities being cancelled. It will also have to be determined whether Bradley had a legal duty to return the unused portions of Course Surcharges collected for labs or other supplies used in on-campus classes during the Spring 2020 semester. Either Bradley breached its contract with its students or it did not. Alternatively, either Bradley has been unjustly enriched by retaining the full amount of tuition, Activity Fees and Course Surcharge Fees without providing the full semester worth of the promised services or it wasn't.

These issues will be decided on common evidence as all students were prohibited from returning to campus. There is not a group of students who were allowed to stay on campus to engage in classes, or to participate in on-campus activities while others did not. The trial of this case will focus on Bradley's failure to provide 15 weeks of on-campus classes and services funded by the Activity and Course Surcharge Fee. Proof concerning whether or not Bradley provided 15 weeks of on-campus classes and services funded by the Activity and Course Surcharge Fee is therefore common to all members of the Classes.

Thus, Plaintiff and the proposed Classes easily meet the low-threshold requirement of commonality because common evidence can be used to determine the legal issues in the case. As the Supreme Court has explained: "'What matters to class certification ... is not the raising of common "questions"-even in droves-but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."' *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)) (emphasis in original). Here, there are common questions and corresponding common answers concerning Bradley's Spring 2020 Semester. Thus, the commonality requirement of Rule 23 is satisfied.

### 3.     Plaintiff's Claims are Typical of the other Members of the Classes' Claims

Rule 23(a)(3) requires that the claims or defenses of the class representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Typicality is met if the named representative's claims arise from the same events or course of conduct that gives rise to the putative class members' claims. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). Typical does not mean identical. *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996). Here, Plaintiff readily meets this requirement.

Typicality is satisfied here for the same reason it was found in the other College COVID Cases. First, Bradley employed a standard form tuition fee structure for the Spring 2020 semester, with $17,100 being the same amount paid for all full-time students, and all students who took more or less than full time status paid an equal amount per credit hour. **Exhibit C**. Bradley 1876 (Bradley's standard tuition and fee schedule). Additionally, each undergraduate student with 9 or more semester hours paid the same $85 Activity Fee as Plaintiff, and graduate students paid $25. **Exhibit B**. Course Surcharge Fees were not charged for every course offered at Bradley.  However,

the courses that assessed a Course Surcharge Fee are set forth separately on each student's Tuition Invoice.  **Exhibit C**. Because on-campus classes were cancelled for all students at the same time, all student class members were not provided access to on-campus Activities paid for by the Activity Fee.  All on-campus classes which included labs or other in class instruction that used supplies paid for by Course Surcharge Fees were also cancelled for all students at the same time. All Bradley students only received on-campus instruction and classes for 7 of the 15 weeks in the 2020 Spring Semester.  Since these time periods are the same for all students, including Plaintiff, the adjudication of his claims will be the same as all other class members.

The fact that Plaintiff and some other class members may have paid different amounts of tuition, Activity Fees and/or Course Surcharge Fees does not render the claims atypical because each will receive a pro-rata refund based upon the same percentage of time lost due to Bradley's on-campus closures.  *See Balderrama-Baca v. Clarence Davids & Co.,* 318 F.R.D. 603, 613 (N.D. Ill. 2017)("It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)."  This is particularly so where the calculation of damages "will be mechanical [and] formulaic, a task not for a trier of fact but for a computer program." *Starr v. Chicago Cut Steakhouse, LLC*, 75 F. Supp. 3d 859, 875 (N.D. Ill. 2014) (quoting *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 773 (7th Cir. 2013)).

As discussed previously, the tuition class damages will equal 6.67% of the total tuition paid by each student because all students received only 14 weeks of instruction for the 15-week semester.  By providing each student with a percentage refund, discrepancies in the amount paid (scholarships etc.) will be taken into consideration.  Likewise, there were no on-campus activities or on-campus classes for 7 weeks of the 15 week semester – which equates to 47%.  As a result, Plaintiff and the class members should receive a 47% refund for the time they were not able to

participate in on-campus activities funded by the Activity Fees and could not engage in the on-campus classes which required the use of supplies that were the basis for the Course Surcharge Fees (no biology labs or art classes).

Thus, Plaintiff's claims are typical of the other Class members' claims, thereby satisfying Rule 23(a)(3)'s typicality requirement as to each of the Classes.

### 4.    Plaintiff and His Counsel will Adequately Represent the Classes

Rule 23(a)(4) requires that the class representatives will fairly and adequately protect the interest of the class. Fed. R. Civ. P. 23(a)(4). To meet this requirement, representatives must be part of the class and possess the same interest and suffer the same injury as the class members. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 596 (1997). As long as the class representative and the class members interest are aligned and are free of internal conflicts the class representative will meet the adequacy requirement. *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 585 (N.D. Ill. 2018). The proposed representative plaintiff must also show that plaintiff's counsel is qualified, experienced, and able to conduct the litigation. In evaluating the adequacy of plaintiff's counsel, the court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Plaintiff has no conflicts of interest with absent Class members, and every interest and intention of prosecuting this case vigorously. To date, Plaintiff has actively participated in this litigation by providing documents in discovery and by sitting for his deposition.  He has chosen to serve as a Class Representative to ensure that all members of the Classes receive appropriate relief for Bradley's wrongful retention of amounts not earned.

Moreover, Plaintiff is represented by highly qualified counsel with extensive experience conducting class and complex litigation, particularly in breach of contract and consumer protection cases. Counsel have committed significant resources to developing the claims in this case, are committed to continuing to vigorously prosecute this action, and should be appointed to serve as Class Counsel under Fed. R. Civ. P. 23(g). **Exhibit H** (Janet Varnell Declaration).

## VII.    The Classes Satisfy Rule 23(b)(3)

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In reviewing this issue, courts consider: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. *Id.* This Court should follow the analysis of *Cross v. University of Toledo*, No. 2020-00274JD, 2021 WL 1822676, at *6 (Ohio Ct.Cl. Apr. 26, 2021) which certified a tuition and mandatory fee refund classes that are nearly identical to the Classes and fact pattern proposed herein.

### A.    Common Issues Predominate

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Plaintiff need not prove that each element of his claim is susceptible to class-wide proof, but only that common questions "predominate over any questions affecting only individual [class] members." *Amgen*, 568 U.S. at 469. If one or more

"common, aggregation-enabling, issues in a case are more prevalent or important than the non-common, aggregation-defeating, individual issues," the Class satisfies this prong of Rule 23(b). *Id.*

There are three predominant questions in this case, each turning on completely common evidence. First, whether Bradley breached its contract with its students or was unjustly enriched by retaining full tuition while only providing 14 weeks of instruction for a 15-week semester. Either Bradley is legally allowed to modify the schedule under the contract or it is not.  The determination of this legal issue will not involve any individual issues.

Second, whether Bradley has breached its contract or been unjustly enriched by retaining all of Activity Fees collected for on-campus activities but only offering these activities for 8 weeks of the 15-week 2020 Spring Semester.  Either Bradley can legally retain these funds or it cannot.  There are no circumstance in which Bradley can keep these funds while refunding others since all students were sent home on the same day and not allowed to return.  Thus, no student was able to participate in any of the on-campus activities paid for by the Activity Fee.

Third, many students, like Plaintiff, paid Course Surcharge Fees related to the classes that they were taking during the Spring 2020 Semester.  For example, Plaintiff was taking "BIO 250" which included a lab and the supplies that were to be used in that lab required him to pay a $50 Course Surcharge**;** Plaintiff also took "BIO 484" which included a lab and the supplies used in that lab required him to pay a $150 Course Surcharge Fee, bringing Plaintiff's total Course Surcharge Fees for the 2020 Spring Semester to $200. **Exhibit C**. Whether Bradley breached its contract or has been unjustly enriched by retaining all the Course Surcharge Fees despite not providing the on-campus labs or other in-class events that were paid for by the Course Surcharge Fees will likewise turn on common evidence.  Because all classes went entirely online, it does not matter

whether the supplies paid for with the Course Surcharge funds were for paint used in an art class or frogs dissected in a biology class, none of these in-class events took place during the second half of the Spring Semester.  Because all classes were done completely online, Bradley should not be allowed to retail all of those fees as the underlying reason for the fees was eliminated as a result of the online learning format that was adopted due to the Covid 19 pandemic.  As a result, common issue predominate the Course Surcharge claims and damages for all three fees will be calculated based upon a uniform formula.

Damages in this case can be calculated on a pro rata bases, as described in detail above. Under this approach, damages are "susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *See Comcast v. Behrend*, 569 U.S. 27, 35 (2013).  Thus, Rule 23(b)(3)'s predominance requirement is satisfied as to all three classes.

**B.**     **A Class Action is the Superior Procedure for Managing this Case**

Rule 23(b)(3) provides four non-exhaustive factors relevant to the superiority inquiry: (A) the class members' interests in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties in managing a class action. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014)

If predominance is satisfied under Rule 23(b)(3), then the court can generally rule that superiority is satisfied. *Beaton*, 907 F.3d 1018, 1030. In analyzing the superiority requirement, courts look to such factors as whether judicial economies will result from treatment of the case as a class action and whether minimization of overall expense and uniformity will be furthered. *See e.g., Joseph v. General Motors Corp.*, 109 F.R.D. 635, 642 (D. Colo. 1986). Manageability is

almost never a bar to class certification. *Bakov v. Consol. World Travel, Inc.*, 2019 U.S. Dist. LEXIS 46510 (N. Ill. Mar. 21, 2019).

Plaintiff and the other Class members experienced virtually identical circumstances as a result of Bradley's need to close campus and operate the college virtually.  At its core, this is a case of common factual questions with answers which will be driven by common evidence.  Courts have found that Plaintiffs satisfy Rule 23(b)(3)'s superiority requirement when they show that "classwide litigation of common issues will reduce litigation costs and promote greater efficiency," or that "no reasonable alternative exists." *Consolidated Fiberglass Prod. Co. v. Gemini Ins. Co.*, No. 09-CV-1632-H (WMC), 2011 WL 13180451, at *2 (S.D. Cal. Feb. 4, 2011).

This case involves more than 7,000 students.  Without a representative, aggregate action, the vast majority of students will likely be unable to seek individual relief because the costs of individual litigation are far greater than the relief potentially available to any individual student. *See Lee v. JNL Construction Servs., LLC*, No. RDB-17-2765, 2019 WL3869412, at *5 (D. Md. Aug. 16, 2019) ("Rule 23(b)(3) class actions are particularly well-suited for cases in which small individual recoveries would not provide plaintiffs with enough incentive to prosecute."). Leaving every student to litigate on their own would also contravene the interests of speedy and fair adjudication of the common questions presented here. *See, e.g.*, Fed. R. Civ. P. 1. A class action will allow this Court to resolve all the common questions of law and fact in one action and therefore avoid redundancy and the risk of inconsistent results.

## VIII.   The Proposed Class Also Satisfies Rule 23(b)(2)

A declaratory and injunctive relief class can be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect

to the class as a whole." Fed. R. Civ. 23(b)(2); *see also Dukes*, 131 S. Ct. at 2557 (holding that certification under Rule 23(b)(2) is appropriate "when a single injunction or declaratory judgement would provide relief to each member of the class"). As the Supreme Court has explained, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all the class members or as to none of them." *Dukes*, 131 S. Ct. at 2557 (internal quotations omitted).

Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class. *Dukes*, 131 S. Ct. at 2558 (stating that in Rule 23(b)(2) classes "[p]redominance and superiority are self-evident"). Additionally, questions of manageability and judicial economy are irrelevant to 23(b)(2) class actions. *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 758 (4th Cir. 1998), *overturned on other grounds* (citing *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1105 (5th Cir. 1993)). Rather, it is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. *See* 2 Newberg on Class Actions § 4:26 (5th ed. 2020) ("Rule 23(b)(2) authorizes certification in situations affecting the class as a whole, when 23(b)(2) circumstances are present, unitary adjudication is not only preferable, but it is also essential.").

In this case, Plaintiff and the other Class members have suffered harm based upon Bradley's uniform policies and conduct. By refusing to reimburse for the 1 week shut down and the 6 weeks on online courses and services during the Spring 2020 semester, Bradley's engaged in a uniform, wrongful practice that is generally applicable to the Class as a whole. To alleviate the harm caused by Bradley's generally applicable policy and practice, Plaintiffs, individually and on behalf of the other Class members, seek declaratory and injunctive relief, declaring that Bradley has wrongfully retained the monies that they and the other Class members paid in the form of fees,

and enjoining Bradley from retaining the prorated, unused portion of those fees. This type of "indivisible injunction benefitting all [class] members at once" conforms to Rule 23(b)(2)'s requirement that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *See Dukes*, 131 S. Ct. at 2557-58 (stating that Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant"). Rule 23(b)(2) is also satisfied in this case.

## IX.    CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court issue an Order (i) certifying the proposed Class pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, (ii) appointing the named Plaintiff as the Class Representative, and (iii) appointing the undersigned counsel as Class Counsel, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

Dated: February 4, 2022

**VARNELL & WARWICK, P.A.**

*/s/ Matthew T. Peterson*
Matthew T. Peterson, ARDC No. 6321290
Janet R. Varnell, admitted *pro hac vice*
1101 E. Cumberland Ave., Ste. 201H, #105
Tampa, Florida 33602
T: 352-753-8600
F: 352-504-3301
*mpeterson@vandwlaw.com*
*jvarnell@vandwlaw.com*
*ckoerner@vandwlaw.com*

**Counsel for Plaintiff**

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

**ORION EDDLEMON,** individually and on
behalf of all others similarly situated,

                    **Case Number: 1:20-cv-01264-MMM-JEH**

        **Plaintiff,**

**v.**                              **JURY TRIAL DEMANDED**

**BRADLEY UNIVERSITY,** an Illinois not-
for-profit corporation,

        **Defendant.**

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Matthew Peterson, certify that the memorandum in support of Plaintiff's Motion for

Class Certification complies with the type volume limitation. Microsoft Word was used and the

number of words is 6,976.

                                      */s/ Matthew T. Peterson*
                                      Matthew T. Peterson

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via electronic mail, on February 4, 2022 on all counsel of record.

/s/ Matthew T. Peterson
Matthew T. Peterson
