# Exhibit 1

Daniels, Rachel 6/12/2023
For Educational Use Only

**Cross v. University of Toledo, 199 N.E.3d 699 (2022)**
410 Ed. Law Rep. 771, 2022-Ohio-3825

🚩 **KeyCite Yellow Flag - Negative Treatment**
Distinguished by McDermott v. Ohio State University, Ohio App. 10 Dist., December 29, 2022

199 N.E.3d 699
Court of Appeals of Ohio, Tenth District, Franklin County.

Trevor CROSS, Plaintiff-Appellee,
v.
UNIVERSITY OF TOLEDO, Defendant-Appellant.

No. 21AP-279
|
Rendered on October 27, 2022

**Synopsis**
**Background:** Student brought purported class action against public university for breach of contract and unjust enrichment, alleging that, as a result of the COVID-19 pandemic, university moved all in-person classes online with no tuition refund, did not providing students with housing for the entire semester, and unjustly retained fees. The Court of Common Pleas, Franklin County, No. 2020-00274JD, Dale A. Crawford, J., 2021 WL 1822676, granted student's motion to certify classes. University appealed.

**Holdings:** The Court of Appeals, Mentel, J., held that:

[1] trial court abused its discretion by failing to perform rigorous analysis of commonality requirement;

[2] trial court abused its discretion by failing to perform rigorous analysis of predominance requirement; and

[3] trial court abused its discretion by failing to perform rigorous analysis of superiority requirement.

Reversed and remanded with instructions.

**Procedural Posture(s):** On Appeal; Motion to Certify Class.

West Headnotes (24)

[1] **Appeal and Error** ⟶ Necessity
**Appeal and Error** ⟶ Points and arguments
The Court of Appeals rules on assignments of error only, and will not address mere arguments. Ohio App. R. 16(A)(3).

[2] **Appeal and Error** ⟶ Class actions
An abuse of discretion standard applies to appellate review of a trial court's class certification ruling. Ohio Civ. R. 23.

[3] **Appeal and Error** ⟶ Class actions
Appropriateness of applying the abuse-of-discretion standard in reviewing class action determinations is grounded not in credibility assessment, but in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket. Ohio Civ. R. 23.

[4] **Parties** ⟶ In general; certification in general
Any doubts about adequate representation, potential conflicts, or class affiliation should be resolved in favor of upholding the class, subject to the trial court's authority to amend or adjust its certification order as developing circumstances demand, including the augmentation or substitution of representative parties. Ohio Civ. R. 23.

[5] **Parties** ⟶ Discretion of court
Although trial courts enjoy broad discretion in deciding whether to certify a class, such discretion is not unlimited, and indeed is bounded by and must be exercised within the

Daniels, Rachel 6/12/2023
For Educational Use Only

**Cross v. University of Toledo, 199 N.E.3d 699 (2022)**
410 Ed. Law Rep. 771, 2022-Ohio-3825

framework of rule governing class actions. Ohio Civ. R. 23.

[6]  Parties  Representative and Class Actions

A "class action" is a representative action in which a plaintiff sues a defendant on behalf of a group or class of absent persons who have suffered harm similar in kind to the named plaintiff. Ohio Civ. R. 23.

[7]  Parties  Representative and Class Actions
    Parties  Community of interest; commonality

The class action is an invention of equity, designed to facilitate adjudication of disputes involving common issues between multiple parties in a single action. Ohio Civ. R. 23.

[8]  Parties  Representative and Class Actions
    Parties  Evidence; pleadings and supplementary material

The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only; to fall within that exception, the party bringing the class action must affirmatively demonstrate compliance with the procedural rules governing class actions. Ohio Civ. R. 23.

[9]  Parties  Evidence; pleadings and supplementary material

The requirements of rule governing certification of class actions are not a mere pleading standard. Ohio Civ. R. 23(A), 23(B).

[10]  Parties  Hearing and determination

Trial court may have to probe behind the pleadings before coming to rest on the class certification question, the resolution of which involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. Ohio Civ. R. 23(A), 23(B).

[11]  Parties  Hearing and determination

To resolve class certification question, the trial court must conduct a rigorous analysis of the requirements of rule governing class actions. Ohio Civ. R. 23.

2 Cases that cite this headnote

[12]  Parties  Hearing and determination
     Parties  Students, parents, or faculty

Trial court abused its discretion by failing to perform rigorous analysis of commonality requirement for class certification, in student's purported class action against public university for breach of contract and unjust enrichment, alleging that, as a result of the COVID-19 pandemic, university moved all in-person classes online with no tuition refund, did not providing students with housing for entire semester, and unjustly retained fees; court did not identify the injury that members of each of three purported classes allegedly suffered or any common contention that a class action might resolve, but rather its only description of questions of law or fact common to members of classes was whether such members should have been entitled to remediation. Ohio Civ. R. 23(A)(2).

3 Cases that cite this headnote

[13]  Parties  Community of interest; commonality

For purposes of class certification, commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. Ohio Civ. R. 23(A)(2).

[14]  Parties  Community of interest; commonality

Daniels, Rachel 6/12/2023
For Educational Use Only

**Cross v. University of Toledo, 199 N.E.3d 699 (2022)**
410 Ed. Law Rep. 771, 2022-Ohio-3825

To satisfy commonality requirement for class certification, the class members' claims must depend upon a common contention that is of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. Ohio Civ. R. 23(A)(2).

[15] **Parties** 👉 Hearing and determination

**Parties** 👉 Students, parents, or faculty

Trial court abused its discretion by failing to perform rigorous analysis of predominance requirement for class certification, in student's purported class action against public university for breach of contract and unjust enrichment, alleging that, as a result of the COVID-19 pandemic, university moved all in-person classes online with no tuition refund, did not providing students with housing for entire semester, and unjustly retained fees; court's discussion did little more than repeat the language of class action rule, and instead of confronting the evolution of student's claims and the evidence he proposed would prove them, court reached back to the allegations as stated in the complaint. Ohio Civ. R. 23(B)(3).

2 Cases that cite this headnote

[16] **Parties** 👉 Community of interest; commonality

Requirement of rule governing class actions that the questions of law or fact common to class members predominate over any questions affecting only individual members is even more demanding than commonality requirement under rule. Ohio Civ. R. 23(A), 23(B)(3).

[17] **Parties** 👉 Community of interest; commonality

To meet the predominance requirement for class certification, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof. Ohio Civ. R. 23(B)(3).

[18] **Parties** 👉 Community of interest; commonality

**Parties** 👉 Evidence; pleadings and supplementary material

Plaintiffs in class-action suits must demonstrate that they can prove, through common evidence, that all class members were in fact injured by the defendant's actions. Ohio Civ. R. 23.

[19] **Parties** 👉 Community of interest; commonality

**Parties** 👉 Evidence; pleadings and supplementary material

Although plaintiffs at the class-certification stage need not demonstrate through common evidence the precise amount of damages incurred by each class member, they must adduce common evidence that shows all class members suffered some injury. Ohio Civ. R. 23(A), 23(B).

1 Case that cites this headnote

[20] **Parties** 👉 Factors, grounds, objections, and considerations in general

**Parties** 👉 Evidence; pleadings and supplementary material

A colorable claim does not satisfy the requirements of rule governing class actions, nor can compliance with the rule be presumed from allegations in a complaint. Ohio Civ. R. 23.

[21] **Parties** 👉 Evidence; pleadings and supplementary material

Deciding whether a claimant meets the burden for class certification under rule governing class actions requires the court to consider what will

have to be proved at trial and whether those matters can be presented by common proof. Ohio Civ. R. 23(A), 23(B).

[22]   **Parties**  Students, parents, or faculty

Trial court abused its discretion by failing to perform rigorous analysis of superiority requirement for class certification, in student's purported class action against public university for breach of contract and unjust enrichment, alleging that, as a result of the COVID-19 pandemic, university moved all in-person classes online with no tuition refund, did not providing students with housing for entire semester, and unjustly retained fees; trial court's statement that a class action would be superior given desirability of concentrating litigation of claims in forum referenced only one of four factors for analysis of predominance and superiority, and there was no question of desirability of forum because the Court of Claims had exclusive, original jurisdiction over student's claims. Ohio Rev. Code Ann. § 2743.03(A)(1); Ohio Civ. R. 23(B)(3).

1 Case that cites this headnote

[23]   **Appeal and Error**  Abuse of discretion

In reviewing for abuse of discretion, an "unreasonable decision" is one that is unsupported by a sound reasoning process.

[24]   **Courts**  Abuse of discretion in general

An "abuse of discretion" includes an unreasonable decision.

**\*702**  APPEAL from the Court of Claims of Ohio, (Ct. of Cl. No. 2020-00274JD).

**Attorneys and Law Firms**

On brief: Merriman Legando Williams & Klang, LLC, Drew Legando, Tom Merriman, and Edward S. Jerse; Cleveland, Milberg Coleman Bryson Phillips Grossman, LLP, and Jennifer Kraus-Czeisler; Evangelista Worley LLC, and James Evangelista; Fink Bressack, David H. Fink, and Nathan J. Fink, for appellee. Argued: Drew Legando.

On brief: Dave Yost, Attorney General, and Randall W. Knutti, Peter DeMarco, Columbus, Jeanna Jacobus, and Michelle Brizes, for appellant. Argued: Randall W. Knutti.

DECISION

MENTEL, J.

{¶ 1} As the COVID-19 pandemic loomed early in the Spring 2020 semester, defendant-appellant, University of Toledo ("UT"), moved all classes online, closed dormitories, and sent on-campus students home. One student, plaintiff-appellee, Trevor Cross, filed breach of contract and unjust enrichment claims against UT in the Court of Claims of Ohio on behalf of three purported classes. The trial court granted Mr. Cross's motion to certify those classes under Civ.R. 23 and UT has appealed. We have jurisdiction to review "[a]n order that determines that an action may or may not be maintained as a class action" under R.C. 2505.02(B)(5). Because our review concludes that the trial court abused its discretion by failing to perform the rigorous analysis class certification under Civ.R. 23 requires, we reverse and remand.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

{¶ 2} Spring semester classes at UT began on January 21, 2020, and final exams were scheduled to end on May 8, 2020, with on-campus students scheduled to move out of their dormitories the next day. (Compl. at ¶ 21; 2nd Am. Answer at ¶ 21.) When COVID-19 emerged, the university announced a number of responsive measures that disrupted this schedule. On March 13, 2020, UT announced that all in-person classes would be converted to online classes and that any student living on campus able to leave should do so, as "it was closing residence halls and only students with extenuating circumstances would be permitted to remain in on-campus housing." (Compl. at ¶ 26; 2nd Am. Answer at

¶ 26.) The university offered a credit of $1,230 to students who had paid for room and board and a meal plan but did not offer any refund or credit for tuition or other fees. (2nd Am. Answer at ¶ 3, 28.)

{¶ 3} Mr. Cross, a "finance and professional sales major" who had paid tuition, room and board, and "fees for the entire Spring 2020 semester," was living on-campus when UT converted all classes online and shut the residence halls. (Compl. at ¶ 9-12.) He moved back home after the university's announcement. *Id.* On April *703 28, 2020, Mr. Cross filed suit against UT, purporting to represent the following three classes of students:

> **Tuition Class**: All people who were charged for or paid tuition for students enrolled in classes at the University for the Spring 2020 semester who were denied live in-person instruction and forced to use online distance learning platforms for the last quarter of the 2019-2020 academic year (the "Tuition Class").
>
> **Room and Board Class**: All people who were charged for or paid the costs of room and board (housing and meals) for students enrolled in classes at the University for the Spring 2020 semester who moved out of their on-campus housing prior to the completion of that semester because of the University's policies and announcements related to COVID-19 (the "Room and Board Class").
>
> **Fee Class**: All people who were charged for or paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester (the "Fee Class").

*Id.* at ¶ 47.

{¶ 4} In a section captioned "Class Action Allegations," the complaint described how Mr. Cross aimed to satisfy the requirements of Civ.R. 23. The impracticable joinder of all individual student class members satisfied the numerosity requirement of Civ.R. 23(A)(1), and the "precise number of members" could "be ascertained from the University's records." *Id.* at ¶ 50. The complaint listed a number of common questions of law or fact, as required by Civ.R. 23(A)(2), including: "[w]hether there is a difference in value between online distance learning and live in-person instruction;" whether UT's retention of "the difference between the value of one half a semester of online distance learning and one half a semester of live in-person instruction" amounted to unjust enrichment or a breach of UT's contracts with the students; whether UT breached its contracts with students by not refunding "the full prorated amount of housing expenses" to students who only lived on campus for a portion of the semester; whether retaining those payments amounted to unjust enrichment; and whether the failure to refund fees and retain them amounted to a breach of contract or unjust enrichment. *Id.* at ¶ 51. Mr. Cross also alleged that his claims were typical of the classes he described, as required by Civ.R. 23(A)(3), and that he would adequately represent the class members when litigating those claims, as required by Civ.R. 23(A)(4). *Id.* at ¶ 52-53.

{¶ 5} As to the claims themselves, Mr. Cross's complaint asserted three breach of contract claims and three unjust enrichment claims on behalf of each class. For the Tuition Class, the breach of contract claim alleged that UT breached its contract with students by moving all in-person classes online with no tuition refund, causing them to be "deprived of the value of the services the tuition was intended to cover - live in-person instruction in brick and mortar classrooms - while the University retained those fees and refused to reduce outstanding charges." *Id.* at ¶ 60-61. Thus, he alleged that he and other class members were entitled to both "a refund and a commensurate reduction in outstanding charges," as well as the "equitable remedy" of "disgorgement of the difference between the value of one half a semester of online learning versus the value of one half a semester of live in-person instruction in brick and mortar classrooms." *Id.* at ¶ 62-63. Mr. Cross alleged that UT unjustly enriched itself to the detriment of the Tuition Class by retaining charges "for live in-person instruction in *704 brick and mortar classrooms without providing the services for which those funds were to be paid." *Id.* at ¶ 80.

{¶ 6} The complaint also alleged that UT breached its contract with the Room and Board Class by not providing class members with the "housing for the entire semester" that they had paid for, and they were therefore "entitled to a reduction in outstanding charges or a refund." *Id.* at ¶ 67. UT also allegedly enriched itself to the detriment of the Room and Board Class "by refusing to refund the amounts" class members paid, entitling them to "the full prorated unused amounts charged * * * for their housing and meal expenses." *Id.* at ¶ 84.

{¶ 7} The Fee Class was entitled to "disgorgement of the prorated, unused amounts of fees already charged and

Daniels, Rachel 6/12/2023
For Educational Use Only

**Cross v. University of Toledo, 199 N.E.3d 699 (2022)**
410 Ed. Law Rep. 771, 2022-Ohio-3825

collected" for services never provided to class members, Mr. Cross alleged, as a remedy for UT's alleged breach of contract. *Id.* at ¶ 73-76. He also asserted that the Fee Class was entitled to the same remedy for after UT "stopped providing the services these fees were intended to cover" and unjustly retained the fees paid by the class. *Id.* at ¶ 89-91.

{¶ 8} In sum, Mr. Cross sought as relief for himself and other class members the following: "a reduction in outstanding charges and a partial refund of tuition representing the difference in value of a half semester of live in-person instruction versus the value of a half semester of online distance learning; a reduction in outstanding charges and the return of the unused portion of room and board costs proportionate to the amount of time that remained in the Spring 2020 semester when students were forced to move out of their on-campus housing; and, a reduction in outstanding charges and the full refund of the unused portion of each meal contract and a refund of a prorated share of fees." *Id.* at ¶ 29.

{¶ 9} Two days before a scheduled hearing on the issue, Mr. Cross filed a motion for class certification supported by an expert report prepared by Ted Tatos, an economist and statistician. (Jan. 6, 2021 Pl.'s Mot. for Class Certification.) With regard to the Tuition Class and the breach of contract and unjust enrichment claims asserted on its behalf, Mr. Cross's motion presented a different theory than that stated in the complaint, based on the purported deficiency of what he described as "emergency remote instruction:"

> The University provided students with no refund whatsoever for tuition. The University's position is that students still received instruction, albeit by other means. Cross's position is that he did not receive the benefit of his bargain, which was to enroll in classes that would be conducted in-person, and he intends to show (through expert testimony) that he should have been charged less for the substitute emergency remote instruction the University did offer.

*Id.* at 4.

{¶ 10} The conversion to emergency remote instruction ("ERT") "meant faculty had just a week to convert their coursework and method of instruction to remote learning," Mr. Cross argued. *Id.* at 5. He further explained:

> The ERT used by the University during the pandemic should not be confused with traditional online instruction, which is carefully planned, deliberately designed, and executed by teachers well-versed in technology-driven educational delivery. Indeed, an instructor of a traditional online course typically prepares for eight weeks. *See* Exhibit 1, Expert Report of Ted Tatos, ¶ 34. Moreover, and as set forth in some detail in the Tatos Report, there is substantial and ***705** burgeoning literature about the differences, including their value in the marketplace, between ERT on the one hand and in-person and traditional online instruction on the other.

{¶ 11} Thus, Mr. Cross argued, the "numerous common questions" of law and fact under Civ.R. 23(A)(2) that Tuition Class members shared included "[w]hether there is a difference in value between ERT and in-person instruction" and "[w]hether UT breached [its contracts with class members] by retaining the portion of their tuition representing the difference in value of one half a semester of Emergency Remote Teaching and one half a semester of live in-person instruction in brick and mortar classrooms," and whether such retention unjustly enriched UT. *Id.* at 10. He also argued that these commonalities predominated "over any relevant individual issues," as required to satisfy Civ.R. 23(B)(3), because liability under the "common contract" between UT and its students "would be determinative as to liability for all Tuition Class and Fee Class members," as well as for Room and Board Class Members. *Id.* at 13-14. In Mr. Cross's view, "[n]o reason exists for thousands of UT students to

Daniels, Rachel 6/12/2023
For Educational Use Only

**Cross v. University of Toledo, 199 N.E.3d 699 (2022)**
410 Ed. Law Rep. 771, 2022-Ohio-3825

individually pursue breach of contract and unjust enrichment claims when the members of the Classes were all subject to the identical conduct by the same defendant." *Id.* at 14. In addition, Mr. Cross cited three mathematical formulas in Mr. Tatos's report applicable to each class, asserting that "a common formula for determining [class members'] potential damages and method for providing a refund is possible." *Id.* at 15. Finally, Mr. Cross argued, a class action would be superior to other potential avenues of litigation, as Civ.R. 23(B)(3) required, because it was "not feasible for class members to file and litigate their own small dollar cases," no other parallel litigation had already commenced, the Court of Claims was the only court with jurisdiction over the claims, and the case was "manageable as a class action due to the common proof and liability issues" he had identified. *Id.* at 16-17.

{¶ 12} At the class certification hearing, UT's attorney expressed consternation that the expert report had "found its way to us" only the day before. (Jan. 8, 2021 Tr. at 25.) While the trial court agreed that it was "obnoxious" to disclose the report "the night before," it cautioned against UT's attempts to criticize its contents because "this hearing is not dealing with that report." *Id.* at 26. When UT attempted to question one of its witnesses, Claire Stuve, UT's Director of Curriculum, on her disagreement with Mr. Tatos's assumptions and methodology, the trial court interrupted, stating that the questioning was "getting to the merits of the issue of damages." *Id.* at 53. UT's attorney protested that he was "responding to the motion, and * * * to the expert report that is attached to that motion," but the trial court stressed that the report was "not in evidence" and shut down the questioning: "You're done." *Id.* at 53-54. When UT's attorney attempted to question UT's provost about whether the "allegation * * * in this case that the professors did not have adequate time to prepare an online course and only had a matter of days" and whether that "amount of time * * * was adequate," the trial court again shut down the questioning: "we're not dealing with the merits in the case, and that's what you're doing right now." *Id.* at 93-94.

{¶ 13} Mr. Cross presented no witnesses at the hearing. *Id.* at 30. His attorney asserted that "[t]he facts on which the Court can determine whether Rule 23(a) is satisfied are undisputed." *Id.* At the same time, however, he also "ask[ed] the Court to consider those portions of the expert report that are relevant to class certification, **\*706** which are those very few portions which we reference by citation in the body of the motion." *Id.* at 114. The trial ordered Mr. Cross's attorney to "extricate" the relevant information from the expert report and submit it "as a declaration," after which UT would have five days to respond to Mr. Cross's motion for class certification. *Id.* at 118.

{¶ 14} UT's memorandum opposing class certification asserted that Mr. Cross's claim that all Tuition Class members suffered a common injury was "speculative," and that at the class certification stage, "[c]ourts are required to address the merits * * * when merits issues overlap with certification issues." (Jan. 29, 2021 Memo in Opp. at 3-5.) UT criticized many aspects of Mr. Tatos's methodology and assumptions and characterized his "opinion that [ERT] is 'substandard' " as relying "solely on hearsay contained in a four-page-long emagazine article, four intra-university guidelines written by unknown authors (none from UT), and a 'message' he says came from a Harvard dean." *Id.* at 5-6. UT pointed that Mr. Tatos had "never tested" his assumption that "the relationship between instructors' preparation time and the quality of their students' education is 'linear.' " *Id.* at 6. UT also asserted that the proposed Tuition Class failed to meet the commonality requirement of Civ.R. 23(A) or the predominance and superiority requirements of Rule 23(B)(3) because the claims involved actions by "numerous decision makers:" "Mr. Cross and his would-be tuition class members have * * * little in common because they enrolled in different courses with different instructors who converted from in-person instruction to online instruction in different ways." *Id.* at 7, 9.

{¶ 15} The trial court granted Mr. Cross's motion for certification. (Apr. 26, 2021 Decision at 10.) Its decision stated the following as the salient facts relevant to the issue of class certification:

> There is no dispute that UT students were not provided a refund for tuition and fees during the period at issue, as UT has admitted that UT students were not provided a refund for tuition and fees. (Second Amended Answer, ¶ 28.) And the evidence shows that UT students pay the same tuition for in-person and online classes, except there is a $25 fee for online courses (according to testimony presented during the evidentiary hearing).
>
> UT denies, however, that UT students were not provided a refund for room and board and meal plan. [*sic*] (Second Amended Answer, ¶ 28.) UT asserts that it offered a credit

Daniels, Rachel 6/12/2023
For Educational Use Only

**Cross v. University of Toledo, 199 N.E.3d 699 (2022)**
410 Ed. Law Rep. 771, 2022-Ohio-3825

> of up to $1,230 for students who lived in the residence halls and had a meal plan. (Second Amended Answer, ¶ 3.)
>
> Cross alleges that he was enrolled at UT for the Spring 2020 semester and lived in university housing. (Complaint, ¶ 10.) UT admits that Cross was enrolled at UT for Spring 2020 semester and that Cross lived in university housing. (Second Amended Answer, ¶ 10.) Cross further alleges that, except for a portion of his education that was paid with scholarships, the remaining balance of his cost for tuition, room, board, and fees for the Spring 2020 semester was paid by him and his family on an out-of-pocket basis. (Complaint, ¶ 10.)

*Id.* at 7-8.

{¶ 16} The following constituted the entirety of the trial court's application of Civ.R. 23 and analysis of the certification issue:

> Based on the submitted evidence the Court finds that joinder of all members of the proposed classes is impracticable due to, among other things, the number of students who have been affected by **\*707** UT's response to the COVID-19 pandemic, judicial economy, and potential requests for relief that would involve future class members.
>
> * * *
>
> The Court finds that Cross, as the named representative, is a member of the proposed three classes. Based on the evidence submitted the Court finds that it has no reason to doubt that Cross will fairly and adequately protect the interests of the proposed classes.
>
> Whether Cross, as well as those similarly situated, are entitled to remediation for tuition, room and board costs, and fees are questions of law or fact common to Cross and those similarly situated, and, in the Court's view, Cross's claims relative to remediation for tuition, room and board costs, and fees are typical of the claims of the proposed classes. The Court therefore finds that there are questions of law or fact common to members of the proposed classes and the Court finds that the claims relative to remediation for tuition, room and board costs, and fees are typical of the proposed classes. * * *
>
> The Court further finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, especially given the desirability of concentrating the litigation of the claims in this forum. * * *
>
> In sum, the Court determines that Cross has satisfied requirements for class certification by a preponderance of the evidence. A class action would achieve economies of time, expense and effort, as well as promote a uniformity of decisions relative to similarly situated persons.

(Citations omitted.) *Id.* at 7-9.

{¶ 17} The trial court made no alteration to the definitions proposed by Mr. Cross before certifying them. *Id.* at 10.

**II. ASSIGNMENT OF ERROR**

{¶ 18} UT timely appealed from the trial court's order and states the following as its single assignment of error:

> The Court of Claims erred by certifying three separate classes, each of which contains numerous members who have sustained no injury at all. It did so without considering (a) Trevor Cross's own expert's statistical model in support of the argument that the existence of damages can be proven through class-wide evidence "in one stroke"; (b) the University of Toledo's two expert opinions debunking that model; (c) the testimony of any witness who appeared at the court's evidentiary hearing on class certification, in particular the testimony of Claire Stuve, who was the only class member to testify and who sustained no injury; and (d) the reasoning of multiple United States and Ohio Supreme Court decisions that preclude the certification of each class.

Daniels, Rachel 6/12/2023
For Educational Use Only

**Cross v. University of Toledo, 199 N.E.3d 699 (2022)**
410 Ed. Law Rep. 771, 2022-Ohio-3825

(July 7, 2021 Corrected Brief of Defendant-Appellant University of Toledo, hereinafter "Appellant's Brief," at vi.)

 **[1]**  {¶ 19} In this unwieldy formulation, UT incorporates the "statement of the issues presented for review" and portions of the "argument[s] containing the contentions of the appellant" into its "statement of the assignments of error presented for review," in spite of App.R. 16(A) 's requirement that each be presented separately. See *Grand Valley Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Eng., Inc.*, 10th Dist., 2016-Ohio-716, 48 N.E.3d 626, ¶ 9 (noting that **\*708** an appellant's "purported assignments of error are framed as legal propositions," and that such propositions "would be more properly presented in the statement of issues" for the assignment of error to conform with App.R. 16(A)). The criticism is not mere pedantry because "this court rules on assignments of error only, and will not address mere arguments." *Ellinger v. Ho*, 10th Dist. No. 08AP-1079, 2010-Ohio-553, 2010 WL 596978, ¶ 70, citing *In re Estate of Taris*, 10th Dist. No. 04AP-1264, 2005-Ohio-1516, 2005 WL 736627, ¶ 5. For this reason, our ruling on UT's assignment of error should not be read to endorse every legal argument stated in UT's assignment of error, as it will only address the "place in the record" it specifies: the trial court's decision granting Mr. Cross's motion for class certification. App.R. 16(A)(3).

### III. STANDARD OF REVIEW

 **[2]** **[3]** **[4]** **[5]**  {¶ 20} An abuse of discretion standard applies to appellate review of a trial court's class certification ruling under Civ.R. 23. *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987), syllabus. A trial court abuses its discretion if its ruling is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "[T]he appropriateness of applying the abuse-of-discretion standard in reviewing class action determinations is grounded not in credibility assessment, but in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket." *Hamilton v. Ohio Savs. Bank*, 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998). Thus, "any doubts about adequate representation, potential conflicts, or class affiliation should be resolved in favor of upholding the class, subject to the trial court's authority to amend or adjust its certification order as developing circumstances demand, including the augmentation or substitution of representative parties." *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 487, 727 N.E.2d 1265 (2000). Although trial courts enjoy "broad discretion in deciding whether to certify a class," such discretion "is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23." *Hamilton* at 70, 694 N.E.2d 442.

### IV. ANALYSIS

 **[6]** **[7]** **[8]**  {¶ 21} "A class action is a representative action in which a plaintiff sues a defendant on behalf of a group or class of absent persons who have suffered harm similar in kind to the named plaintiff." *Paul Cheatham I.R.A. v. Huntington Natl. Bank*, 157 Ohio St.3d 358, 2019-Ohio-3342, 137 N.E.3d 45, ¶ 37. "The class action is an invention of equity, designed to facilitate adjudication of disputes involving common issues between multiple parties in a single action." *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho*, 52 Ohio St.3d 56, 62, 556 N.E.2d 157 (1990), citing 7A Wright, Miller & Kane, *Federal Practice & Procedure*, Section 1751 (1986). The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). "To fall within that exception, the party bringing the class action must affirmatively demonstrate compliance with the procedural rules governing class actions." *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.3d 1224, ¶ 25. See also *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 15 (stating that "a party seeking certification pursuant to Civ.R. 23 bears the burden of demonstrating by a preponderance of the evidence that the **\*709** proposed class meets each of the requirements set forth in the rule").

{¶ 22} "The procedural aspects of class-action litigation in Ohio are controlled by Fed.R.Civ.P. 23 and Civ.R. 23, depending on whether the matter proceeds in a federal or state court in Ohio." *Felix* at ¶ 24. The Supreme Court of Ohio has endorsed consulting "federal law interpreting the federal rule" as "appropriate and persuasive authority in interpreting" Civ.R. 23. *Id.* Under Civil Rule 23(A), there are four prerequisites to class certification:

Daniels, Rachel 6/12/2023
For Educational Use Only

**Cross v. University of Toledo, 199 N.E.3d 699 (2022)**
410 Ed. Law Rep. 771, 2022-Ohio-3825

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable,
>
> (2) there are questions of law or fact common to the class,
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

{¶ 23} In addition, the movant must show that the purported class actions satisfy at least one of the three requirements of Civ.R. 23(B). Relevant here is the Civ.R. 23(B)(3) action, which a court may certify only if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The rule provides four examples of "matters pertinent to these findings" for the trial court to consider:

> (a) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (b) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (d) the likely difficulties in managing a class action.

Civ.R. 23(B)(3).

 [9]  [10]  [11] {¶ 24} The requirements of the rule are "not 'a mere pleading standard.' " *Felix* at ¶ 26, quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). Thus, the trial court may have "to probe behind the pleadings before coming to rest on the certification question," the resolution of which "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart* at 350-51, 131 S.Ct. 2541, quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160-61, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). To resolve the certification question, the trial court must conduct a "rigorous analysis" of the Civ.R. 23 requirements. *Hamilton* at 70, 694 N.E.2d 442 ("The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied.").

{¶ 25} UT argues that "the trial court confused the existence or non-existence of class-wide damages with the 'merits' " of Mr. Cross's action, and, by doing so, "overlooked" three of the "most important U.S. and Ohio Supreme Court decisions concerning class certification:" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013), and *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.3d 1224. (Appellant's Brief at 14.) According to UT, **\*710** the "rigorous analysis" a trial court must undertake in order to decide questions of commonality and predominance under Civ.R. 23 require some inquiry into the "merits" of a claim. *Id.* at 15-16. Describing Mr. Cross's Tuition Class as "involving the decision-making of thousands of different instructors," UT compares it to the unsuccessful employment discrimination class in *Wal-Mart*, which failed the commonality requirement because evidence could not show that thousands of workers who held different jobs under different managers suffered the same injury. *Id.* at 17-18. UT also criticizes the trial court for failing to "address or even mention" the declaration of Mr. Cross's expert, Mr. Tatos, the "sole basis for proving class-wide damages through a common methodology." *Id.* at 21. In UT's estimation, Mr. Tatos's theory is "pure speculation," based on hearsay, and soundly contradicted by its own economic experts. *Id.* at 22-26. Mr. Cross's claims require "proof of individual damages," UT argues, because they are in essence educational malpractice claims clothed as breach of contract claims. *Id.* at 27-30. UT claims that Mr. Cross "has offered no evidence that the refund" of room and board UT provided to students after this litigation commenced "did not give the students Mr. Cross purports to represent exactly—or nearly exactly—what they wanted." *Id.* at 31. Because Mr. Cross has conceded that Mr. Tatos's damages methodology only applies to the Tuition Class, UT believes that he "has offered no just and reasonable common methodology for determining room-and-board or fee damages on a class-wide basis." *Id.*

Daniels, Rachel 6/12/2023
For Educational Use Only

**Cross v. University of Toledo, 199 N.E.3d 699 (2022)**
410 Ed. Law Rep. 771, 2022-Ohio-3825

{¶ 26} Mr. Cross states in response that UT has failed to demonstrate that the trial court abused its discretion when granting his motion for class certification. (Brief of the Appellee Plaintiff Trevor Cross, hereinafter "Appellee's Brief," at 12.) He argues that the trial court "conducted the 'rigorous analysis' " required because it "articulated its decision on each of the certification elements," citing portions of the trial court's decision that correspond to the relevant prongs of Civ.R. 23. *Id.* at 16. According to Mr. Cross, UT has failed to demonstrate that the trial court erred when certifying the Room and Board Class or the Fee Class, each of which involve only "straightforward claims for pro-rata contractual damages arising from the closure of housing, meal and other campus services." *Id.* at 17. He also describes Mr. Tatos's report as "irrelevant" to the issue of class certification because the trial court did not read the report or rely on its methodology, and in fact "did not reference the expert, his report, or any of his opinions in [the] certification order." *Id.* at 18. Mr. Cross asserts that it was reasonable for the trial court "to certify classes based on the common issue of liability" for breach of an implied contract, "which predominates over any individual issues" concerning damages. *Id.* at 19. Finally, Mr. Cross argues that the trial court properly certified the Tuition Class based on "a rational economic model" that could value the "difference" between in-person or standard online instruction and ERT, and, for purposes of class certification, it is enough to have "proposed a reasonable model to value damages on a class-wide basis." *Id.* at 21-22.

{¶ 27} As a preliminary matter, we note that UT's appeal presents no argument challenging the trial court court's Civ.R. 23(A)(1), (3), or (4) rulings on numerosity, typicality, or Mr. Cross's ability to fairly and adequately represent the classes. Nor did UT contest Mr. Cross's arguments on the Civ.R. 23(A) (1), (3), or (4) prongs when opposing his motion for class certification in the trial court. (*See* Jan. 29, 2021 Memo in Opp.) Consequently, UT has waived any **\*711** challenge to those portions of the trial court's certification order and we will not address them in our analysis. *See Reed Estate v. Hadley*, 4th Dist. No. 06CA14, 2007-Ohio-5462, 2007 WL 2965622, ¶ 2 (affirming trial court's certification of class where appellants had failed to argue against ruling under Civ.R. 23(B)(2) before the trial court, resulting in waiver); *Sueoka v. United States*, 101 F.App'x 649, 653 (9th Cir. 2004) (holding that cross-appellant had "waived any opposition" to trial court's ruling on commonality because its appeal failed to challenge trial court's Fed.R.Civ.P. 23(a)(2) determination).

Because Mr. Cross fulfilled his burden to present evidence in support of the Civ.R. 23(A)(1), (3), and (4) requirements with an affidavit and reference to undisputed facts, there is no basis for disturbing the trial court's ruling on them without any affirmative challenge from UT. *Cullen*, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 15 (movant under Civ.R. 23 "bears the burden of demonstrating by a preponderance of the evidence" that requirements for class certification are met). *See also Hadley* at ¶ 2 (affirming certification of particular classes supported by evidence introduced by appellee but reversing classes trial court had erroneously certified without any evidence introduced to support ruling). Consequently, our review of the trial court's decision will be limited to its conclusions that Mr. Cross satisfied the requirements of Civ.R. 23(A)(2) and (B) (3).

[12] [13] [14] {¶ 28} Civ.R. 23(A)(2) demands commonality: the existence of "questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' " *Wal-Mart*, 564 U.S. 338 at 349-50, 131 S.Ct. 2541, 180 L.Ed.2d 374. The class members' claims must "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350, 131 S.Ct. 2541. Here, however, the trial court did not identify the injury that members of each class allegedly suffered or any common contention that a class action might resolve. Its only description of the questions of law or fact common to the members of all three of Mr. Cross's purported classes was whether such members should be "entitled to remediation:"

> Whether Cross, as well as those similarly situated, are entitled to remediation for tuition, room and board costs, and fees are questions of law or fact common to Cross and those similarly situated, and, in the Court's view, Cross's claims relative to remediation for tuition, room and board costs, and fees are typical of the claims of the proposed classes. The Court therefore finds that there are

questions of law or fact common to members of the proposed classes and the Court finds that the claims relative to remediation for tuition, room and board costs, and fees are typical of the proposed classes.

(Apr. 26, 2021 Decision at 8.)

{¶ 29} As an analysis of commonality, the trial court's statement merely identifies an element common to all litigation: whether the plaintiff is entitled to a remedy. Apart from that self-evident observation, the trial court's circular reasoning simply repeats the language of Civ.R. 23(A), offering it as both premise and conclusion. It fails to identify a single question of law or fact raised by Mr. Cross's claims, much less describe any element of commonality that makes a class action the ideal method for resolution.

[15] [16] {¶ 30} The trial court's sole statement concerning predominance is *712 even less rigorous, in spite of the fact that the Civ.R. 23(B)(3) requirement "is even more demanding" than commonality under Civ.R. 23(A). *Comcast*, 569 U.S. 27, 34, 133 S.Ct. 1426 (interpreting Fed.R.Civ.P. 23(b)(3), the federal counterpart to Civ.R. 23(B)(3)). The predominance discussion should build upon the identified "questions of law or fact common to the class" under Civ.R. 23(A)(2), requiring an analysis of how those questions "predominate over any questions affecting only individual members" before moving on to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Civ.R. 23(B)(3).

{¶ 31} Again, however, the trial court's discussion does little more than repeat the language of the rule:

> The Court further finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, especially given the desirability of concentrating the litigation of the claims in this forum.

(Apr. 26, 2021 Decision at 8.)

[17] [18] [19] {¶ 32} Civ.R. 23(B)(3) requires more than a bare assertion that a court "finds" predominance satisfied. " 'To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof.' " *Cullen*, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 30, quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012). One such issue is that of liability:

> Plaintiffs in class-action suits must demonstrate that they can prove, through common evidence, that all class members were in fact injured by the defendant's actions. Although plaintiffs at the class-certification stage need not demonstrate through common evidence the precise amount of damages incurred by each class member, they must adduce common evidence that shows all class members suffered some injury.

(Internal citations omitted.) *Felix*, 2015-Ohio-3430, 49 N.E.3d 1224, ¶ 33.

{¶ 33} The foregoing quotation is essentially the definition of commonality as stated in *Wal-Mart*, but is a necessary precursor to *Felix*'s explanation of how the predominance inquiry must address injury and damages: "The inquiry into whether there is damage-in-fact is distinct from the inquiry into actual damages: the '[f]act of damage pertains to the existence of injury, as a predicate to liability; actual damages involves the quantum of injury, and relate to the appropriate measure of individual relief.' " *Felix* at ¶ 34, quoting *Martino v. McDonald's Sys., Inc.*, 86 F.R.D. 145, 147 (N.D. Ill. 1980). *Felix* further explained the predominance inquiry by extensively quoting from *Gonzales v. Comcast Corp.*,

Daniels, Rachel 6/12/2023
For Educational Use Only

**Cross v. University of Toledo, 199 N.E.3d 699 (2022)**
410 Ed. Law Rep. 771, 2022-Ohio-3825

E.D.Cal. No. 10-cv-01010-LJO-BAM, 2012 WL 10621, at *18 (Jan. 3, 2012):

> When evaluating damages in the predominance inquiry, "[t]he *amount* of damages is invariably an individual question and does not defeat class action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th cir.1975) (emphasis added); *see also Negrete v. Allianz Life Ins. Co. of North America*, 238 F.R.D. 482 (C.D. Cal. 2002[2006]). While determining the *amount* of damages does not defeat the predominance inquiry, a proposed class action requiring the court to determine individualized *fact* of damages does not meet the predominance standards of Rule 23(b)(3). *See* **\*713** *In re Live Antitrust Litigation*, 247 F.R.D. 98 (C.D. Cal. 2007) (recognizing the distinction between demonstrating the fact of damages and the amount of damages, and determining that while the latter does not preclude class certification, the former does.); *Catlin v. Washington Energy Co.*, 791 F.2d 1343, 1350 (9th Cir. 1986) ("[T]he requirement that plaintiff prove 'both the fact of damage and the amount of damage ... are two separate proofs.' ")

*Id.*

{¶ 34} These principles illustrate that a trial court analyzing predominance under Civ.R. 23(B)(3) must identify the plaintiff's theory of injury and explain how it will be proved in order to conduct the rigorous analysis the rule requires. For example, in Mr. Cross's breach of contract claims, the predominance inquiry must ask whether "the 'essential' breach element of the breach-of-contract claim is an individualized fact question" that justifies class certification. *Hoggard v. Nationstar Mtge. LLC*, D.D.C. No. 17-99 (TJK), 2021 WL 7162301, at *9 (Dec. 30, 2021). Mr. Cross first proposed that, for the Tuition Class, UT breached its contracts with class members "by moving the second half of all classes for the Spring 2020 semester to online distance learning platforms," causing class members to be "deprived of the value of the services tuition was intended to cover - live in-person instruction in brick and mortar classrooms - while the University retained those fees and refused to reduce outstanding charges." (Compl. at ¶ 60-61.) This theory presumes that online and in-person classes each have distinct, market-determinative valuations, and that class members were injured by that transition because the in-person experience was more valuable than the online experience.

{¶ 35} However, by the time Mr. Cross filed the motion for class certification, his theory of breach for the Tuition Class had evolved, as he proposed then that the issue was "[w]hether UT breached its contractual relationship [with class members] by retaining the portion of their tuition representing the difference in value of one half a semester of Emergency Remote Teaching and one half a semester of live in-person instruction in brick and mortar classrooms * * *." (Jan. 6, 2021 Pl.'s Mot. for Class Certification at 10.) Unlike online classroom tuition, ERT is not a product available in the marketplace, so Mr. Cross proposed valuing it according to Mr. Tatos's methodology. UT counters that common evidence cannot prove the theory of breach proposed by the current iteration of Mr. Cross's claim because it assumes that all class members experienced the same inferior educational experience:

> [Proposed Tuition Class members] number more than 19,000 different students in thousands of different course sections taught by thousands of different instructors who used multiple different methods of instruction. Mr. Cross and Mr. Tatos have arrived at no just, reasonable, plausible and non-speculative means of winnowing out all the students who performed the same or better after the transition than before the transition. That means they have not offered common evidence showing that every member of that class sustained an injury at all, much less the same injury as every other member.

(Appellant's Brief at 19.)

 **[20]**  {¶ 36} The parties' competing positions raise several questions, and a rigorous analysis was required to answer them. *Cullen* at ¶ 16 (holding that the "rigorous analysis" under Civ.R. 23 "requires the court to resolve factual disputes relative to each requirement and to find, based upon those determinations, other relevant facts, and the applicable legal

standard, that the **\*714** requirement is met"). What is the Tuition Class members' common injury that amounted to a breach of contract? Did every class member suffer this injury? May this injury be defined by reference to one administrative act - the replacement of in-person classroom instruction for ERT - or does it depend upon the individual actions of each instructor who converted their in-person classroom curriculum to ERT? Will common evidence to prove that UT breached its contracts with class members predominate over any individual questions? These questions are offered as examples, but no issue of commonality or predominance may be answered without confronting them. The trial court abused its discretion by ignoring these questions and the parties' conflicting positions on how to resolve them. *Howland v. Purdue Pharma L.P.*, 104 Ohio St.3d 584, 2004-Ohio-6552, 821 N.E.2d 141, ¶ 21 (reversing class certification order where "the trial court failed to analyze or even mention any of the specific problems argued by the appellants"); *Williams v. Kisling, Nestico, & Redick, LLC*, 9th Dist. No. 29630, 2022-Ohio-1044, 2022 WL 952077, ¶ 33 (reversing class certification order and holding that trial court that "failed to ultimately resolve some of the foremost evidentiary conflicts regarding whether the plaintiffs' claims could be resolved by evidence common to all parties in a single adjudication" did not conduct the rigorous analysis required by Civ.R. 23). Instead of confronting the evolution of Mr. Cross's tuition-based claims and the evidence he proposed would prove them, the trial court reached back to the allegations as stated in the complaint. But "[a] colorable claim does not satisfy the requirements of Civ.R. 23. Nor can compliance with the rule be presumed from allegations in a complaint." *Cullen*, 2013-Ohio-4733, 999 N.E.2d 614 at ¶ 34. The trial court did acknowledge the parties' competing factual positions on the issue of whether UT had "provided a refund for room and board," but went no further in addressing how issues of commonality or predominance applied to the claims of the Room and Board Class or the Fee Class either. A "rigorous analysis" under Civ.R. 23 requires addressing these issues for all classes proposed by Mr. Cross.

 **[21]**  {¶ 37} On remand, the trial court cannot avoid these complexities by dismissing UT's arguments as impermissibly touching on the "merits," as it repeatedly did during the hearing on Mr. Cross's motion for class certification. In *Wal-Mart*, the United States Supreme Court expressly stated that "[f]requently th[e] 'rigorous analysis' " required to rule on class certification "will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart* at 351, 131 S.Ct. 2541. See also *Cullen* at ¶ 17 ("*Wal-Mart* instructs that in resolving a factual dispute when a requirement of Civ.R. 23 for class certification and a merit issue overlap, a trial court is permitted to examine the underlying merits of the claim as part of its rigorous analysis, but only to the extent necessary to determine whether the requirement of the rule is satisfied."). The trial cannot recoil from any reference to the evidence Mr. Cross puts forward to prove his claims, including the report of Mr. Tatos, as off-limits for purposes of class certification. *Id.* at ¶ 34 (stating that the plaintiff "had to demonstrate, and the trial court had to find, that questions common to the class in fact predominate over individual ones, and proof of predominance necessarily overlaps with proof of the merits in this case"). To the contrary, because "deciding whether a claimant meets the burden for class certification pursuant to Civ.R. 23 requires the court to consider what will have to be proved at trial and whether those matters can be presented by common proof." *Id.* at ¶ 17, citing **\*715** 7A Wright, Miller & Kane, *Federal Practice and Procedure*, Section 1785 (2005).

 **[22]**  {¶ 38} As with predominance, the trial court's sole reference to the superiority requirement under Civ.R. 23(B)(3) lacks the rigor required to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Civ.R. 23(B)(3). The trial court stated that "a class action [would be] superior to other available methods for fairly and efficiently adjudicating the controversy, especially given the desirability of concentrating the litigation of the claims in this forum." (Apr. 26, 2021 Decision at 8.) This statement references one of the four factors that Civ.R. 23(B) lists to guide the analysis of predominance and superiority, "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Whether a particular forum is appropriate or not may be relevant in some purported class actions, but forum is irrelevant to the superiority analysis in this case. There is no question of the "desirability or undesirability" of the forum because the Court of Claims "has exclusive, original jurisdiction" over Mr. Cross's claims. R.C. 2743.03(A)(1).

 **[23]**  **[24]**  {¶ 39} For the reasons discussed, we conclude that it was unreasonable for the trial court to certify the classes proposed by Mr. Cross without a rigorous analysis of the issues of commonality, predominance and superiority

Daniels, Rachel 6/12/2023
For Educational Use Only

**Cross v. University of Toledo, 199 N.E.3d 699 (2022)**
410 Ed. Law Rep. 771, 2022-Ohio-3825

required by Civ.R. 23. The little discussion it provided was perfunctory, conclusory, and failed to grapple with the relevant law and the parties' arguments. It cannot be said to result from a sound reasoning process. "An unreasonable decision is one that is unsupported by a sound reasoning process." *Lias v. Beekman*, 10th Dist. No. 06AP-1134, 2007-Ohio-5737, 2007 WL 3108899, ¶ 12, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An abuse of discretion includes an unreasonable decision. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). We are mindful of the high bar for reversal in an appeal of a class certification ruling reviewed under the abuse of discretion standard. However, reversal in this instance does not implicate either of the justifications for applying a deferential standard of review in class certification determinations, "the trial court's special expertise and familiarity with case-management problems" or "its inherent power to manage its own docket." *Hamilton v. Ohio Savs. Bank*, 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998). Finally, our decision should not be read to encourage or discourage certification on remand, a position on which we remain necessarily agnostic. *Williams*, 2022-Ohio-1044, ¶ 37 (remanding and stating that appellate court "takes no position as to whether the trial court should ultimately certify the proposed class"); *Midland Funding LLC v. Colvin*, 3d Dist., 2019-Ohio-5382, 151 N.E.3d 130, ¶ 53 (reversing denial of class certification but "offer[ing] no opinion whether the trial court should ultimately certify the proposed class").

**V. CONCLUSION**

{¶ 40} For the foregoing reasons, we sustain UT's assignment of error insofar as it asserts that the trial court erred in granting Mr. Cross's motion for class certification under Civ.R. 23. The decision of the Court of Claims of Ohio is reversed and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

KLATT and DORRIAN, JJ., concur.

**All Citations**

199 N.E.3d 699, 410 Ed. Law Rep. 771, 2022-Ohio-3825

---

End of Document © 2023 Thomson Reuters. No claim to original U.S. Government Works.