# Exhibit 2

Daniels, Rachel 6/12/2023
For Educational Use Only

**Duke v. Ohio University, 204 N.E.3d 752 (2022)**
2022-Ohio-4694

204 N.E.3d 752
Court of Appeals of Ohio, Tenth District, Franklin County.

Gila DUKE, Plaintiff-Appellee,
v.
OHIO UNIVERSITY, Defendant-Appellant.

No. 22AP-184
|
Rendered on December 27, 2022

**Synopsis**
**Background:** Former university student and her mother brought putative class action against university, alleging breach of contract, unjust enrichment, and conversion arising from student's alleged loss of benefit of in-person instruction and education for which student and other students paid due to closure of campus facilities due to COVID-19 pandemic. The Court of Claims, Franklin County, No. 2021-00036JD, Dale A. Crawford, J., granted student's motion for class certification. University appealed.

**[Holding:]** The Court of Appeals, Sadler, J., held that trial court abused its discretion by failing to conduct rigorous analysis of commonality and predominance factors when certifying class.

Reversed and remanded.

**Procedural Posture(s):** On Appeal; Motion to Certify Class.

West Headnotes (14)

[1]  **Appeal and Error** ⇒ Class actions
    **Parties** ⇒ Discretion of court
    Trial court has broad discretion in deciding whether class action may be maintained, and that conclusion will not be disturbed absent showing of abuse of discretion.

[2]  **Parties** ⇒ Discretion of court
    Trial court's discretion in deciding whether to certify a class action is not without limits and must be exercised within the framework of civil procedure rule governing class actions. Ohio Civ. R. 23.

[3]  **Appeal and Error** ⇒ De novo review
    **Appeal and Error** ⇒ Construction, Interpretation, or Application of Law
    Trial court does not have discretion to apply the law incorrectly; courts apply a de novo standard when reviewing issues of law.

[4]  **Parties** ⇒ Factors, grounds, objections, and considerations in general
    **Parties** ⇒ Identification of class; subclasses
    There are seven prerequisites for certification of a class action: (1) an identifiable class must exist and the definition of the class must be unambiguous, (2) the named plaintiff representatives must be members of the class, (3) the class must be so numerous that joinder of all the members is impracticable ("numerosity"), (4) there must be questions of law or fact common to the class ("commonality"), (5) the claims or defenses of the representatives must be typical of the claims or defenses of the class ("typicality"), (6) the representative parties must fairly and adequately protect the interests of the class, and (7) one of the three requirements for certification set forth in type of class actions provision of class action rule must be met. Ohio Civ. R. 23.

[5]  **Parties** ⇒ Representative and Class Actions
    Class-action suits are the exception to the usual rule that litigation is conducted by and on behalf of only the individually named parties; to fall within that exception, the party bringing the class action must affirmatively demonstrate compliance with the procedural rules governing class actions. Ohio Civ. R. 23.

Daniels, Rachel 6/12/2023
For Educational Use Only

Duke v. Ohio University, 204 N.E.3d 752 (2022)
2022-Ohio-4694

[6]   Parties ⚷ Evidence; pleadings and supplementary material

Party seeking class action certification must prove, by a preponderance of the evidence, that the proposed class meets each of the requirements set forth in the class action rule. Ohio Civ. R. 23.

[7]   Parties ⚷ Hearing and determination

Trial court must carefully apply the requirements of the class action rule and conduct a rigorous analysis into whether those requirements have been satisfied. Ohio Civ. R. 23.

[8]   Parties ⚷ Evidence; pleadings and supplementary material

It is not sufficient for class certification purposes that the plaintiff's allegations merely raise a colorable claim; rather, the court must determine whether the party seeking class certification affirmatively demonstrated compliance with the rules for certification and is prepared to prove that there are in fact sufficiently numerous parties, common questions of law and fact, among other factors. Ohio Civ. R. 23.

[9]   Parties ⚷ Consideration of merits

Trial court's rigorous analysis of the evidence on a motion for class certification often requires looking into enmeshed legal and factual issues that are part of the merits of the plaintiff's underlying claims, but review of the merits may only be conducted for the purpose of determining that the plaintiff has satisfied class action rule. Ohio Civ. R. 23.

[10]  Parties ⚷ Hearing and determination

Rigorous analysis of the evidence necessary on a motion for class certification requires the court to resolve factual disputes relative to each requirement and to find, based upon those determinations, other relevant facts, and the applicable legal standard, that the requirement is met. Ohio Civ. R. 23.

[11]  Parties ⚷ Students, parents, or faculty

Trial court abused its discretion by failing to conduct rigorous analysis of commonality and predominance factors when certifying class on former student's claims against university arising from student's alleged loss of benefit of in-person instruction for which student and other students paid following closure of campus due to COVID-19 pandemic; court assumed economic injury occurred based on campus closure and switch to online classes during COVID-19 pandemic without considering whether student presented sufficient evidence of economic injury, and court did not consider whether proposed damages model could ever serve as evidence of relevant market preferences without incorporating COVID-19 considerations. Ohio Civ. R. 23.

[12]  Parties ⚷ Evidence; pleadings and supplementary material
      Parties ⚷ Hearing and determination

Court should not review a motion for class certification under a pleading standard or grant the motion for simply raising a colorable claim; rather, the court must review whether the plaintiff met his or her to burden to affirmatively demonstrate compliance with rules for class certification and proved by a preponderance of evidence that the proposed class meets each requirement. Ohio Civ. R. 23.

[13]  Parties ⚷ Community of interest; commonality

Although plaintiffs at the class-certification stage need not demonstrate through common evidence the precise amount of damages incurred by

Daniels, Rachel 6/12/2023
For Educational Use Only

**Duke v. Ohio University, 204 N.E.3d 752 (2022)**
2022-Ohio-4694

each class member, they must adduce common evidence that shows all class members suffered some injury. Ohio Civ. R. 23.

**[14]** **Parties** 🗝 Community of interest; commonality

If the class plaintiff fails to establish that all of the class members were damaged, notwithstanding questions regarding the individual damages calculations for each class members, there is no showing of predominance. Ohio Civ. R. 23.

**\*754** APPEAL from the Court of Claims of Ohio, (Ct. of Cl. No. 2021-00036JD).

**Attorneys and Law Firms**

On brief: Carpenter Lipps and Leland LLP, and Michael H. Carpenter, Timothy R. Bricker, and Michael N. Beekhuizen, Columbus, for appellant. Argued: Michael N. Beekhuizen.

On brief: Dave Yost, Attorney General, and Lynch Carpenter, LLP, and Kathleen P. Lally, for appellee. [1] Argued: Eddie Jae K. Kim.

[1] On July 15, 2022, after appellate briefing was completed, this court granted, for purposes of the proceedings before this court, Ms. Lally's motion for leave to withdraw as counsel and granted the motions for leave to appear as counsel filed by Joshua Arisohn and Eddie Jae K. Kim.

DECISION

SADLER, J.

{¶ 1} Defendant-appellant, Ohio University ("OU"), appeals a decision and judgment of the Court of Claims of Ohio granting the motion for class certification filed by plaintiff-appellee, Gila Duke. For the following reasons, we reverse the trial court judgment.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} On January 25, 2021, Gila Duke and her mother Yana Duke filed a class action complaint against OU on behalf of themselves and all people who paid tuition and fees for the spring 2020 academic semester, **\*755** "and who, because of [OU]'s response to the [COVID-19] pandemic, lost the benefit of the education for which they paid, and/or the services for which their fees paid, without having their tuition and fees refunded to them." (Compl. at 1.) The complaint alleged OU did not hold any in-person classes during the spring semester after March 10, 2020, and "[t]he online learning options offered to OU students were subpar as compared to in-person classes in practically every aspect[.]" (Compl. at 2.) A "vast difference" in OU's pricing structure for different modalities of education is alleged as evidence that online and in-person classes are not equivalent. (Compl. at 5-6.)

{¶ 3} According to the complaint, Gila, an Ohio resident, was a student in the undergraduate business program at OU's Athens campus in the spring of 2020. Gila did not enroll in OU's offered online program, but instead enrolled in classes she believed, based on the course catalogue and website, would be taught in-person. The complaint asserts Yana paid OU approximately $6,022.39 in tuition in fees for the spring semester of 2020 and did not receive any refund despite classes not being held in-person between March 10, 2020 and the conclusion of the semester (on April 25, 2020 with finals held up through May 1, 2020).

{¶ 4} Based on these allegations, the Dukes brought claims of breach of contract, unjust enrichment, and conversion against OU on behalf of the class. Specific to the breach of contract claim, the Dukes alleged, "[t]hrough the admission agreement and payment of tuition and fees, [they] and each member of the Class entered into a binding contract with [OU]" and that, "[a]s a part of the contract, and in exchange for the aforementioned consideration, [OU] promised to provide certain [in-person educational] services." (Compl. at 9.) The injuries sustained by the Dukes and members of the class "include[d] but [are] not limited to being deprived of the education, experience, and services to which they were promised and for which they have already paid." (Compl. at 10.) As to the unjust enrichment claims, the complaint states that the Dukes and the members of the class conferred a benefit upon OU in the form of tuition and fees that "entitled

Daniels, Rachel 6/12/2023
For Educational Use Only

**Duke v. Ohio University, 204 N.E.3d 752 (2022)**
2022-Ohio-4694

[them] to in-person educational services through the end of the [s]pring [s]emester" but that OU retained this benefit after failing to provide the in-person educational services. (Compl. at 11.)

{¶ 5} OU filed an answer and affirmative defenses on March 8, 2021. In it, OU denied the action is maintainable as a class action, denied students paid more for in-person classes compared to online classes, and, while admitting it entered into a contractual relationship with Gila, denied the Dukes' framing of the terms of the contract and that it entered a contractual relationship with her mother. On July 21, 2021, Yana filed a notice of voluntary dismissal of all claims against OU pursuant to Civ.R. 41(A)(1)(a). [2]

[2]  The trial court granted a motion to consolidate *Duke et al. v. OU*, 2021-00036JD with *Zahn v. OU*, 2020-00371JD. However, in September 2021, Zahn also voluntary dismissed her claims.

{¶ 6} On September 30, 2021, Gila filed a motion for class certification. In her memorandum in support of her motion for class certification, Gila argued that OU had a contractual obligation to her and the class to provide access to campus and in-person campus activities, as well as the ability to choose classes by specific campuses and in-person methodology. Gila asserted this obligation would be established by examining the conduct of the parties *756 and the students' expectations as well as representations made in documents like OU's handbooks, catalogues, policies, and brochures. Gila contented OU breached this contractual obligation when it failed to provide access to campus and in-person educational services in spring 2020, and that her experts, Colin Weir and Steven Gaskin, "have provided a method to measure damages on a class-wide basis[.]" (Memo. in Support of Class Certification at 14.) Specifically, Gaskin "designed a survey in the form of a conjoint analysis that will allow him to 'assess the extent of any reduction in market value resulting from the closure of the OU campus[,]' " and "[o]nce [Gaskin] has performed the survey and reached his findings * * * Weir will calculate the tuition overpayment[.]" (Memo. in Support of Class Certification at 14, citing Gaskin Declaration at ¶ 10.) Gila additionally contended it would be unjust to allow OU to retain tuition and fees considering the service OU provided versus what it promised its students. In her memorandum in support of her motion for class certification, Gila argued both that certification is appropriate under Civ.R. 23(B)(1), because separate adjudication of these claims would create inconsistent obligations for OU, and under Civ.R. 23(B)(3), because common issues predominate over any individual issues.

{¶ 7} The motion for class certification was supported by: declarations made by Gila, her counsel, Weir, and Gaskin; the OU undergraduate catalogue including academic policies and procedures and student services; OU website pages, admissions brochures, course offerings and majors, enrollment and tuition data, and information about virtual involvement and OHIO online; National Center for Education Statistics information on OU; Covid-19 related cancelation and closure notices and syllabus changes; and excerpts from the deposition of OU student affairs employee Jenny Hall-Jones.

{¶ 8} OU opposed Gila's motion for class certification on November 8, 2021. OU contended that a rigorous analysis of the requirements of Civ.R. 23 demonstrates a class should not be certified. Specifically, OU argued Gila is not a suitable representative of the class, a class is not identifiable, individualized issues predominate over any purported common issues under Civ.R. 23(B)(3), that a class cannot be certified under Civ.R. 23(B)(1), and that non-tuition fees are not appropriate for class certification. According to OU, Gila failed to inform the court she signed a financial obligation agreement that required her to pay all tuition, fees, and other associated costs upon registering for classes. OU also emphasized that Gila generally ignored the COVID-19 pandemic in seeking class certification.

{¶ 9} Regarding injury and damages, OU contended Gila failed to prove through common evidence that all class members were in fact injured by OU's actions. OU asserted the conjoint analysis methodology proposed by Duke's expert is scientifically invalid and unreliable as set forth by OU's expert, Professor Greg M. Allenby, since, among other flaws, it fails to account for the pandemic: the experts "pretended as if COVID-19 never happened." (Memo. in Opp. to Class Certification at 14.) Even more, while Gaskin agreed that some students may be willing to pay a higher price to attend classes online to avoid the risk of infection from the COVID-19 virus, he admitted the proposed conjoint analysis would not incorporate student preferences based on the real-life conditions present when OU shifted to online

Daniels, Rachel 6/12/2023
For Educational Use Only

**Duke v. Ohio University, 204 N.E.3d 752 (2022)**
2022-Ohio-4694

classes. Finally, OU also contended that Gila failed to present any evidence to support her assertion in her complaint that online classes were subpar to in-person classes, that ***757** Civ.R. 23(B)(1) had no application to this case, and that a class cannot be certified regarding non-tuition fees since OU already gave students pro-rated refunds of housing, dining, and certain class fees.

{¶ 10} Gila filed a reply on December 6, 2021. The reply included additional declarations from Weir and Gaskin responding to Allenby.

{¶ 11} A hearing on class certification took place remotely on January 18, 2022. Gila testified as class representative, Weir and Gaskin testified on behalf of Gila, and Sherry Rossiter, Bradley Cohen, Jenny Hall-Jones, and Allenby testified on behalf of OU. Under Gila's theory of the case, common evidence will be used to show an implied contract exists, that OU breached the contract when it switched from in-person to remote classes and restricted or closed down buildings and services, that Gila and the class suffered the same injury—"sign[ing] up for in-person classes" with an "expect[ation] [of] access to campus" and not being "able to get that for a portion of the spring 2020 semester"—and that she has a proposed method to measure damages that would be common to the class. (Tr. at 10-13.)

{¶ 12} Gila testified that during the spring of 2020 she was a junior undergraduate enrolled at OU's Athens campus with a major in marketing and entrepreneurship. She elected to receive grades for the spring 2020 semester, received credit for those courses, reenrolled at OU for her senior year in the fall of 2020 despite OU being entirely online, graduated on-time in the spring of 2021, and secured employment consistent with her major. She could not say whether she would have preferred OU continue holding classes in the midst of the pandemic but did want OU to protect her health and safety. Gila agreed that, had she not been able to complete her spring 2020 classes, she would not have been able to graduate on time.

{¶ 13} Weir and Gaskin testified to a proposed methodology to ascertain and calculate damages using conjoint analysis which they described, in simple terms, as a market research survey-based analysis that would allow them to calculate the difference in market value between an education at OU that offered a choice of in-person or online courses and full access to campus facilities versus the value of an education that offered online courses only and no access to campus facilities. Such analysis would rely on comparing the real world with a "but-for" world where everything is the same except for the allegedly harmful conduct, which Weir and Gaskin considered to be OU's switch to online classes without access to campus. (Tr. at 97-98.) Weir and Gaskin testified the survey used to gage consumer preferences would not include or account for the COVID-19 pandemic even though, in Gaskin's view, some students may pay higher prices for online classes as opposed to in-person classes to minimize risk of an infection. Instead, the respondents in the proposed survey are to consider in-person and online classes as being equally safe. The experts could not point to another case or litigation where conjoint analysis had been used to establish damages in the higher education context.

{¶ 14} Professor Allenby, an expert in research and quantitative analysis of marketing data including the conjoint analysis methodology, who helped "set modern conjoint analysis" methodology which is widely-used today, testified on OU's behalf. According to Allenby, "the proposed conjoint analysis is deficient on a number of grounds, primarily its lack of reference to COVID [and] the risk of infection" in the proposed questionnaire and analysis. (Tr. at 246-47.) In Allenby's opinion, the survey ***758** should compare online instruction with lower risk of infection to in-person experience with a higher health or safety risk. Allenby also took issue with the field of respondents, not including parent opinions, too narrow of a choice set, a damages calculation ignores other universities conduct and will not lead to a uniform damage model, and lack of account that while students have preferences, colleges hold the admission decision.

{¶ 15} The chief strategy and innovation officer for OU also testified. In the officer's opinion, "the differential impact of remote learning on students is going to be individualized" and "the financial implications for students is very, very different": "modality does not determine price." (Tr. at 212-13.) The OU officer also testified that the price point for OU's existing (pre-COVID-19) E-campus is not comparable to the pandemic switch to online for every program. While the E-campus was set at a lower price than OU's in-person option, that was possible because the E-campus offered a small number of programs that were able to be delivered at a lower price point. (Tr. at 214.) According to the OU

officer, OU's goal in transitioning classes to online and closing buildings during the pandemic was safety and educational continuity to prevent kids from dropping out and to keep them on track to graduate with their degrees, and, in his recollection, OU may have lost millions of dollars in the transition. (Tr. at 210.)

{¶ 16} During the hearing, the trial court indicated multiple times that review of the merits of the underlying claims would not occur during decision making on class certification. Specifically, in asking Weir how long the proposed survey would take to conduct should the class be certified, the trial court commented, "if we get to the point that we're going to proceed with the merits of the case[,]" Wier would have weeks, not months to complete the survey and analysis. (Tr. at 108-09.) The trial court also, in questioning the relevancy of testimony by OU's chief strategy and innovation officer as to the individualized impact of modality of education on each student, stated, "[a]ren't we getting to the merits of the case rather than the issue that's before me today[:] whether there should be a class certified?" (Tr. at 202.) The trial court then rejected OU's attorney's position that the trial court had "an obligation to delve into the merits" to see if any of the contested issues "were in fact individualized" for purposes of class certification, responding, "[n]o, it's not my duty to see if any of these particular things are individualized. It's my duty to balance the criteria in Rule 23 and make my analysis of whether this is the case that's appropriate for a class. * * * Now, let's get to the merits of the Rule 23 issues and not the merits of the [underlying] claim." (Tr. at 204-05.)

{¶ 17} During closing comments OU argued that Gila could not rely on the complaint allegations or a theory put forward but rather had to have an evidentiary burden at the class action certification stage. The trial court did not address this argument, and asked OU to differentiate this case from the other cases he already certified. As to OU's further argument that all Gila set forth was a proposed model of a "fake, make-believe world where COVID never existed and where online means no services were provided," the trial court commented that, "[t]he idea of using a conjoint analysis in an implied contract case and putting COVID into that makes no sense." (Tr. at 277, 279.)

{¶ 18} On February 25, 2022, the trial court filed a decision and judgment entry granting Gila's motion for class certification. First, after disagreeing with OU's argument regarding university records ***759** lacking information about who actually paid tuition and fees (student, parent or guardian, or other family member), the trial court found the class to be identifiable and unambiguous. Under similar reasoning, the trial court determined the typicality requirement to be met. Next, pertaining to the requirement that the named representative be a member of the class, the trial court rejected OU's argument about Gila's mother paying her tuition and fees to conclude Gila shares the same interests and suffered the same injury shared by all members of the class. The trial court determined Gila was an adequate class representative and that OU did not challenge the adequacy of class counsel. The trial court also noted OU did not dispute the numerosity requirement, and found the requirement met after noting that OU had approximately 14,976 undergraduate students enrolled during the period.

{¶ 19} As to the commonality requirement, the trial court found Gila's asserted common questions—(1) the existence of an implied or express contract for access to campus and in-person educational services, opportunities, and classes; (2) whether OU breached that contract; and (3) the economic difference between what was contracted for and what was provided—to be "well suited for classwide determination" without further discussion. OU's arguments to the contrary would be addressed under the predominance standard. (Feb. 25, 2022 Decision at 9.)

{¶ 20} Finally, the trial court concluded the action is appropriate for class certification under Civ.R. 23(B)(3) and, therefore, did not assess Civ.R. 23(B)(1). In doing so, the trial court disagreed with OU's agreement that whether an implied contract for in-person classes exists required an individualized inquiry for each student, and similarly found that whether a benefit was conferred upon OU by the students and whether retention of the benefit would be unjust could also be determined by external conduct. The trial court was further unpersuaded by OU's contention that individual issues predominate regarding whether online classes were materially deficient compared to in-person classes. According to the trial court:

> The crux of [Gila's] claims is not that the quality of the education she received was poorer than what she

> contracted for; it is that the education she received should have cost less. The injury is not a diminished quality of education; the injury is that she contracted for in-person classes and did not receive in-person classes for part of the semester.

(*Id.* at 15.) Likewise, the trial court disagreed with OU about the inadequacy of Gila's proposed class-wide damages model. Specifically, "because the alleged implied contract was entered into before the arrival of COVID-19 to the United States, the survey and conjoint analysis should not take COVID-19 into account." (*Id.* at 16.) In the trial court's view, Gila's model for determining damages is consistent with its liability case.

{¶ 21} Therefore, the trial court found that under Civ.R. 23(B)(3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Addressing the second prong of Civ.R. 23(B)(3), the trial court determined that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, particularly considering the desirability of litigating the claims in the Court of Claims of Ohio and in order to achieve economies or time, expense, and effort while promoting uniformity of decisions relative to similarly situated people.

{¶ 22} Concerning the particulars of the class definition, the trial court found that based on the evidence presented at the *760 hearing, only tuition and the general fee remained at issue. Accordingly, the trial court defined the class as "all undergraduate students enrolled in classes at the Athens campus of Ohio University during the Spring 2020 semester who paid tuition and/or the general fee." (*Id.* at 5.)

{¶ 23} Therefore, per the decision and judgment entry, the trial court held that Gila's proposed class, as defined in the decision, satisfied the requirements for class certification by a preponderance of the evidence. The trial court requested that Gila inform the court concerning her preferences for the appointment of class counsel and provide supporting evidence as to the adequacy of the proposed class counsel. On March 9, 2022, the trial court filed an entry appointing class counsel and certifying the class, as defined above.

{¶ 24} OU filed a timely notice of appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 25} OU sets forth six assignments of error for review:

1. The trial court erred in concluding there is an identifiable class and that Plaintiff's claims are typical of the class.

2. The trial court erred in concluding individualized issues do not predominate over any purported common questions regarding the existence of an implied contract for in-person classes during a pandemic.

3. The trial court erred in concluding individualized issues do not predominate over any purported common questions regarding whether online classes provided during the Spring 2020 semester were materially deficient.

4. The trial court erred in concluding individualized issues do not predominate over any purported common questions with respect to Plaintiff's claim for unjust enrichment.

5. The trial court erred in concluding Plaintiff can establish class-wide damages.

6. The trial court erred in concluding that Plaintiff is an adequate class representative.

## III. STANDARD OF REVIEW

[1] [2] [3] {¶ 26} A trial court has broad discretion in deciding whether a class action may be maintained, and that conclusion will not be disturbed absent a showing of an abuse of discretion. *Egbert v. Shamrock Towing, Inc.*, 10th Dist. No. 20AP-266, 2022-Ohio-474, 2022 WL 488103, ¶ 14, citing *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987), syllabus. However, "a trial court's discretion in deciding whether to certify a class action is not without limits and must be exercised within the framework of Civ.R. 23." *Egbert* at ¶ 15, citing *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998). Moreover, as a trial court "does not have discretion to apply the law incorrectly[,] * * * courts apply a de novo standard when reviewing issues of law." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 38.

## IV. ANALYSIS

{¶ 27} OU challenges several aspects of the trial court's certification of the class in this case. For the following reasons, we find OU has demonstrated the trial court abused its discretion in failing to conduct a rigorous analysis on class certification, particularly as to whether Gila met her burden of proving through common evidence that all class members were in fact injured by OU's actions and whether the proposed model is capable of determining damages on a class-wide basis.

**\*761 1. Legal standard for class certification**

[4] {¶ 28} Ohio courts find seven prerequisites for certification of a class action pursuant to Civ.R. 23: (1) an identifiable class must exist and the definition of the class must be unambiguous, (2) the named plaintiff representatives must be members of the class, (3) the class must be so numerous that joinder of all the members is impracticable ("numerosity"), (4) there must be questions of law or fact common to the class ("commonality"), (5) the claims or defenses of the representatives must be typical of the claims or defenses of the class ("typicality"), (6) the representative parties must fairly and adequately protect the interests of the class, and (7) one of the three requirements for certification set forth in Civ.R. 23(B) must be met. *Egbert* at ¶ 16, citing *Hamilton* at 71, 694 N.E.2d 442 (1998), citing *Warner v. Waste Mgmt., Inc.*, 36 Ohio St.3d 91, 96, 521 N.E.2d 1091 (1988); Civ.R. 23.

{¶ 29} In this case, the trial court certified a class under Civ.R. 23(B)(3), which sets forth the "predominance" and "superiority" requirement. Specifically, Civ.R. 23(B)(3) states that "[a] class action may be maintained if * * *:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (a) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (b) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (d) the likely difficulties in managing a class action.

Civ.R. 23(B)(3).

[5] [6] [7] {¶ 30} "[C]lass-action suits are the exception to the usual rule that litigation is conducted by and on behalf of only the individually named parties. *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.3d 1224, ¶ 25. "To fall within that exception, the party bringing the class action must affirmatively demonstrate compliance with the procedural rules governing class actions." *Id.* Specifically, "[t]he party seeking class action certification pursuant to Civ.R. 23 must prove, by a preponderance of the evidence, that the proposed class meets each of the requirements set forth in the rule." See *Egbert* at ¶ 17. See *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 54 ("A preponderance of the evidence is defined as that measure of proof that convinces the judge or jury that the existence of the fact sought to be proved is more likely than its nonexistence."). Correspondingly, "[t]he trial court must carefully apply the requirements of Civ.R. 23 and conduct a rigorous analysis into whether those requirements have been satisfied." *Egbert* at ¶ 15, citing *Hamilton* at 70, 694 N.E.2d 442, *Felix* at ¶ 26, and *Cullen v. State Farm Mut. Auto. Inc. Co.,* 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 17.

**2. Precedent involving a trial court's failure to conduct a rigorous analysis at the class certification stage**

[8] {¶ 31} The Supreme Court of Ohio has emphasized that Civ.R. 23 is not "a mere pleading standard." *Felix* at ¶ 26, quoting **\*762** *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). It is not sufficient for class certification purposes that the plaintiff's allegations merely raise " 'a colorable claim.' " *Madyda v. Ohio Dept. of Pub. Safety*, 10th Dist. No. 20AP-217, 2021-Ohio-956, 2021 WL 1156565, ¶ 15, quoting *Cullen* at ¶ 34. Rather, the court must determine whether the party seeking class certification "affirmatively demonstrat[ed] compliance with the rules for certification and [is] prepared to prove

Daniels, Rachel 6/12/2023
For Educational Use Only

**Duke v. Ohio University, 204 N.E.3d 752 (2022)**
2022-Ohio-4694

'that there are *in fact* sufficiently numerous parties, common questions of law and fact, etc.' " *Felix* at ¶ 26, quoting *Dukes* at 350, 131 S.Ct. 2541.

[9] [10] {¶ 32} To this point, "a trial court's rigorous analysis of the evidence often requires looking into enmeshed legal and factual issues that are part of the merits of the plaintiff's underlying claims[,]" but review of the merits may "only [be conducted] for the purpose of determining that the plaintiff has satisfied Civ.R. 23." *Felix* at ¶ 26, citing *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, 994 N.E.2d 408, ¶ 40. This "analysis requires the court to resolve factual disputes relative to each requirement and to find, based upon those determinations, other relevant facts, and the applicable legal standard, that the requirement is met." *Cullen* at ¶ 16 (determining the trial court abused its discretion in granting class certification since a rigorous analysis of the evidence presented by the parties demonstrated that, under Civ.R. 23(B)(3), individual questions predominated over issues common to the class).

{¶ 33} This court recently applied the *Cullen* and *Felix* standard in similar cases. First, in *Cross v. Univ. of Toledo*, 10th Dist., 2022-Ohio-3825, 199 N.E.3d 699, we reversed the judgment of the trial court certifying a class of undergraduate students who paid tuition and fees at the University of Toledo during the spring 2020 pandemic. In doing so, while we were mindful of the high bar for reversal in an appeal of a class certification ruling, we nevertheless found the trial court's "perfunctory, conclusionary" decision and "fail[ure] to grapple with the relevant law and the parties' arguments" to constitute an abuse of discretion considering the novel and complex issues of the case and, particularly, the plaintiff's theory of common injury as viewed under the Civ.R. 23(B)(3) predominance requirement. *Id.* at ¶ 39. Therefore, we found the trial court failed to conduct a rigorous analysis necessary for class certification and remanded the matter for further proceedings.

{¶ 34} We likewise reversed and remanded the trial court decision in *Smith v. Ohio State Univ.*, 10th Dist., 2022-Ohio-4101, 2022 WL 17006871. *Smith*, like the present case, involved a class action alleging an implied contract exists between the class members and OSU arising from marketing materials and course descriptions and with a proposed damages model based on a conjoint analysis designed by Weir and Gaskin that did not account for the COVID-19 pandemic. Following precedent concerning the level of analysis required at the class certification stage, we determined "[t]he trial court, in assuming an injury from the fact of closure and termination of in-person classes, did not assess these complicated and difficult considerations, particularly as they relate to whether Smith presented *any* common evidence— or even a method to possibly determine—that class members suffered an economic injury considering the effect of the pandemic." *Id.* at ¶ 46. We further noted that the trial court's statements during the oral hearing showed it did not believe that issues of merit should be considered at the class certification stage and sought to expediate defining a class in order to examine ***763** those merits issues at the next stage of litigation. Thus, we concluded the trial court failed to analyze the class certification requirements with the requisite rigor, constituting an abuse of discretion, and found the remaining assignments of error to be moot.

{¶ 35} Our consideration of a COVID-19 university closure class action, *Weiman v. Miami Univ.*, 10th Dist. No. 22AP-36, 2022-Ohio-4294, 2022 WL 17348853, involves a case similarly based on a theory of damages predicated on the alleged difference in market value between in-person classes with access to Miami's campus and online classes without access to the campus. As in *Smith*, we found the plaintiff's market-based damages theory and their experts' proposed analysis to raise "significant questions" with respect to the commonality and predominance requirements for class certification, and that the trial court's statements showed it that it did not want to consider the contested and difficult damages issue at the class certification stage, generally would not look into the "enmeshed legal and factual issues" part of the merits of the underlying claims, and aimed to rule the same on the various class certification cases it had already certified. *Id.* at ¶ 18, 23. Therefore, we determined the trial court failed to conduct a rigorous analysis of the Civ.R. 23(A)(2) and (B)(3) factors for class certification and remanded the matter to the trial court to do so in the first instance.

{¶ 36} In *Keba v. Bowling Green State University*, 10th Dist. No. 22AP-226, 2022 WL 17821150 we likewise concluded the trial court needed to rigorously analyze difficult issues of damages to determine if the commonality and predominance requirements were met under the theory of liability presented, but had failed to do so. Therefore, we reversed and remanded the cause to the trial court.

Daniels, Rachel 6/12/2023
For Educational Use Only

**Duke v. Ohio University, 204 N.E.3d 752 (2022)**
2022-Ohio-4694

### 3. The trial court failed to conduct a rigorous analysis prior to class certification in this case

[11] {¶ 37} OU's fifth assignment of error, which contends the trial court erred in concluding Gila can establish class-wide damages, implicates similar, problematic issues in the trial court's analysis of the Civ.R. 23 commonality and predominance factors as we found in *Cross*, *Smith*, *Keba*, and *Weiman*. OU raises familiar themes of the plaintiff's burden to provide evidence in support of the class certification requirements, the showing of injury required under Civ.R. 23(B)(3), and the use of a conjoint analysis (devoid of COVID-19 concerns) to measure a difference in market value.

{¶ 38} Specifically, OU asserts that under *Cullen*, Civ.R. 23 demands more than a pleading standard or presentation of a colorable claim, and that under *Felix* at ¶ 33, the plaintiff bears the burden of proving "through common evidence, that all class members were in fact injured by the defendant's action." OU contends the trial court failed to conduct a rigorous analysis as to the damages model proposed by Gila as required during the class certification stage and committed legal error by finding the survey and conjoint analysis should not take COVID-19 into account because the alleged implied contact was entered into before the pandemic.

{¶ 39} In OU's view, the proposed conjoint analysis survey is "unreliable, inadmissible and cannot measure class-wide damages" since the survey and analysis "pretends" as if the COVID-19 pandemic never happened and, therefore, the respondents' preferences will rest, not on real world conditions, but on in-person and online classes being equally safe. (Appellant's Brief at 43.) OU asserts damages should be measured at the time of the **\*764** alleged breach—when classes were moved online due to the pandemic—which would show no damages occurred. OU notes that Gaskin admitted some students might pay a higher price for online classes if that meant minimizing the risk of COVID-19 infection and highlights that Gila could not say that she would have preferred to continue with in-person classes during the pandemic. OU additionally contends that the conjoint analysis is foundationally flawed since it is based on the assumption that OU ceased providing services to students once classes transitioned online. Moreover, OU argues the conjoint analysis is scientifically invalid, as established by Allenby, but that the trial court failed to consider Allenby's testimony other than making the passing comment, "[p]laintiff's experts addressed those concerns to the Court's satisfaction" without any analysis—let alone the "rigorous analysis" required under precedent. (Appellant's Brief at 52-53 citing Feb. 25, 2022 Decision at 15.) Overall, OU suggests the trial court had essentially already made up its mind to grant class certification in this case since it had certified classes in other cases involving COVID-19 related closures at universities.

{¶ 40} In response, Gila argues the record of this case and the decision filed here show the trial court did conduct a rigorous analysis of the Civ.R. 23 factors and properly certified a class. In her understanding of the Civ.R. 23 standard, "plaintiffs need only present a colorable claim at class certification." (Appellee's Brief at 21.) She contends the injury suffered by the plaintiff and class in this case is "not receiving what they paid for." (Appellee's Brief at 27.) Gila cites Weir's declaration that, "[i]f the market tuition rate for OU would have been lower as a result of the switch to online classes and no access to the OU campus, then all students will have overpaid" to mean "[i]n short, all members of the class were injured because they overpaid" in this case. (Appellee's Brief at 29.) Further, in Gila's view, under the Civ.R. 23 standard, all she needs to provide at this stage is a method for calculating damages matching her theory of liability, and that the conjoint analysis proposed is a well-recognized statistical method capable of measuring damages on a class-wide basis here that meets this burden. Gila notes that methodological flaws in a survey bear on weight not admissibility, and argues the survey is not flawed by excluding COVID-19 considerations since its purpose is to compare what OU promised and what it delivered.

[12] {¶ 41} We agree with OU. As set forth in *Felix*, *Cullen* and our decisions on previous class actions concerning COVID-19 closures at universities, a court should not review a motion for class certification under a pleading standard or grant the motion for simply raising a colorable claim. Rather, the court must review whether the plaintiff met his or her to burden to affirmatively demonstrate compliance with rules for class certification and proved by a preponderance of evidence that the proposed class meets each requirement. *Felix* at ¶ 26; *Egbert* at ¶ 1. *See also Cullen* at ¶ 15 (stating that, as a part of a proper rigorous analysis, the trial court must determine whether the party satisfied "*through evidentiary proof* at least one of the provisions of Rule 23(b)"). (Emphasis added.)

{¶ 42} Moreover, " '[p]erhaps the most basic requirement to bringing a lawsuit is that the plaintiff suffer some injury.' " *Felix* at ¶ 36, quoting Schwartz & Silverman, *Common Sense Construction of Consumer Protection Acts*, 54 U.Kan.L.Rev. 1, 50 (2005). "Although plaintiffs at the class-certification stage need not demonstrate through common evidence **\*765** the precise amount of damages incurred by each class member, * * * they must adduce common evidence that shows all class members suffered *some* injury." *Felix* at ¶ 33. "If the class plaintiff fails to establish that all of the class members were damaged (notwithstanding questions regarding the individual damages calculations for each class members), there is no showing of predominance under Civ.R. 23(b)(3)." *Felix* at ¶ 35.

{¶ 43} The trial court in this case found that each student in the class had been injured by not receiving in-person classes for part of the semester that they had contracted for. However, as we stated in *Smith*, the trial court essentially assumed an economic injury occurred based on the fact of closure of campus and the switch to online classes (the alleged breach) without considering whether Gila presented sufficient evidence of the economic injury she claimed to have occurred. The trial court additionally did not consider evidence that Gila's methodology to determine and then calculate damages (the conjoint analysis) had not been performed to evidence a difference in market value under the point-of-sale theory and gave little attention to whether the conjoint analysis as designed could ever serve as evidence of relevant market preferences without incorporating COVID-19 considerations. The trial court thus, under *Smith* at ¶ 44, abused its discretion by either accepting Gila's allegations as true, as would occur under a pleading standard, or accepting the asserted breach in this case—"failing to provide access to campus and in-person classes and services"—as evidence of economic injury. (Appellee's Brief at 26.)

{¶ 44} Moreover, the transcript of the hearing shows the trial court did not believe it was proper to consider contested issues on the merits of the claim at this stage of the proceeding and specially rejected the notion that it had an obligation to delve into the merits to see if any of the issues contested by the parties were "individualized" for purposes of class certification. (Tr. at 204-05.) Thus, while OU challenged the utility of the proposed conjoint analysis with support from an expert and raised concerns that it was fundamentally flawed as a means to ascertain class-wide damages in this case, the trial court proceeded without rigorously considering this contested and difficult issue. Rather, it is clear the trial court preferred to certify the class prior to considering contested issues of merit, even as those issues relate to the Civ.R. 23 requirements. In doing so, the trial court appeared to place the burden on OU to identify what is different about this case from the other cases the court certified, rather than evaluating whether Gila proved by a preponderance of the evidence each requirement for certification was met.

{¶ 45} Considering all the above, we find the trial court did not undertake a rigorous analysis with respect to the number and nature of individualized inquires that might be necessary to establish liability. *Weiman* at ¶ 22-24; *Smith* at ¶ 46; *Cross* at ¶ 39; *Keba* at ¶ 25. Therefore, we conclude OU's fifth assignment of error challenging the trial court's determination of injury and damages to have merit. We further find that the error renders the remaining assignments of error moot at this juncture. App.R. 12(A)(c); *Smith* at ¶ 48.

{¶ 46} Accordingly, assignment of error five is sustained.

**V. CONCLUSION**

{¶ 47} Having sustained assignment of error five, and determined assignments of error one, two, three, four, and six to be moot, we reverse the judgment of the Court of Claims of Ohio. The cause is **\*766** remanded for further proceedings consistent with this decision.

*Judgment reversed and cause remanded.*

BEATTY BLUNT and McGRATH, JJ., concur.

**All Citations**

204 N.E.3d 752, 2022-Ohio-4694

---