# Exhibit 9

63 F.4th 186
United States Court of Appeals, Second Circuit.

Christina RYNASKO, individually and on behalf
of all others similarly situated Plaintiff-Appellant,
v.
NEW YORK UNIVERSITY, Defendant-Appellee.

No. 21-1333-cv
|
August Term 2021
|
Argued March 28, 2022
|
Decided March 23, 2023

**Synopsis**

**Background:** Student's parent filed putative class action against university to recover pro-rated refund of tuition and fees she paid after university transitioned to remote online courses in place of in-person classes, closed residence halls, and eliminated in-person facilities and services during COVID-19 pandemic. The United States District Court for the Southern District of New York, George B. Daniels, J., 🚩 2021 WL 1565614, dismissed complaint and denied leave to file amended complaint to add current student as additional plaintiff. Parent appealed.

**Holdings:** The Court of Appeals, Robinson, Circuit Judge, held that:

[1] parent lacked standing to assert breach of contract claim against university;

[2] parent lacked standing to assert claims for unjust enrichment or money had and received;

[3] university did not convert parent's tuition payment;

[4] student pled plausible claim for breach of implied contract; and

[5] university's disclaimer did not as matter of law bar student's claim as matter of law.

Affirmed in part, vacated in part, and remanded.

Park, Circuit Judge, concurred in part, dissented in part, and filed opinion.

Parker, Circuit Judge, concurred in part, dissented in part, and filed opinion.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Failure to State a Claim; Motion to Dismiss for Lack of Standing; Motion to Amend the Complaint.

West Headnotes (22)

**[1]** **Evidence** 🔑 Public or government websites

**Federal Civil Procedure** 🔑 Matters considered in general

When considering motion to dismiss for failure to state claim, court may take judicial notice of documents from official government websites, including executive orders as they are accessible on state's websites. Fed. R. Civ. P. 12(b)(6).

**[2]** **Federal Courts** 🔑 Standing

**Federal Courts** 🔑 Pleading

Court of Appeals reviews without deference district court's dismissal for lack of standing, dismissal for failure to state claim, and denial of leave to amend based on legal determination that amendment would be futile. Fed. R. Civ. P. 12(b)(1), 12(b)(6).

**[3]** **Education** 🔑 Distance learning

Tuition-paying parent of adult student lacked standing to assert breach of contract claim against university for alleged injuries arising from its transition to remote online courses in place of in-person classes, closure of residence halls, and elimination of in-person facilities and services pursuant to governor's closure order during COVID-19 pandemic, even if parent would not have agreed to pay full tuition if she had known that student's courses would be virtual; parent was not party to contract between student and university, intended third-

party beneficiary of that agreement, or assignee of student's claims.

*1 Case that cites this headnote*

**[4]    Federal Civil Procedure** 🔑 In general; injury or interest

**Federal Civil Procedure** 🔑 Causation; redressability

Irreducible constitutional minimum of standing contains three elements: (1) plaintiff must have suffered injury in fact, i.e., invasion of legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) there must be causal connection between injury and conduct complained of; and (3) it must be likely, as opposed to merely speculative, that injury will be redressed by favorable decision. U.S. Const. art. 3, § 2, cl. 1.

**[5]    Federal Civil Procedure** 🔑 In general; injury or interest

Injury in fact is the first and foremost element of standing.

*1 Case that cites this headnote*

**[6]    Federal Civil Procedure** 🔑 In general; injury or interest

For injury to be particularized, as required for standing, it must affect plaintiff in personal and individual way.

**[7]    Federal Civil Procedure** 🔑 Rights of third parties or public

Party may not seek redress for injuries done to others.

**[8]    Contracts** 🔑 Rights Acquired by Third Persons

**Contracts** 🔑 Agreement for Benefit of Third Person

In context of claims for breach of contract, third-party beneficiary to contract has standing to sue for breach, but non-party to contract lacks standing to sue for breach absent valid assignment of claim.

**[9]    Contracts** 🔑 Agreement for Benefit of Third Person

Non-party to contract governed by New York law lacks standing to enforce agreement in absence of terms that clearly evidence intent to permit enforcement by third party in question.

**[10]    Education** 🔑 Distance learning

Injury to parent's expectation as to services that adult student would receive in exchange for tuition payments paid to university on student's behalf was not injury to parent's legally protected interest, and thus parent lacked standing to assert claims for unjust enrichment or money had and received against university for alleged injuries arising from its transition to remote online courses in place of in-person classes, closure of residence halls, and elimination of in-person facilities and services pursuant to governor's closure order during COVID-19 pandemic; any economic loss that parent has suffered as result of university's transition to virtual courses and services was traceable to arrangement between parent and child, not relationship between parent and university.

**[11]    Implied and Constructive Contracts** 🔑 Unjust enrichment

**Implied and Constructive Contracts** 🔑 Nature of right

Under New York law, cause of action for money had and received is similar to cause of action to recover damages for unjust enrichment, the essence of which is that one party has received money or benefit at expense of another.

[12]   **Conversion and Civil Theft** 🔑 Relation to contractual remedies

Claim of conversion under New York law cannot be predicated on mere breach of contract.

1 Case that cites this headnote

[13]   **Conversion and Civil Theft** 🔑 Money and commercial paper; debt

**Conversion and Civil Theft** 🔑 Assertion of ownership or control in general

Under New York law, university did not convert parent's tuition payment on student's behalf as result of its retention of full tuition for semester during which university transitioned to remote online courses in place of in-person classes, absent allegation that parent's payments were segregated or otherwise specifically identifiable as her money, or that university exercised unauthorized dominion over any segregated tuition payments.

[14]   **Conversion and Civil Theft** 🔑 In general; nature and elements

To state claim of conversion under New York law, plaintiff must allege that (1) party charged has acted without authorization, and (2) exercised dominion or right of ownership over property belonging to another, (3) rightful owner makes demand for property, and (4) demand for return is refused.

1 Case that cites this headnote

[15]   **Conversion and Civil Theft** 🔑 Money and commercial paper; debt

**Conversion and Civil Theft** 🔑 Title and Right to Possession of Plaintiff

Action for conversion under New York law is insufficient as matter of law unless it is alleged that money converted was in specific funds of which claimant was owner and entitled to immediate possession.

[16]   **Education** 🔑 Distance learning

Student majoring in dance pled plausible claim against university under New York law for breach of implied contract by alleging that university's course catalog designated her selected courses as "in-person," that its marketing materials described numerous benefits of attending college in New York City, that its marketing materials described its on-campus services and facilities and benefits of personal contacts with faculty and fellow students, and that she no longer had access to dance studio and direct interaction with faculty and had to buy her own ballet bar when university transitioned to online classes during COVID-19 pandemic.

[17]   **Contracts** 🔑 Questions for jury

Under New York law, existence of implied contract is question of fact.

[18]   **Education** 🔑 Distance learning

Under New York law, university's disclaimer reserving its right to "change without notice at any time at the sole discretion of the administration" its "policies, requirements, course offerings, schedules, activities, tuition, fees, and calendar … including, but not limited to, the elimination of the school, programs, classes, or activities … and the cancellation of scheduled classes or other academic activities" did not as matter of law bar student's claim for breach of implied contract arising from university's transition to online classes during COVID-19 pandemic; disclaimer did not purport to serve as force majeure clause, and reasonable person could conclude that disclaimer's language did not reserve to university discretion to undertake wholesale transformation of student experience.

[19]   **Contracts** 🔑 Reasonableness of construction

Even in context of express contracts, New York law disfavors constructions that give one party

unfair and unreasonable advantage over the other.

**[20]    Implied and Constructive Contracts  👈  Unjust enrichment**

To recover under theory of unjust enrichment under New York law, litigant must show that (1) other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit other party to retain what is sought to be recovered.

**[21]    Implied and Constructive Contracts  👈  Nature of right**

Under New York law, money had and received claim is essentially identical to unjust enrichment claim and requires allegations that (1) defendant received money belonging to plaintiff; (2) defendant benefited from receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep that money.

**[22]    Implied and Constructive Contracts  👈  Effect of Express Contract**

Under New York law, where parties executed valid and enforceable written contract governing particular subject matter, recovery on theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded.

**\*189**  Appeal from the United States District Court for the Southern District of New York, No. 20-cv-3250 (GBD), George B. Daniels, District Judge, Presiding

**Attorneys and Law Firms**

Joseph I. Marchese, Bursor & Fisher, P.A., New York, NY, for Plaintiff-Appellant.

Seth P. Waxman (Alan Schoenfeld, Swapna Maruri, on the brief), Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., for Defendant-Appellee.

Brian S. Kaplan (Keara Gordon, Colleen Carey Gulliver, Rachael C. Kessler, on the brief), DLA Piper LLP (US), New York, NY, for Defendant-Appellee.

Before: PARKER, PARK, and ROBINSON, Circuit Judges.

**Opinion**

Judge Park concurs in part and dissents in part in a separate opinion.

Judge Parker concurs in part and dissents in part in a separate opinion.

BETH ROBINSON, Circuit Judge:

At the onset of the COVID-19 pandemic, in the face of unprecedented public health challenges and executive orders prohibiting large gatherings, New York University (NYU), like colleges and universities around the country, rapidly and dramatically changed the way it delivered services. These changes included transitioning to remote online courses in place of in-person classes, closing residence halls, and eliminating a host of in-person facilities and services for the latter portion of the Spring 2020 semester.

In response to these changes, Christina Rynasko brought a putative class action against NYU seeking a partial refund of the tuition she paid for the Spring 2020 semester on behalf of her adult daughter, Emily, then an undergraduate at NYU's Tisch School of the Arts. [1]  She did not suggest that NYU should not have taken the steps it took in response to the pandemic, but argued that NYU had not delivered the educational services, facilities, access, and opportunities for which Rynasko paid, and she was thus entitled to a pro-rated refund of tuition and fees.

The United States District Court for the Southern District of New York (Daniels, *J.*) granted NYU's motion to dismiss Rynasko's claims on the basis that she lacked standing, and declined to allow Rynasko to amend the complaint to add Casey Hall-Landers, a current NYU adult student, as an additional plaintiff because it concluded the Proposed Complaint would be subject to dismissal.

This appeal calls upon us to determine whether Rynasko, as the tuition-paying parent of an adult student, has standing to pursue her claims, and whether Hall-Landers's allegations plausibly allege a claim for breach of implied contract or

unjust enrichment such that dismissal at this stage of the litigation is unwarranted. It does *not* require us to determine whether the unprecedented public health emergency **\*190** and associated executive orders limiting gatherings give NYU a contractual defense, nor whether plaintiffs can prove that NYU breached the parties' implied agreement, nor whether plaintiffs can prove that the educational opportunities they received were less valuable than the ones they expected, nor whether the class action allegations in the Proposed Complaint are plausible.

While we largely agree with the district court's conclusions as to Rynasko's claims, we don't agree that amendment would be futile; instead, we conclude that the Proposed Complaint, to the extent it seeks to bring claims for breach of contract, unjust enrichment, and money had and received on behalf of Hall-Landers, states plausible claims. We accordingly AFFIRM in part, VACATE in part, and REMAND this case for further proceedings.

## BACKGROUND

1. Facts [2]

Rynasko enrolled her daughter Emily at NYU "to obtain the full experience of live, in-person courses and direct interactions with instructors and students." App'x 32. Before paying tuition and fees for the Spring 2020 semester, Rynasko and her daughter reviewed the NYU course catalog and understood that every course in which Emily enrolled was to be taught in person. "[T]he in-person nature of the courses was part of the benefit of the bargain, and [Rynasko] would not have paid as much, if any, tuition and fees" had she known the courses would not be taught in person. App'x 32. NYU's in-person courses differ from its online program ("NYU Online"), which offers limited undergraduate and graduate-level degrees and "pale[s] in comparison to its in-person offerings." App'x 39. Emily purposefully did not apply to NYU's online programs.

Rynasko alleged that the NYU tuition was "predicated on access to and constant interaction with and feedback from peers, mentors, professors, and guest lecturers; access to technology, libraries, and laboratories; opportunities to attend or participate in spectator sports and athletic programs; access to student government and health services; and participation in extracurricular groups and learning, among other things." App'x 33.

These expectations were based in substantial part on NYU's own marketing efforts highlighting the campus experience and personal interaction with renowned faculty and staff as reasons to attend NYU. On its admissions website, NYU also promoted its extracurricular activities, explaining that "[f]rom residence halls to clubs and organizations, these clubs will enrich your experience" and "help you form lifelong connections with diverse classmates from across the United States and the world." App'x 37 (alteration in original). NYU also promoted students' access to facilities such as a library open round-the-clock, a student center with "nine floors of socialization," and "the largest theater space south of Times Square" that offers "amazing productions." App'x 38.

Notably, the Tisch Bulletin did include a disclaimer under its table of contents reserving NYU's right to "change without notice at any time at the sole discretion of **\*191** the administration" its "policies, requirements, course offerings, schedules, activities, tuition, fees, and calendar ... including, but not limited to, the elimination of the school, programs, classes, or activities; the relocation of or modification of the content of any of the foregoing; and the cancellation of scheduled classes or other academic activities." [3] App'x 125.

[1] In January 2020, Spring semester had barely gotten underway when officials in the United States confirmed the first known domestic infections of COVID-19. By early March, the World Health Organization had declared COVID-19 a pandemic. On March 7, Governor Cuomo declared a state of emergency and, shortly thereafter, closed public schools, prohibited large gatherings, and shuttered bars and restaurants. [4] Executive Order No. 202.3 (Mar. 16, 2020). On March 9, NYU announced that all in-person classes would be suspended beginning March 11. On March 16, NYU announced it was closing residence halls and would be conducting classes remotely through the end of the semester.

At that time, Emily was majoring in musical theater at the Tisch School. For that semester, Rynasko paid all required tuition and fees for Emily—approximately $36,000.

Despite the changes in NYU's offerings and operations, NYU continued to charge full tuition and fees. Rynasko alleges that in doing so, it "continu[ed] to reap the financial benefit of millions of dollars from students," despite offering "something far less" than a "comprehensive academic experience": "a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer

interaction, separated from program resources, and barred from facilities vital to study." App'x 29.

The Proposed Complaint included the above allegations from Rynasko's Complaint, and added additional allegations specific to Hall-Landers's experience. Like Emily, Hall-Landers chose NYU "for the variety of educational and extracurricular opportunities and benefits that only an in-person program can provide." App'x 564. Hall-Landers was enrolled as a dance major in the Tisch School during that semester. Prior to the onset of COVID-19, Hall-Landers's dance major cohort met each weekday for three hours in NYU's dance studio.

As a result of NYU's closure, Hall-Landers, who relocated to their parents' home on the West Coast, had to take classes at off hours or record the class, interfering with in-person feedback from professors. They also had to purchase a ballet bar out-of-pocket to participate in remote dance **\*192** classes from home, were deprived of access to the NYU dance studio, and no longer had access to physical therapy services related to the dance instruction. Like Emily, Hall-Landers paid all required tuition and fees for the Spring 2020 semester.

### 2. District Court Proceedings

Rynasko sued NYU in April 2020 on behalf of herself and a putative class. Her Complaint includes state law claims for breach of contract, breach of implied contract, unjust enrichment, money had and received, and conversion. It acknowledges that the closure of campus due to COVID-19 was "justified," but alleges that the campus closures and cancellations caused her "significant loss" for which she seeks recompense. App'x 44.

NYU moved to dismiss, challenging the sufficiency of Rynasko's allegations and arguing that Rynasko lacked standing to bring her claims because she had not suffered a cognizable injury based on denial of in-person courses, activities and services to *Emily*.

While that motion was pending, Rynasko filed a motion for leave to file the Proposed Complaint to add Hall-Landers as an additional named plaintiff and class representative.

The district court granted NYU's motion to dismiss and denied Rynasko's motion for leave to amend. *See Rynasko v. New York Univ.,* No. 20-CV-3250, 2021 WL 1565614 (S.D.N.Y. Apr. 21, 2021).[5] The court reasoned that Rynasko

lacked standing to press her claims because "any tuition contract is between NYU and the adult student, not the student's parent," Rynasko did not plausibly allege that Emily was a minor or that Rynasko was an intended third-party beneficiary of the contract between Emily and NYU, and any economic loss Rynasko suffered as a result of NYU's transition to remote operations was traceable to Rynasko's arrangement with Emily, not with NYU. *Id.* at \*2–\*3.

The court denied Rynasko's request for leave to amend on the ground that the Proposed Complaint—which, except for the addition of Hall-Landers as a plaintiff, asserted essentially the same claims as the Complaint—did not allege any claims that would survive a motion to dismiss. The court concluded that the Proposed Complaint did not allege a plausible breach of contract claim because it failed to plead the existence of any specific promise by NYU to provide exclusively in-person instruction. *Id.* at \*3. It also relied upon the disclaimer language in the Tisch Bulletin reflecting NYU's reservation of the right to change, relocate, and/or modify its offerings. *Id.* at \*3 n.3. With respect to the breach of contract claim for return of fees, the court concluded that the allegations were too conclusory and non-specific to state plausible claims. *Id.* at \*4.

The court also reasoned that the Proposed Complaint failed to state claims for unjust enrichment, money had and received, or conversion because none of these claims could be predicated on a mere breach of contract. *Id.* Accordingly, the court concluded that because Hall-Landers's proposed claims could not survive a motion to dismiss, amendment would be **\*193** futile. *Id.* The court dismissed the case and entered a final judgment from which Rynasko now appeals.

### DISCUSSION

**[2]** We review without deference a district court's dismissal for lack of standing under Federal Rule of Civil Procedure 12(b)(1), dismissal for failure to state a claim under Rule 12(b)(6), and denial of leave to amend based on a legal determination that amendment would be futile. *See Nat. Res. Def. Council v. Johnson,* 461 F.3d 164, 171 (2d Cir. 2006) (standing); *Harris,* 572 F.3d at 71 (failure to state a claim);

*Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 592 (2d Cir. 2007) (leave to amend based on futility).

1. Rynasko's Complaint

Because we agree with the district court that Rynasko lacks standing to bring breach of contract, unjust enrichment, or money had and received claims against NYU, and conclude that she fails to plausibly allege a claim for conversion, we affirm the district court's dismissal of Rynasko's Complaint.

a. *Breach of Contract*

**[3]** We conclude that Rynasko, as the parent of (and tuition payer for) an adult NYU student, lacks standing to sue NYU for alleged injuries arising from NYU's provision of virtual rather than in-person teaching and services *to Emily* for a portion of the Spring 2020 semester. To pursue her claims, Rynasko must allege an injury to her own legally protected interests. Because she is neither a party to the contract between Emily and NYU, nor an intended third-party beneficiary of that agreement, nor an assignee of Emily's claims, we agree with the district court that she lacks standing to sue for breach of contract.

**[4]** **[5]** **[6]** **[7]** The "irreducible constitutional minimum" of standing contains three elements:

(1) "[T]he plaintiff must have suffered an injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;"

(2) "[T]here must be a causal connection between the injury and the conduct complained of ...;" and

(3) "[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations and quotation marks omitted). At issue here is whether Rynasko suffered a cognizable injury in fact. Injury in fact is the "first and foremost" element of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016) (alteration omitted). To be particularized, the injury must "affect the plaintiff in a personal and individual way." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir.

2022) (quoting *Spokeo*, 578 U.S. 330 at 339, 136 S.Ct. 1540). And while a party may seek redress for injuries done to that party, it may not for "injuries done to others." *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *see also U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720, 110 S.Ct. 1428, 108 L.Ed.2d 701 (1990) (a litigant must ordinarily assert the litigant's own legal rights and interests and "cannot rest [a] claim to relief on the legal rights or interests of third parties") (internal citation and quotation marks omitted).

**[8]** In the context of claims for breach of contract, a third-party beneficiary to a **\*194** contract has standing to sue for breach. *See Hillside Metro Associates, LLC v. JPMorgan Chase Bank, N.A.*, 747 F.3d 44, 50 (2d Cir. 2014); *see also Mendel v. Henry Phipps Plaza West, Inc.*, 6 N.Y.3d 783, 786-87, 811 N.Y.S.2d 294, 844 N.E.2d 748 (2006) (recognizing that under New York law, third-party beneficiaries of a contract have standing to sue for breach of that contract). However, this court has held that a non-party to the contract lacks standing to sue for breach absent a valid assignment of the claim. *See, e.g., Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l.*, 790 F.3d 411, 418 (2d Cir. 2015) (plaintiff lacked standing to bring contract action in its own name on promissory notes with respect to which plaintiff was authorized to collect payment because plaintiff did not establish valid assignment of ownership of notes).

Rynasko's contract claim rests on the allegation that she paid approximately $36,000 in tuition to NYU in exchange for her daughter's access to in-person classes, programs, and services during the Spring 2020 semester. Because the in-person nature of the courses was part of the benefit of the bargain, Rynasko alleges, she would not have paid as much if she had known that her daughter's courses would be virtual, and NYU therefore caused Rynasko financial loss sufficient to support standing by refusing to refund the difference.

But Rynasko does not, and cannot, plausibly allege that *she* had a contract with NYU, nor that Emily assigned those rights to Rynasko, and accordingly any failure by NYU to meet its obligations under its contract with Emily does not impinge on a legally cognizable interest of Rynasko's. Her legally protected interest in the contract between Emily and NYU is not different from that of a hypothetical bank who loaned Emily the money to fund her education or a generous unrelated benefactor who gifted Emily the funds—if the

lender or donor would not have standing to sue for breach of the University's implied contract with Emily, then neither does Rynasko. [6]

[9] Moreover, Rynasko was not an intended third-party beneficiary of the contract between Emily and NYU. "A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that 'clearly evidence an intent to permit enforcement by the third party' in question." *Premium Mortg. Corp. v. Equifax, Inc.,* 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,* 66 N.Y.2d 38, 45, 495 N.Y.S.2d 1, 485 N.E.2d 208 (1985)) (alteration omitted). Rynasko has not plausibly alleged the existence of any such intention. The fact that Emily used Rynasko's money to pay her tuition and fees does not change this result. [7]

**\*195** In short, as a non-party to the contract between Emily and NYU, Rynasko lacks legally enforceable expectations about Emily's NYU educational experience. Consequently, she suffered no cognizable injury in fact when NYU suspended in-person classes, activities, and services in response to the COVID-19 pandemic.

### b. *Unjust Enrichment and Money Had and Received*

[10] We likewise affirm the district court's dismissal of Rynasko's claims for unjust enrichment or money had and received because Rynasko has no legally protected interest arising from Emily's relationship with NYU.

[11] Rynasko's theory of unjust enrichment is essentially the same as her breach of contract argument: Rynasko paid Emily's tuition and fees, NYU accepted those payments, and NYU failed to deliver the expected services. [8] Rynasko's claimed injury is that she expended *her* funds for Emily's tuition.

Payment of money can give rise to an injury, but an injury to *Rynasko's* expectation as to the services *Emily* would receive in exchange for the tuition payments paid to NYU on Emily's behalf pursuant to its contract with Emily is not an injury *to her legally protected interest*. Whether Rynasko and Emily understood Rynasko's payment for Emily's tuition and fees to constitute a loan or a gift to Emily is unclear from the Complaint. But in the absence of a relationship

between Rynasko and NYU, the only plausible inference is that the money was paid *for* Emily. As the district court noted, any economic loss Rynasko has suffered as a result of NYU's transition to virtual courses and services "is traceable to the arrangement between mother and daughter," not a relationship between Rynasko and NYU. *Rynasko,* 2021 WL 1565614, at \*3. *See Mandarin Trading, Ltd. v. Wildenstein,* 16 N.Y.3d 173, 182, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011) ("Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated."); *see also Stephani v. Lent,* 30 Misc. 346, 63 N.Y.S. 471 (Sup. Ct. 1900) (rejecting mother's claim for money had and received against attorney who failed to deliver promised legal services for her son where mother paid for legal services, but attorney's promises ran to son). Thus, we conclude that Rynasko has no standing to pursue her unjust enrichment claim. [9]

**\*196** ### c. *Conversion*

[12] Rynasko's conversion claim fails on the merits. [10] A claim of conversion under New York law "cannot be predicated on a mere breach of contract." *Jeffers v. Am. Univ. of Antigua,* 125 A.D.3d 440, 3 N.Y.S.3d 335, 339 (1st Dep't 2015) (awarding summary judgment to defendants where plaintiffs' conversion claims alleged no facts independent of the facts supporting their breach of contract claims) (citation omitted).

[13] [14] Rynasko's plausible allegations do not establish the elements of conversion under New York law. "To state a claim of conversion, the plaintiff must allege that (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." *V&A Collection, LLC v. Guzzini Props. Ltd.,* 46 F.4th 127, 133 (2d Cir. 2022) (citing *Colavito v. New York Organ Donor Network, Inc.,* 8 N.Y.3d 43, 49-50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (2006)); *see also Employers' Fire Ins. Co. v. Cotten,* 245 N.Y. 102, 105, 156 N.E. 629 (1927).

[15] An action for conversion under New York law is insufficient as a matter of law unless it is alleged that the money converted was in specific funds of which claimant was the owner and entitled to immediate possession. *See, e.g.,*

*Family Health Mgmt., LLC v. Rohan Devs., LLC,* 207 A.D.3d 136, 171 N.Y.S.3d 44, 46 (1st Dep't 2022); *Stack Elec. Inc. v. DiNardi Constr. Corp.,* 161 A.D.2d 416, 555 N.Y.S.2d 346, 347 (1st Dep't 1990).

Rynasko does not plausibly allege that her payments to NYU were segregated or otherwise specifically identifiable as her money, or that NYU exercised an unauthorized "dominion" over any segregated tuition payments. *See Employers' Fire Ins. Co.,* 245 N.Y. at 104, 156 N.E. 629; *cf. Meese v. Miller,* 79 A.D.2d 237, 436 N.Y.S.2d 496, 501 (4th Dep't 1981) (reversing dismissal of conversion claim where the plaintiffs adequately alleged that defendants "asserted an unauthorized control over plaintiff's property subsequent to and independent of the contract"). For these reasons, Rynasko fails plausibly to allege a claim for conversion.

For the above reasons, we conclude that the district court did not err in dismissing Rynasko's Complaint.

**\*197** 2. <u>Hall-Landers and the Motion to Amend</u>

We disagree with the district court that amendment to add Hall-Landers, a current student, as a plaintiff would be futile, because we conclude the Proposed Complaint states plausible claims for breach of contract, unjust enrichment, and money had and received. In doing so, we join three of our sister circuits that have recognized the plausibility of implied breach of contract claims brought by students seeking partial tuition reimbursements in the COVID-19 context. [11]

a. *Breach of Implied Contract* [12]

**[16]** At issue here is whether a reasonable factfinder could conclude, based on the plausible allegations in the Proposed Complaint, that NYU had an implied contract with Hall-Landers that included a general obligation to provide in-person courses, activities, services, and facilities. Viewed from the perspective of a pre-COVID world, given NYU's extensive representations about the nature of student life at NYU, as well as historical experience, we conclude that a reasonable factfinder could find that NYU impliedly agreed to provide students in-person services. Several other circuits have reached similar conclusions in analogous cases. We acknowledge the disclaimer language in the Tisch Bulletin that reserves to NYU broad discretion with respect to its course and activity offerings, but cannot conclude as a

matter of law that this language overrides all of NYU's other representations and encompasses the discretion to cancel all in-person courses, services, activities, and facilities. Whatever contractual defenses may be available to NYU based on the unprecedented public health emergency created by the COVID-19 pandemic are beyond the scope of the issues in this appeal.

New York courts have long recognized that the relationship between a university and its students is "contractual in nature," *Prusack v. State,* 117 A.D.2d 729, 498 N.Y.S.2d 455, 456 (2d Dep't 1986), and that "specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract," *Keefe v. N.Y. L. Sch.,* 71 A.D.3d 569, 897 N.Y.S.2d 94, 95 (1st Dep't 2010). [13]

**\*198** **[17]** Under New York law, the existence of an implied contract is a question of fact. *See New Windsor Volunteer Ambulance Corps v. Meyers,* 442 F.3d 101, 112 (2d Cir. 2006) (citing *Shapira v. United Med. Serv., Inc.,* 15 N.Y.2d 200, 210, 257 N.Y.S.2d 150, 205 N.E.2d 293 (1965)). Thus, the question before us is not whether Hall-Landers's plausible allegations necessarily establish an implied contract to provide generally in-person services; the question is whether a reasonable factfinder *could* conclude that Hall-Landers's plausible allegations demonstrate an implied contract to provide in-person services. *See generally Melendez v. City of New York,* 16 F.4th 992, 1010 (2d Cir. 2021) ("In determining if a claim is sufficiently plausible to withstand dismissal, we accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiffs, and we will not dismiss as long as the pleadings support more than a sheer possibility that a defendant has acted unlawfully.") (internal quotation marks and citations omitted).

In considering the allegations in the Proposed Complaint, our role is to ascertain the intention of the parties *at the time they entered into the contract. See Evans v. Famous Music Corp.,* 1 N.Y.3d 452, 458, 775 N.Y.S.2d 757, 807 N.E.2d 869 (2004). In other words, could a reasonable factfinder conclude that before Hall-Landers enrolled in the Spring 2020 semester, the parties mutually intended and implicitly agreed that NYU would provide generally in-person courses, activities, facilities, and services? [14]

From that perspective, we conclude that the Proposed Complaint plausibly alleges an implied contract between NYU and its students to deliver an in-person student experience. As set forth more expansively above, the Proposed Complaint identifies NYU's course catalog, which designated Hall-Landers's selected courses as "in-person;" NYU's marketing materials, which described the numerous benefits of attending college in New York City; NYU's descriptions of its on-campus services and facilities and the benefits of personal contacts with faculty and fellow students; as well as NYU's past course of conduct as forming the basis of the implied contract promising in-person services. *See* Gociman, 41 F.4th at 885 ("Loyola's pre-pandemic practice supports a reasonable inference that in-person instruction, along with access to on-campus facilities, is a norm for students enrolled in the traditional on-campus program."); *see also* Jemzura v. Jemzura, 36 N.Y.2d 496, 503-04, 369 N.Y.S.2d 400, 330 N.E.2d 414 (1975) ("A contract implied in fact may result in an inference from the facts and circumstances of the case ... and is derived from the presumed intention of the parties as indicated by their conduct.") (internal citations and quotation marks omitted).

In addition, the Proposed Complaint describes some of the particular ways in which suspension of in-person services dramatically altered the experience for which Hall-Landers, as a student majoring **\*199** in dance, had contracted: they no longer had access to the dance studio, had to buy their own ballet bar for classes, and were left to join classes virtually at odd hours from the West Coast or rely on recorded versions, thereby missing out on direct interaction with faculty. A factfinder could reasonably determine that NYU, in light of its representations and longstanding history, impliedly agreed that in-person courses, services, activities, and facilities would comprise a substantial part of the NYU educational experience for which students contracted.

In so concluding, we join several of our sister circuits that have reached similar conclusions in analogous cases. *See* Shaffer, 27 F.4th at 763-65 (relying on language in university bulletin, pricing difference between online and in-person classes, and historic practice of on-campus instruction); Gociman, 41 F.4th at 884-85 (relying on course catalog, online registration portal, pre-pandemic practice, and higher tuition for in-person classes); Jones, 51 F.4th at 114-16 (relying on course catalog, credit hour policy which promised "contact time" between students

and professors, higher tuition for in-person classes, historic practice of in-person instruction, and marketing materials).

This case is not entirely on all fours with Shaffer, Gociman, and Jones in that the plaintiffs in those cases pointed to a pricing differential between the university's online courses and in-person classes to support their claims. But that pricing differential was not dispositive in any of the above cases; it was "additional support." Shaffer, 27 F.4th at 764. While the presence of a price differential between courses offered online versus in-person classes may be highly relevant for showing damages, we cannot conclude that a differential between in-class and online classes is a necessary condition for plausibly alleging an implied contract for in-person courses and services. [15]

In reaching our conclusion, we reject NYU's argument that the "express disclaimer" in the Tisch course catalog defeats plaintiffs' implied contract claim by reserving to NYU the right to move all courses online. Appellee's Br. 32. True, New York courts have dismissed implied breach of contract claims brought by students at the pleading stage when "*specific* disclaimers" in school bulletins or handbooks apply to the conduct at issue. Prusack, 498 N.Y.S.2d at 456 (emphasis added). Accordingly, in Keefe v. New York Law School, when a law student sued his law school for not providing a pass/fail grade in a legal writing course, even though the student handbook specifically provided that the school gave only letter grades, the court concluded that the complaint was properly dismissed because "[the school] communicated through its student handbook that it utilizes a letter grading system." 897 N.Y.S.2d at 95. In other words, the clear statement in the handbook specifically applied to the conduct at issue.

**[18]** But here, we are not convinced that the language of the admittedly broad disclaimer, which provides that NYU may "change without notice at any time" its "course offerings," "including, but not limited to ... the relocation of or modification of the content of any of the foregoing; and the cancellation of scheduled classes or other academic activities," precludes Hall-Landers's claim as a matter of law for several reasons. App'x 125.

**\*200** **[19]** First, the disclaimer must be understood as a single data point in the context of all the other factors shaping the contours of the implied contract between NYU and its

students—including NYU's representations highlighting the in-person nature of its offerings, and its historical practice of providing services in person and on campus. *See Shaffer, 27 F.4th at 765* ("[T]he Universities cite nothing in their historical courses of dealings with their students to suggest that they have retained unfettered rights to shut down on-campus educational activities and use online learning in its place after students have paid tuition for traditional on-campus courses."). Moreover, even in the context of express contracts, New York law disfavors constructions that give one party "an unfair and unreasonable advantage over the other." *Metropolitan Life Ins. Co. v. Noble Lowndes Int'l, Inc.* 84 N.Y.2d 430, 438, 618 N.Y.S.2d 882, 643 N.E.2d 504 (1994) ("Language in contracts placing one party at the mercy of the other is not favored by the courts.") (citations omitted); *see also Albunio v. City of New York*, 23 N.Y.3d 65, 71, 989 N.Y.S.2d 1, 11 N.E.3d 1104 (2014) (noting the "general rule" that "equivocal contracts will be construed against the drafter[ ]") (citation omitted).

On NYU's view of its implied contract with Hall-Landers, even prior to the onset of the COVID-19 pandemic, NYU could have decided to completely shut down its on-campus, in-person operations and instead conduct courses, as well as other student activities amenable to remote participation, virtually. This thought experiment exposes the weakness of NYU's position that it never impliedly promised an in-person experience to Hall-Landers. Although the covenant of good faith and fair dealing may provide some protection to students in this scenario, that would be considerable weight for the covenant to bear. *See Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995) (explaining that where contract contemplates the exercise of discretion, the covenant of good faith and fair dealing includes a promise not to act arbitrarily or irrationally in exercising its discretion, but that covenant does not imply obligations inconsistent with other terms of the contractual relationship).

Significantly, the disclaimer does not purport to serve as a *force majeure* clause,[16] excusing NYU's nonperformance upon the occurrence of "an event beyond the control of the parties that prevents performance under a contract." *Beardslee v. Inflection Energy, LLC*, 25 N.Y.3d 150, 154, 31 N.E.3d 80 (2015); *see also Shaffer*, 27 F.4th at 765 (noting that reservation language "does not specifically address emergencies or other *force majeure* events," and "says nothing about allocating the financial risk of those

events to the students"); *Jones*, 51 F.4th at 115 ("[T]he asserted language does not clearly contemplate a fundamental change to the structure of an in-person course to an online course and does not clearly contemplate force majeure events outside of the University's control."). Any suggestion that the reservation allocates the risk of non-performance in the event of an emergency beyond the parties' control is not supported by its language.

Finally, at issue in this case is not just NYU's modification or cancellation of a substantial number of classes and activities, or even a whole school. Plaintiffs have **\*201** alleged that NYU, justifiably under the circumstances, completely transformed the student experience it provided from one revolving around on-campus, in-person classes, contact with faculty, in-person extracurricular activities and services, and access to university facilities to a completely virtual experience that, in Hall-Landers's view, was significantly less valuable. A reasonable person could conclude that in the context of all the various representations that collectively comprise the implied contract between Hall-Landers and NYU, the reservation language does not extend so far as to reserve to NYU the discretion to undertake such a wholesale transformation of the NYU student experience.

NYU emphasizes that it "never did and never would promise to host its students on campus in the middle of a global pandemic, in one of the most densely populated cities in the world, for in-person classes, in defiance of governmental prohibitions." Appellee's Br. 27. To the extent NYU argues that its decision to suspend in-person operations during the Spring 2020 semester was reasonable, even necessary, under the unprecedented circumstances of the COVID-19 pandemic, New York law offers NYU a potentially appropriate shield: the defense of impossibility or impracticability. *See Kel Kim Corp. v. Cent. Mkts., Inc.*, 70 N.Y.2d 900, 902, 524 N.Y.S.2d 384, 519 N.E.2d 295 (1987) (describing defense of impossibility of performance); *see also Jones*, 51 F.4th at 117 ("Whether it was impossible for Tulane to perform its end of the bargain does not go toward the existence of a contract."); *Shaffer*, 27 F.4th at 760 ("We note that the Universities will likely have compelling arguments to offer that the pandemic and resulting government shutdown orders discharged their duties to perform these alleged promises. However, because the Universities have not raised any such defense before this court, we leave the issue to the District Courts to resolve in the first instance."). Because any potential contract defenses

are not before us in this appeal, we vacate and remand to the district court for consideration of those possible arguments in the first instance.

For the above reasons, viewing the allegations in the light most favorable to Plaintiffs, we conclude that Hall-Landers has stated a viable claim for breach of implied contract against NYU.

### b. *Unjust Enrichment and Money Had and Received*

**[20]** **[21]** To recover under a theory of unjust enrichment under New York law, a litigant must show "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Columbia Mem'l Hosp. v. Hinds*, 38 N.Y.3d 253, 275, 192 N.E.3d 1128 (2022) (citation, internal quotation marks, and alterations omitted). A money had and received claim is essentially identical to an unjust enrichment claim and requires allegations that "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 125 (2d Cir. 1984) (citing *Miller v. Schloss*, 218 N.Y. 400, 407, 113 N.E. 337 (1916)); *see also Gargano*, 86 N.Y.S.3d at 599.

**[22]** "Where the parties executed a valid and enforceable written contract governing a particular subject matter, *recovery* on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." **\*202** *IDT Corp. v. Morgan Stanley Dean Witter & Co.,* 12 N.Y.3d 132, 142, 879 N.Y.S.2d 355, 907 N.E.2d 268 (2009) (emphasis added) (citing *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)). Thus, to the extent that any implied contract between NYU and Hall-Landers is enforceable, Hall-Landers could not also recover damages in unjust enrichment or money had and received.

However, this case is still at the pleading stage. The Federal Rules specifically allow pleading in the alternative. *See* Fed. R. Civ. P. 8(d)(2). If Hall-Landers is not ultimately able to establish an *enforceable* implied contract with NYU, the limitation described in *IDT Corp.* may not apply. *See*

*Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 458-59 (S.D.N.Y. 2016) (collecting cases in which unjust enrichment claims were not barred where the validity or enforceability of a contract was challenged). In that circumstance, provided she otherwise established the elements of unjust enrichment, Hall-Landers may be able to pursue her claims for unjust enrichment and money had and received. Accordingly, we conclude that Hall-Landers has plausibly alleged unjust enrichment and money had and received, those claims in the Proposed Complaint would not be subject to dismissal, and therefore, amendment is not futile. *Accord Shaffer*, 27 F.4th at 768-69 (concluding that claim for unjust enrichment in the alternative to breach of contract was sufficiently pled); *Gociman*, 41 F.4th at 887 (same). [17]

### CONCLUSION

For the reasons stated above, we AFFIRM the district court's dismissal of the Amended Complaint. We VACATE the district court's denial of Plaintiffs' Motion for Leave to Amend and REMAND for further proceedings consistent with this opinion.

Park, Circuit Judge, concurring in part and dissenting in part: I join nearly all of Judge Robinson's excellent opinion. I write separately to note my view that Rynasko has standing to bring unjust-enrichment and money-had-and-received claims.

Article III standing requires "a plaintiff [to] show ... that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, ─── U.S. ───, 141 S. Ct. 2190, 2203, 210 L.Ed.2d 568 (2021). This requires us to "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 2204 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016)).

The majority correctly explains that Rynasko does not have standing to bring claims on behalf of her adult daughter. That is why Rynasko may not bring a breach-of-contract claim based on NYU's failure to provide in-person classes. *See* Maj. Op. at 193-95. But Rynasko's other claims are based on a different alleged injury: NYU's wrongful retention of

her money. She claims that NYU "retained the full benefit of the tuition and a majority of the mandatory fee payments by [Rynasko] for the semester" despite "fail[ing] to provide the ... services" for which they were paid. App'x at 602. That is a "simpl[e]," "classic[,] and paradigmatic form of injury that supports standing." **\*203** *Ninivaggi v. Univ. of Del.*, 555 F. Supp. 3d 44, 48 (D. Del. 2021) (Bibas, *J.*, sitting by designation) (cleaned up). [1]

"[M]onetary harms" are among "[t]he most obvious ... traditional tangible harms" and "readily qualify as concrete injuries under Article III." *TransUnion*, 141 S. Ct. at 2204; *accord* *Sonterra Cap. Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 533 (2d Cir. 2020) (noting that "we have repeatedly described [injury in fact] as a low threshold" and that "[a]ny monetary loss" suffices (cleaned up)). Although "*Spokeo* does not require an exact duplicate in American history and tradition," just a "close ... analogue," Rynasko can show the former. *TransUnion*, 141 S. Ct. at 2204. Actions for the return of wrongfully withheld money are not new. "[W]here a person has received a benefit from another, he is liable to pay therefor ... if the circumstances of its receipt or retention are such that ... it is unjust for him to retain it." Restatement (First) of Restitution § 1 cmt. c; *see also* *TransUnion*, 141 S. Ct. at 2224 (Thomas, *J.*, dissenting) (characterizing "unjust enrichment" by "keep[ing] ... ill-gotten gains" as a traditionally recognized injury); *Spokeo*, 578 U.S. at 344, 136 S.Ct. 1540 (Thomas, *J.*, concurring) (listing "unjust enrichment" as a "traditional ... private-rights cause[ ] of action").

Our precedent correctly reflects the pedigree of claims for wrongly withheld money. In *John v. Whole Foods Market Group, Inc.*, the plaintiff sued Whole Foods for unjust enrichment under New York law, claiming that he overpaid for pre-packaged cheese and cupcakes. *858 F.3d 732, 734-35 (2d Cir. 2017)*. He alleged that the weights listed on the foods' packages were incorrect, so he did not get what he paid for. *Id.* The district court dismissed the complaint for lack of Article III standing, and we reversed, explaining that "overpaying for a product" due to a seller's misrepresentation "results in a financial loss constituting a particularized and concrete injury in fact." *Id.* at 736. And if overpaying for a cupcake is a "nontrivial economic injury" that creates

standing, so is overpaying for a college education. *Id.* at 737. [2]

The majority disagrees, arguing that Rynasko lacks a "legally protected interest" in "the services Emily would receive in exchange for [Rynasko's] tuition payments." Maj. Op. at 195 (emphasis omitted). But this misconstrues the relief Rynasko seeks—*i.e.*, her money back, not NYU's services. It also reflects two other errors.

First, there is no general rule that a payor lacks a cognizable injury when a payee fails to provide services to a third party. If Rynasko were party to a standard contract, rather than an alleged quasi-contract, then she could seek restitution in the form of the "benefit that [she] conferred" on NYU. Restatement (Second) of Contracts § 344. She would have standing based on that financial interest, and it would not matter that NYU's promised **\*204** performance was for the benefit of her daughter. *See id.* § 305 cmt. a ("The promisee of a promise for the benefit of a [third-party] beneficiary has the same right to performance as any other promisee."). [3]

Here, Rynasko seeks return of the money she paid based on an alleged misrepresentation. It is the money that matters for standing, not the object of the misrepresentation. For example, courts have held that third-party payors have standing to sue drug manufacturers who allegedly misrepresent the safety of their drugs for patients. *See In re Zantac (Ranitidine) Prods. Liability Litig.*, No. 21-10335, 2022 WL 16729170, at \*3-4 (11th Cir. Nov. 7, 2022). And donors have standing to sue a political organization that allegedly misrepresented that it would treat candidates impartially. *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125-27 (11th Cir. 2019). Similarly, Rynasko has standing because she alleges that NYU didn't provide the services she paid for.

Second, in reaching the opposite conclusion, the majority relies on the merits of the claim under New York law, not on Rynasko's standing to pursue it under Article III. *See* Maj. Op. at 195 (citing *Mandarin Trading, Ltd. v. Wildenstein*, 16 N.Y.3d 173, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011), and *Stephani v. Lent*, 30 Misc. 346, 63 N.Y.S. 471 (Sup. Ct. 1900)). The Supreme Court has warned that "weakness on the merits" should not be "confuse[d] ... with [the] absence of Article III standing." *Davis v. United States*, 564 U.S. 229, 249 n.10, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). We

should instead "ask whether [Rynasko] ha[s] identified a close historical or common-law analogue for [her] asserted injury."

🚩 *TransUnion*, 141 S. Ct. at 2204.

Rynasko's claims may fail on the merits, perhaps for the reasons the majority notes. But I think she has standing to find out. I respectfully dissent from the majority's conclusion that Rynasko lacks Article III standing to bring claims for unjust enrichment and money had and received.

Parker, Circuit Judge, concurring in part and dissenting in part:

I concur in part and respectfully I dissent in part. I believe the majority correctly concluded that Christina Rynasko lacks standing to sue New York University for breach of contract because she was not a party to, or an intended beneficiary of, Emily's contract with NYU. I also believe Rynasko's quasi-contract claims fail because she has not plausibly alleged an injury in fact to herself as opposed to her daughter. I part ways with my colleagues because I conclude that the court below correctly denied the motion to add Casey Hall-Landers [1] as a plaintiff in the Proposed Second Amended Complaint ("PSAC") because the PSAC failed plausibly to allege breach of contract by NYU and because its quasi-contract claims are legally insufficient.

## BACKGROUND

The plausibility of allegations under review on this appeal must be analyzed in the context of the COVID-19 pandemic **\*205** and the consequent restrictions on university life. COVID-19 caused millions of people across the country to upend their lives and to change their daily routines, often dramatically, to avoid serious illness and death.

Universities, like other institutions, were forced to rapidly adjust to the changed reality wrought by COVID. After the virus arrived in March 2020, NYU and other universities were required to comply with rapidly changing laws that sought to reduce the spread of the disease. After New York banned most in-person gatherings, NYU and other universities concluded that switching to remote education was essential to protect the health of students, staff, and the university community, while still allowing students to graduate on time despite the pandemic. *See* Executive Order No. 202.3 (Mar. 16, 2020).

Nevertheless, disappointed students such as the proposed new plaintiff Casey Hall-Landers have brought lawsuits, arguing that the legally mandated switch to remote education was inferior to the in-person experience that they had allegedly been promised and that students thus were owed a pro-rated tuition refund. [2] Although the reasons for this disappointment necessarily differed from student to student, essential to their allegations is the belief that NYU profited from the changed mode of instruction because remote learning was less costly than in-person learning. They thus argue that the degree to which remote learning was an inferior experience to in person education can be quantified and should be refunded to them by the university. *See, e.g.,* 🚩 *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414 (S.D.N.Y. 2021).

Casey Hall-Landers's conclusory assertion in the PSAC that NYU reaped windfall financial benefits from the COVID-19 pandemic suffers from two serious defects: it is not supported in the PSAC and it is objectively false. J. App'x at A-562. Tellingly, the PSAC contains no plausibly alleged facts supporting the assertion that NYU has received the sort of windfall that would support contract damages or be unjust to retain and thus require restitution. In the absence of plausible allegations of this sort, the proposed amended complaint was legally insufficient, and the district court properly denied leave to amend.

It is undisputed that NYU's transition to remote education was accompanied by myriad unexpected costs. Most obviously, NYU was required to license the variety of software, such as Zoom, that made remote learning possible. The vast majority of professors, staff, and students had never used these programs before and therefore required training to use them effectively. In addition, the shift to working from home offices required universities to purchase equipment such as computers and webcams for faculty and staff. Similarly, the many services that universities provide for their students, such as mental health counseling, also had to be moved online, requiring not only significant infrastructure costs but also extensive compliance costs to make sure that the university followed all relevant laws and regulations, especially as **\*206** many students returned to their home states.

What is more, the largest components of the university's fixed costs remained unchanged. The salaries and benefits of professors and staff still had to be paid, HVAC and other necessary systems maintained, electricity and other bills paid. The pandemic also imposed new costs in preparation for the return of in-person instruction. The

university spent heavily on COVID testing, retrofitting classrooms to allow for the simulcasting of courses, personal protective equipment, upgraded ventilation, and gallons of hand sanitizer. Businesses and institutions everywhere had similar experiences. [3]

In addition to the direct costs of the pandemic, the university saw many other sources of revenue dry up. The university could no longer obtain revenue from summer school programs, ticket sales to university art museums, plays, and sporting events, and even sweatshirt sales to tourists. Importantly for universities such as NYU that include large hospitals, the pandemic caused hospital revenues to drop sharply as elective surgeries were delayed or canceled. Sarah Kliff, *Hospitals Knew How to Make Money. Then Coronavirus Happened*, N.Y. Times (May 15, 2020), https://www.nytimes.com/2020/05/15/us/hospitals-revenuecoronavirus.html; *see generally* Amicus Br. of the American Council on Education.

In short, the PSAC plausibly alleges neither a contract claim nor an unjust enrichment claim. Instead, it relies on vague and conclusory allegations about NYU's financial situation and the materials that comprised the implied contract between NYU and its students.

**DISCUSSION**

The district court properly denied amendment as futile. First, none of the materials that comprise NYU's implied contract with its students, including Hall-Landers, includes a specific promise of in-person education. Under New York law, that ends the matter. What is more, a provision of the implied contract that the majority purports to enforce granted the University broad discretion to modify course offerings and the mode of instruction in its discretion. This specific and unambiguous disclaimer allowed NYU to transition to remote education once New York barred in-person gatherings. The majority reaches the opposite conclusion only by brushing aside inconvenient points of New York law and relying on inapposite cases that analyzed different contractual provisions and were decided under laws markedly different from New York law.

Second, because the majority has correctly concluded that a valid and enforceable contract exists between NYU and Hall-Landers which covers the subject matter of their claim,

Hall-Landers is foreclosed from maintaining claims for unjust enrichment and money had and received.

**\*207 I.**

Turning to Hall-Landers's implied contract claim in the PSAC, I believe that the district court was correct to deny leave to amend as futile for two reasons. First, the PSAC failed to identify any "specific promise" of in-person education, as required by New York law and, second, the specific and unambiguous disclaimer provision permitted NYU to change the mode of instruction after New York barred in-person gatherings. [4]

**A.**

In New York, the relationship between a university and its students is "contractual in nature." *Prusack v. State*, 117 A.D.2d 729, 498 N.Y.S.2d 455, 456 (2d Dep't 1986). New York law is clear that "*only specific promises* set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract." ⚑*Keefe v. New York L. Sch.*, 71 A.D.3d 569, 897 N.Y.S.2d 94, 95 (1st Dep't 2010) (emphasis added). Thus, to state a claim for breach of implied contract, a student must identify "specifically designated and discrete promises" that were allegedly breached. ⚑*Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y 2016) (quoting *Ward v. N.Y. Univ.*, No. 99 CIV. 8733 (RCC), 2000 WL 1448641, at \*4 (S.D.N.Y. Sept. 28, 2000)). Here, none was alleged.

The question is not, as the majority claims, "whether a reasonable factfinder could conclude that Hall-Landers's plausible allegations demonstrate an implied contract to provide in-person services." Maj. Op. at 198. Rather, it is whether a reasonable factfinder could conclude that Hall-Landers has identified somewhere in NYU's "bulletins, circulars and handbooks" a *specific promise* of in-person education. [5] Hall-Landers has not done so, and that omission should end the inquiry.

Hall-Landers and the majority point to several allusions to in-person education. For example, NYU's course catalog listed courses as "in-person" and NYU's marketing materials extolled the virtues of life in New York City. Maj. Op.

at ——; J. App'x at A-569. The majority concludes that "NYU, in light of its representations and longstanding history, impliedly agreed that in-person courses, services, activities, and facilities would comprise a substantial part of the NYU educational experience for which students contracted."[6] **\*208** Maj. Op. at 199. Allegations such as these don't cut it. There is a great distance between "impliedly agreed" and "specifically promised" and nothing in the PSAC nor the majority opinion plausibly alleges that NYU specifically promised in-person courses. The motion to amend was therefore properly denied as futile.

### B.

Even if Hall-Landers had identified a specific promise of in-person education, the proposed amendment would still be futile because their contract with NYU includes a provision that specifically allowed NYU to transition to remote learning. The first page of the Tisch Bulletin states, under the bolded word "Notice," that "The policies, requirements, course offerings, schedules, activities, tuition, fees, and calendar of the school ... are subject to change without notice at any time at the sole discretion of the administration. Such changes may be of any nature, including, but not limited to, the elimination of the school, programs, classes, or activities; the relocation or modification of the content of any of the foregoing; and the cancellation of scheduled classes or other academic activities."[7] J. App'x at A-125. This notice could not be clearer or broader. It allows NYU to take actions "of any nature" "without notice at any time at the sole discretion of the administration." The specific and unambiguous language of this provision applies to NYU's shift to remote education after New York law banned in-person gatherings.

The majority has no way of dealing with this language in the implied contract it purports to interpret and enforce except by claiming the language "must be understood as a single data point in the context of all the other factors shaping the contours of the implied contract between NYU and its students." Maj. Op. at 200. With respect, this search for "data points," whatever and wherever they might be, is not a valid approach to contract interpretation under New York law. Basic principles of contract interpretation require us to read the contract "as a whole, with every part interpreted with reference to the whole." *Kaplan v. Kaplan*, 174 A.D.3d 691, 106 N.Y.S.3d 102, 105 (2d Dep't 2019). It is uncontested that "a specific disclaimer ... may excuse the university from

a specific promise that would otherwise be a contractual obligation." *Deen v. New Sch. Univ.*, No. 05 CIV. 7174 KMW, 2007 WL 1032295, at \*2 (S.D.N.Y. Mar. 27, 2007) (quoting *Prusack*, 498 N.Y.S.2d at 456) (cleaned up). Thus, all – not isolated, randomly selected – "data points" that make up the implied contract must be interpreted alongside of this prominent and specific provision which explicitly allows NYU to change the mode of instruction in its discretion. The majority's concerns about one-sided contracts cannot excuse a failure to respect and apply unambiguous contract language. After all, that is what courts are required to do.

Moreover, plausibility is contextual. The majority studiously avoids any meaningful engagement with the context in which **\*209** NYU was operating when it allegedly breached the contract. The transition to remote learning was not voluntary. The cessation of in-person classes was required by law and was undertaken to ensure that Hall-Landers and the entire NYU community remained healthy and safe during a pandemic that was causing thousands of deaths in the community. Instead of simply canceling the semester, NYU invested significant resources to switch rapidly to remote instruction. I do not doubt that Hall-Landers was frustrated and disappointed that they could not continue their dance education in NYU's dance studios, but the burdens of COVID fell not just on them, they fell on everyone else as well. Hall-Landers knew that life at NYU might change because, when they enrolled, the Tisch Bulletin told them that. While they could not have anticipated the COVID pandemic, NYU's disclaimer gave the university the flexibility to respond and explicitly allowed the mode of instruction to be changed.

As support for the "data point" approach, the majority asserts that "we join several of our sister circuits that have reached similar conclusions in analogous cases." Maj. Op at 199. With respect, none of the cases cited is analogous. None applied New York law, and none involved contractual language similar to that of NYU's disclaimer. In both *Jones* and *Gociman*, disclaimer language was not before the court. *Jones v. Administrators of Tulane Educ. Fund*, 51 F.4th 101, 115 (5th Cir. 2022); *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 884 (7th Cir. 2022). In *Shaffer*, the D.C. Circuit did analyze a disclaimer provision, but that provision did not mention the cancellation of courses, did not include any specific language related to changing the location or modifying the content of courses, and did not include the "sole discretion" language included in NYU's disclaimer.

*Shaffer v. George Washington Univ.*, 27 F.4th 754, 764 (D.C. Cir. 2022). In contrast, the Sixth Circuit upheld the dismissal of a tuition refund case in which similar disclaimer language was present. *Dean v. Chamberlain Univ., LLC*, No. 21-3821, 2022 WL 2168812, at *2 (6th Cir. June 16, 2022) ("Chamberlain reserves the right to revise, add, or delete courses, alter the total number of class hours, suspend, cancel, or postpone a class").

There is no way to avoid the conclusion that, under settled New York contract law, the disclaimer gives NYU broad latitude to modify course offerings and the mode of instruction. With such a clause in the contract, Hall-Landers cannot state a plausible claim for breach of an implied contract.

The majority fears that interpreting the disclaimer as New York law requires would give students no recourse if a university decided to simply cancel all classes for no reason and without warning. Maj. Op. at 200. With respect, farfetched hypotheticals such as this one are not a basis for disregarding applicable principles of contract interpretation. On this appeal, we are faced with the question of whether NYU breached any specific promise it made to Hall-Landers. It did not. It exercised the authority unambiguously granted to it by the terms of the implied contract. For these reasons, the district court was correct to conclude that Hall-Landers has not identified a specific promise of in-person education and that NYU was entitled to transition to remote education.

## II.

I agree with the majority that Hall-Landers has plausibly alleged the existence of a valid and enforceable implied contract, which covers the subject matter of her claim – although we disagree as to its terms. Where we part company is that **\*210** I believe that the existence of such a contract dooms Hall-Landers's unjust enrichment and money had and received claims. [8]

Under New York law, when "the parties execute[ ] a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter" is barred. *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142, 879 N.Y.S.2d 355, 907 N.E.2d 268 (2009) (citing *Clark–*

*Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)); *see also 110 E. 138 Realty LLC v. Rydan Realty, Inc.*, 210 A.D.3d 513, 179 N.Y.S.3d 15, 18 (1st Dep't 2022) ("unjust enrichment cause of action is ... barred, since the written sales contract governs the parties' dispute"); *ASG & C, Inc. v. Arch Specialty Ins. Co.*, No. 21-1761-CV, 2022 WL 839805, at *1 (2d Cir. Mar. 22, 2022) ("Here, the parties entered into an express written contract ... that governs ASG & C's claim. Accordingly, ASG & C is limited to recovery on the contract and may not seek recovery based on an alleged quasi contract."); *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."). The fact that Hall-Landers's contract with NYU is an implied contract is of no moment: "*Clark–Fitzpatrick* precludes unjust enrichment claims whenever there is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (citing *Jim Longo, Inc. v. Rutigliano*, 294 A.D.2d 541, 742 N.Y.S.2d 877 (2d Dep't 2002)).

Alternative pleading is, of course, available and in some instances appropriate. For both an unjust enrichment and contract claim to survive a motion to dismiss, however, the plaintiff must allege either that the contract does not cover the subject matter of the dispute or that it is invalid or unenforceable as written. *See Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*, 837 F.3d 146, 150 (2d Cir. 2016) ("[W]here a valid and enforceable contract governs the relevant subject matter of the parties' dispute, the contract—rather than principles of restitution—should determine the measure of a party's recovery for events arising from that subject matter."); *see also DeWitt Stern Group, Inc. v. Eisenberg*, 14 F. Supp. 3d 480, 485 (S.D.N.Y. 2014) (stating that because a contract existed, the relevant inquiry was whether any portion of the contract "is by its terms unenforceable as written, and therefore allows Plaintiff the right to plead a claim for equitable relief in the alternative should certain provisions of the contract be found invalid"). Eventually, however, the court will determine if the contract is valid and covers the subject matter at issue, and at that point the plaintiff must elect a remedy.

Here, Hall-Landers cannot maintain both the contract and unjust enrichment claims for one central reason: nowhere in

the PSAC does Hall-Landers allege that the contract with NYU is invalid or unenforceable **\*211** or that it does not cover the subject matter at issue in this case, i.e., tuition payments. That should be the end of the matter and the district court's denial of the motion to amend should be affirmed.

The majority, however, claims that "[i]f Hall-Landers is not ultimately able to establish an *enforceable* implied contract with NYU," the limitation on bringing unjust enrichment claims along with contract claims "may not apply." Maj. Op. at 202. The majority, however, does not explain why the contract, as written, could possibly be unenforceable – and, as noted above, Hall-Landers does not allege that the contract was invalid or unenforceable. It appears that the majority believes that the fact that NYU may be able to bring a successful impracticability or impossibility contract defense could render the contract unenforceable. Maj. Op. at 200-01. This approach is based on a proposition that is not the law in New York. The only authority that the majority cites – as well as the cases it collects – does not support this proposition and, in fact, does not involve contract defenses at all. Maj. Op. at 202 (citing *Agerbrink v. Model Serv. LLC*, 155 F.

Supp. 3d 448, 458–59 (S.D.N.Y. 2016)). I agree that were this case to advance beyond the pleading stage, NYU would have a viable impossibility defense. But that is not a sound reason for permitting a legally insufficient complaint to go forward.

Hall-Landers has not alleged that their contract with NYU is invalid or unenforceable as written, nor that their claims are outside the scope of the contract. The hypothetical possibility that NYU may eventually prevail on the merits is irrelevant to the long-established requirement of New York law that forbids the maintenance of both contract and equitable claims when a valid and enforceable contract covers the subject matter of the dispute.

In conclusion, because the majority has found that Hall-Landers has a valid and enforceable contract with NYU that covers tuition claims, the unjust enrichment and money had and received claims should be dismissed.

**All Citations**

63 F.4th 186

---

## Footnotes

1   Emily, who is not a party to this lawsuit, has since graduated from NYU.

2   Except where noted, our description of the facts is drawn from the amended complaint (the "Complaint") and the proposed second amended complaint (the "Proposed Complaint"). Because we are at the motion to dismiss stage, we treat all factual allegations as true and draw all reasonable inferences from those allegations in Plaintiffs' favor. *See, e.g.*, *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). As such, we express no opinion at this stage as to whether the allegations are correct.

3   Rynasko did not cite this language in her Complaint, but does not dispute that it is included in the Tisch Bulletin. Because this document forms part of any implied contract with NYU, we may consider it in reviewing the court's dismissal of Rynasko's claims. *See* *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014) ("[W]e may consider any written instrument attached to the Complaint as an exhibit or any statements or documents incorporated in it by reference ... and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.") (alteration and quotation marks omitted).

Although most of Emily's courses were in the Tisch School, she also alleges she took one class in the College of Arts and Sciences. The NYU College of Arts and Sciences bulletin contained a nearly identical disclaimer.

4   "When considering a motion made pursuant to Rule 12(b)(6)" we may take judicial notice of documents from official government websites, including "Executive Orders ... as they are accessible on the State of New

York's Website." *Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford,* 544 F. Supp. 3d 405, 412 (S.D.N.Y. 2021) (citing *Giraldo v. Kessler,* 694 F.3d 161, 164 (2d Cir. 2012)).

5 In its decision, the district court cross-referenced its decisions in several other cases in which it contemporaneously addressed substantially the same claims. *See id.* at \*1, citing *Zagoria v. New York Univ.,* No. 20-CV-3610, 2021 WL 1026511 (S.D.N.Y. Mar. 17, 2021); *Morales v. New York Univ.,* No. 20-CV-4418, 2021 WL 1026165 (S.D.N.Y. Mar. 17, 2021); *Romankow v. New York Univ.,* No. 20-CV-4616, 2021 WL 1565616 (S.D.N.Y. Apr. 21, 2021).

6 Rynasko's Complaint contains no allegations concerning the understanding between her and Emily with respect to Rynasko's payment of Emily's fees and tuition for Spring 2020, so it is unclear whether Rynasko and Emily viewed Rynasko's payments as a gift, loan, or something else altogether.

7 Federal courts have concluded nearly unanimously that parents of adult students lack standing to bring similar COVID-19-related lawsuits against universities, even when they paid tuition and fees. *See Metzner v. Quinnipiac Univ.,* 528 F. Supp. 3d 15, 24-25 (D. Conn. 2021) (holding that parent plaintiffs lacked standing to sue Quinnipiac University where they failed to allege facts that would establish that they entered into a contract with Quinnipiac); *see also Espejo v. Cornell Univ.,* 523 F. Supp. 3d 228, 236-37 (N.D.N.Y. 2021) (finding no standing where plaintiffs failed to allege that they directly contracted with Cornell or that they were intended third-party beneficiaries); *Gociman v. Loyola Univ. of Chicago,* 515 F. Supp. 3d 861, 866 (N.D. Ill. 2021) (finding parents' allegations insufficient to establish injury-in-fact where parents did not enter into contract with Loyola University), *rev'd in part on other grounds,* 41 F.4th 873 (7th Cir. 2022); *Bergeron v. Rochester Inst. of Tech.,* No. 20-CV-6283 (CJS), 2020 WL 7486682, at \*3 (W.D.N.Y. Dec. 18, 2020); *Lindner v. Occidental Coll.,* No. CV 20-8481-JFW(RAOx), 2020 WL 7350212, at \*5 (C.D. Cal. Dec. 11, 2020); *Meissner v. Syracuse Univ.,* No. 5:20-CV-839 (TJM/ATB), 2021 WL 1536676, at \*3 (N.D.N.Y. Apr. 13, 2021); *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.,* 524 F. Supp. 3d 1346, 1354–55 (S.D. Fla. 2021); *Salerno v. Florida S. Coll.,* 488 F. Supp. 3d 1211, 1216 (M.D. Fla. 2020). *But see Burt v. Bd. of Trs. of Univ. of R.I.,* 523 F. Supp. 3d 214, 226-27 (D.R.I. 2021) (finding parent-plaintiff sufficiently alleged injury in fact to satisfy Article III standing to challenge university's failure to refund tuition).

8 "A cause of action for money had and received is similar to a cause of action to recover damages for unjust enrichment, the essence of which is that one party has received money or a benefit at the expense of another," so we analyze the viability of Rynasko's unjust enrichment and money had and received claims together. *Gargano v. Morey,* 165 A.D.3d 889, 86 N.Y.S.3d 595, 599 (2d Dep't 2018).

9 Judge Park's concurrence and dissent argues that under our precedents, including *John v. Whole Foods Market Group, Inc.,* Rynasko has alleged a monetary harm sufficient to confer standing: "if overpaying for a cupcake is a 'nontrivial economic injury' that creates standing, so is overpaying for a college education." *See* Park Op. at 203 (citing 858 F.3d 732, 734-35 (2d Cir. 2017)). But the issue is not whether overpaying is an economic injury supporting standing, rather, the issue is whether a parent who provides funds to an adult child for a particular purpose suffers a cognizable injury when that purpose is frustrated. In *John,* the plaintiff himself had purchased the cupcakes. *See John,* 858 F.3d at 734. That case would only be comparable to this one had John gratuitously given the cupcake money to his adult daughter, who then purchased the cupcakes for herself. The dissent's citations to Eleventh Circuit cases are similarly unpersuasive because in those cases, the parties bringing suit had alleged economic injuries arising from their own roles in particular

transactions, and whether they had suffered injury in fact was not at issue. *See In re Zantac (Ranitidine) Prods. Liability Litig.*, No. 21-10335, 2022 WL 16729170, at *3 (11th Cir. Nov. 7, 2022) (noting that injury in fact was not disputed where plaintiff union alleging that prescription drugs were worthless had paid for the medications pursuant to its legal duty to its members); *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1123, 1125 (11th Cir. 2019) (holding named plaintiffs representing donor classes sufficiently alleged injury in fact because they alleged a financial loss stemming from their own political donations).

10    In reaching the merits of the conversion claim and finding it was properly dismissed under Rule 12(b)(6), we part ways slightly with the district court, which dismissed this claim under Rule 12(b)(1) for lack of standing.

11    *See Shaffer v. George Washington Univ.*, 27 F.4th 754, 765 (D.C. Cir. 2022); *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 885 (7th Cir. 2022); *Jones v. Adm'rs of Tulane Educ. Fund*, 51 F.4th 101, 116 (5th Cir. 2022).

12    While the Complaint and Proposed Complaint include separate causes of action for express breach of contract and implied breach of contract, on appeal, Rynasko argues only that the district court erred in concluding that Hall-Landers's claim for implied breach of contract would face dismissal. Accordingly, we only consider whether Hall-Landers adequately states a claim for breach of implied contract.

13    As NYU argues, this line of cases also supports the proposition that courts owe deference to universities when it comes to "academic and educational decision making." *Susan M. v. N.Y. L. Sch.*, 76 N.Y.2d 241, 557 N.Y.S.2d 297, 300, 556 N.E.2d 1104 (1990). But Plaintiffs in this case do not challenge NYU's exercise of its academic and educational discretion in structuring NYU's courses; their claim for breach of implied contract arises from the wholesale, campus-wide suspension of in-person courses, services, facilities, and activities. When considering similar claims brought under Louisiana law, the Fifth Circuit recently observed: "Deciding whether Tulane breached its agreement to provide in-person instruction and on-campus access to facilities in exchange for pre-paid tuition and fees does not implicate educational questions best left to professional academic judgment. Courts act well within their expertise when answering the elementary question whether a contract was made and breached." *Jones*, 51 F.4th at 110. We agree.

14    As we have now spent years living in the shadow of the pandemic, it can be hard to imagine our lives before everything changed in March 2020. But New York contract law requires we undergo the thought experiment and ascertain the mutual expectations of the parties before the COVID-19 pandemic transformed so much. In that regard, we part ways with the dissent, and its contention that we should interpret the scope of NYU's implied promises from the perspective of the middle of the COVID-19 pandemic. As noted below, *see post* at 201-02, the pandemic may be highly relevant to the enforceability of NYU's promises, but the parties entered into the alleged implied contract well before COVID-19 disrupted in-person gatherings.

15    Moreover, Plaintiffs here did allege that NYU's online program is distinct from the in-person classes, offers a limited range of courses, and was not considered comparable in quality to NYU's much more extensive in-person offerings.

16    In general terms, a "*force majeure*" clause is a "contractual provision allocating the risk of loss if performance becomes impossible or impracticable, esp[ecially] as a result of an event or effect that the parties could not have anticipated or controlled." *Black's Law Dictionary* (11th ed. 2019).

17    Hall-Landers's proposed claim for conversion fails for the same reasons as Rynasko's. *See* Section 1C, above.

1    *Accord, e.g.*, *Pinzon v. Pepperdine Univ.*, No. 20-CIV-4928, 2021 WL 3560782, at *5 (C.D. Cal. Aug. 5, 2021);

     *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 372-73 (D.N.J. 2021); *Burt v. Bd. of Trs. of Univ. of R.I.*, 523 F. Supp. 3d 214, 226-27 (D.R.I. 2021); *Doe v. Emory Univ.*, No. 20-CIV-2002, 2021 WL 358391, at *3 (N.D. Ga. Jan. 22, 2021).

2    The majority attempts to distinguish *John* because "the plaintiff himself had purchased the cupcakes," unlike Rynasko, who "provide[d] funds to an adult child" who in turn paid NYU. Maj. Op. at 196 n.9. But this distinction is not supported by the record. Rynasko alleged that *she* "paid approximately $36,000 in tuition and fees to [NYU]," App'x at 31, and the complaint attached exhibits supporting that claim, *see id.* at 229, 232, 234-36.

3    For example, when a union and an employer contract for the employer to provide employee retirement benefits, the union has standing to sue when the employer does not provide them. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO/CLC v. Cookson Am., Inc.*, 710 F.3d 470, 474-75 (2d Cir. 2013). "That th[e] benefit[s] accrue[ ] to third parties, namely, the retirees, does not change" the result. *Id.* at 475.

1    Hall-Landers uses they/them pronouns. Appellants' Br. at 9 n.1.

2    This lawsuit was filed as a putative class action. Although the class certification issue has not yet been addressed, I believe that the class action allegations in the PSAC are implausible because commonality and predominance would have to be found among the extremely heterogenous class, which the PSAC defines as "all people who paid NYU Spring Semester 2020 tuition and/or fees for in-person educational services that NYU failed to provide and whose tuition and fees have not been refunded." J. App'x at A-594. *See Garcia De León v. N.Y. Univ.*, No. 21 CIV 05005 (CM), 2022 WL 2237452, at *17 (S.D.N.Y. June 22, 2022) (denying class certification in a similar lawsuit against NYU).

3    When totaled, the costs of the pandemic to universities were extraordinary. One study estimated that the total cost of the pandemic to American universities as of February 2021 was $183 billion. Paul N. Friga, *How Much Has Covid Cost Colleges? $183 Billion*, Chron. Higher Educ. (Feb. 5, 2021), https://www.chronicle.com/article/how-to-fight-covids-financial-crush. Another estimate pegged New York's universities as having lost $3.9 billion from the beginning of the pandemic through 2021, including $1.1 billion in direct pandemic related expenditures. *See* Amicus Br. of the American Counsel of Education at 11. (citing Letter from Drew Bogner, Interim President, & Keith Cushing, Vice President for Rsch., Admin., and Servs., to CICU Bd. of Trs., *2019 Economic Overview* at 3 (Apr. 26, 2021), https://tinyurl.com/cjkzwbzx).

4    I agree with the majority that Hall-Landers's conversion claim was futile.

5    Many cases define the implied contract between a university and its students even more narrowly, guaranteeing students only that if they comply with the rules set out by the university, they will eventually obtain a degree. *See Carr v. St. John's Univ., New York*, 17 A.D.2d 632, 231 N.Y.S.2d 410, 413 (2d Dep't 1962), *aff'd*, 12 N.Y.2d 802, 235 N.Y.S.2d 834, 187 N.E.2d 18 (1962) ("When a student is duly admitted by a private university, secular or religious, there is an implied contract between the student and the university that, if he complies with the terms prescribed by the university, he will obtain the degree which he sought.");

     *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998) ("When a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the university, she will obtain the degree she seeks.").

6    In addition, "longstanding history" is not an appropriate consideration when analyzing an implied contract between a university and a student. The majority, citing an out-of-circuit case, claims that NYU's "past course of conduct" helps to form the basis of an implied contract promising in-person services. Maj. Op. at 198 (citing 🚩 *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 885 (7th Cir. 2022)). Although this appears to be the law in Illinois, 🚩 *Gociman*, 41 F.4th at 883, and Washington, D.C., 🚩 *Shaffer v. George Washington Univ.*, 27 F.4th 754, 763 (D.C. Cir. 2022), the majority cites no authority supporting the contention that customs or past practices are relevant under New York law. This is not surprising, given that New York law enforces "only specific promises" contained in university materials, and a past practice is, by definition, not a specific promise. *See* 🚩 *Gertler v. Goodgold*, 107 A.D.2d 481, 487 N.Y.S.2d 565, 568 (1st Dep't 1985) ("the university's academic and administrative prerogatives [cannot] be impliedly limited by custom"), *aff'd* 66 N.Y.2d 946, 498 N.Y.S.2d 779, 489 N.E.2d 748 (1985).

7    As the majority notes, a substantially identical disclaimer appears prominently in the College of Arts and Sciences bulletin. Maj. Op. at 191 n.3.

8    I would also hold that the unjust enrichment claims of the PSAC were futile because Hall-Landers does not plead facts to demonstrate that NYU's retention of tuition was unjust, and that "equity and good conscience" requires restitution. As noted above, NYU was legally forbidden from holding in-person classes, and consequently switched to remote education. Although Hall-Landers implies that NYU received a windfall from this switch, that claim is not pleaded with sufficient specificity and does not address the additional costs that accompanied the switch to remote education.

---