# Exhibit 11

Daniels, Rachel 6/12/2023
For Educational Use Only

Omori v. Brandeis University, Slip Copy (2023)

2023 WL 3511341
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Alan Thomas OMORI and Linfei Yang, individually
and on behalf of all others similarly situated, Plaintiffs,

v.

BRANDEIS UNIVERSITY, Defendant.

Civil Action No. 20-11021-NMG

|

Signed May 16, 2023

|

Filed May 17, 2023

### Attorneys and Law Firms

Daniel J. Kurowski, Pro Hac Vice, Whitney K. Siehl, Pro
Hac Vice, Hagens Berman Sobol Shapiro LLP, Chicago, IL,
Kristie A. LaSalle, Berman Tabacco, Boston, MA, Steve W.
Berman, Pro Hac Vice, Hagens Berman Sobol Shapiro LLP,
Seattle, WA, for Plaintiff John Doe.

Blake G. Abbott, Pro Hac Vice, Eric M. Poulin, Roy T.
Willey, IV, Pro Hac Vice, Paul Doolittle, Poulin, Willey,
Anastopoulo, LLC, Charleston, SC, Richard E. Levine,
Stanzler Levine, LLC, Wellesley, MA, Daniel J. Kurowski,
Whitney K. Siehl, Hagens Berman Sobol Shapiro LLP,
Chicago, IL, Kristie A. LaSalle, Berman Tabacco, Boston,
MA, for Plaintiff Alan Thomas Omoro.

Blake G. Abbott, Paul Doolittle, Poulin, Willey, Anastopoulo,
LLC, Charleston, SC, Daniel J. Kurowski, Hagens Berman
Sobol Shapiro LLP, Chicago, IL, Kristie A. LaSalle, Berman
Tabacco, Boston, MA, Rachel A. Downey, Hagens Berman
Sobol Shapiro LLP, Boston, MA, for Plaintiff Linfei Yang.

Harvey J. Wolkoff, Alexander H. Loomis, Quinn Emanuel
Trial Lawyers, Boston, MA, Crystal Nix-Hines, Pro Hac Vice,
Marina Lev, Pro Hac Vice, Shon Morgan, Pro Hac Vice,
Kathleen M. Sullivan, Quinn Emanuel Urquhart & Sullivan
LLP, Los Angeles, CA, for Defendant.

### MEMORANDUM & ORDER

GORTON, United States District Judge

**\*1** Pending before the Court is a motion for class
certification filed by the named plaintiffs, Alan T.
Omori ("Omori") and Linfei Yang ("Yang") (collectively,
"plaintiffs" or "the students"). See Docket No. 128. This
Court convened a hearing on the motion for class certification
in May, 2023, at which counsel for plaintiffs and for Brandeis
University ("defendant", "Brandeis" or "the University")
appeared and proffered oral argument. For the reasons that
follow, the motion will be denied.

### I. Background

This putative class action arises out of the decision by
Brandeis to retain the full amount of tuition and fees collected
from students for the Spring, 2020 semester despite closing
its on-campus facilities and transitioning from in-person to
online instruction in response to the COVID-19 pandemic.

Plaintiffs brought a four-count complaint, alleging breach of
contract, both express and implied (Counts I & II), unjust
enrichment (Count III) and conversion (Count IV). They seek
to recover, on behalf of a class, tuition and fees allegedly paid
in consideration for "in-person instruction and use of campus
facilities" which were denied to Brandeis students during the
second half of the Spring, 2020 academic term.

In April, 2021, the Court allowed, in part, and denied, in
part, defendant's motion to dismiss, and, in October, 2022,
did the same with respect to defendant's motion for summary
judgment. Plaintiffs' remaining putative class claim against
the University is for breach of implied contract (Count II) as
to tuition and a studio fee charged to certain students.

The students now move to certify two classes pursuant to Fed.
R. Civ. P. 23 ("Rule 23"), which the University has timely
opposed. Plaintiffs filed a reply brief in support of the motion
in April, 2023, and this Court heard oral argument shortly
thereafter.

### II. Plaintiffs' Motion for Class Certification

#### A. Plaintiffs' Proposed Classes

**Daniels, Rachel** 6/12/2023
**For Educational Use Only**

Omori v. Brandeis University, Slip Copy (2023)

Plaintiffs propose certifying two classes – the "Tuition Class" and the "Studio Fee Class" - under Fed. R. Civ. P 23(b)(3) ("Rule 23(b)(3)"):

> The Tuition Class
>
> All students enrolled at Brandeis University during the Spring 2020 academic term and charged tuition by Brandeis.
>
> The Studio Fee Class
>
> All students enrolled at Brandeis University during the Spring 2020 academic term and charged a Studio Fee by Brandeis.

**B. Legal Standard**

A court may certify a class only if it finds that the proposed class satisfies all the requirements of Fed R. Civ. P. 23(a) ("Rule 23(a)") and that class-wide adjudication is appropriate for one of the reasons set forth in Fed. R. Civ. P 23(b). Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003).

A district court must conduct a "rigorous analysis" under Rule 23 before certifying the class. Id. It may look behind the pleadings, predict how specific issues will become relevant to facts in dispute and conduct a merits inquiry to the extent that the merits overlap with the Rule 23 criteria. See In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008).

**\*2** Rule 23(a) requires that a class meet the following four criteria:

> 1) the class is so numerous that joinder of all members is impracticable;
>
> 2) there are questions of law or fact common to the class;
>
> 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> 4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4).

Here, plaintiffs seek to certify the proposed classes under Rule 23(b)(3) which requires that common questions of law or fact "predominate" over those affecting individual class members and that a class action be the "superior" method for fair and efficient adjudication. The standard for demonstrating Rule 23(b)(3) predominance is "far more demanding" than that for the related requirement of Rule 23(a)(2) commonality. In re New Motor Vehicles, 522 F.3d at 20.

**C. Application**

Brandeis has not contested that the proposed classes satisfy the requirements of Rule 23(a) but instead opposes certification on the grounds that: 1) the proposed classes include class members who have no standing and 2) the students have not satisfied the requirements of predominance and superiority imposed by Rule 23(b)(3).

**1. Standing**

Plaintiffs' proposed classes include all students who were charged tuition and/or a Studio Fee during the Spring, 2020 academic term. Brandeis contends that this definition includes class members who lack Article III standing because their tuition and fees were paid by family members or offset by scholarships or grants. Plaintiffs respond that Brandeis breached an implied contract with the students regardless of who paid and such a breach confers Article III standing.

A breach of contract is a legal injury sufficient to confer standing. See Ninivaggi v. Univ. of Delaware, No. 20-CV-1478-SB, 2023 WL 2734343, at \*1 (D. Del. Mar. 31, 2023) (citing Uzuegbunam v. Preczewski, 141 S. Ct. 792, 798–802 (2021); Tenn. Elec. Power Co. v. Tenn. Val. Auth., 306 U.S. 118, 137 (1939)). Furthermore, that alleged injury is fairly traceable to the University and could be redressed by an award of damages or restitution. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 590 (1992). Defendant does not challenge the standing of the named plaintiffs here and any further issues with respect to injury and/or damages should be (and are) addressed under this Court's analysis of the requirements of Rule 23(b)(3). See In re Asacol Antitrust Litig., 907 F.3d 42, 56-57 (1st Cir. 2018).

Daniels, Rachel 6/12/2023
For Educational Use Only

Omori v. Brandeis University, Slip Copy (2023)

### 2. Rule 23(b)(3)

#### a. Predominance

The predominance requirement of Rule 23(b)(3) demands that common issues predominate over individual issues in order for a class to be certified. Not all issues must, however, be susceptible to common resolutions and "individuation of damages in consumer class actions is rarely determinative". Smilow, 323 F.3d at 39–40.

Under Massachusetts law, a successful claim for breach of contract requires the plaintiff to prove that:

(1) a valid contract between the parties existed,

(2) the plaintiff was ready, willing, and able to perform,

**\*3** (3) the defendant was in breach of the contract, and

(4) the plaintiff sustained damages as a result.

In re Bos. Univ. COVID-19 Refund Litig., 511 F. Supp. 3d 20, 23 (D. Mass. 2021) (quoting Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013)). Proof of those same elements is required when a plaintiff alleges an implied contract, as the students do here. See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005).

In the case at bar, there are common issues of fact and law as to whether: the implied contracts between Brandeis and its students contained the promises that plaintiffs suggest they did, class members performed their contractual obligations (i.e. paid their tuitions and/or studio fees), and Brandeis breached by moving classes online due to the pandemic. The questions of whether each class member sustained damages as a result of the alleged breaches and, if so, in what amount, are more difficult to resolve on a class-wide basis. At summary judgment, this Court contemplated that plaintiffs might

> be able to calculate a difference in value [between courses offered by Brandeis in-person versus online] based upon the relative cost of those graduate degrees that were

> offered both in-person and online.... [and] apply that differential to the undergraduate program in which they participated.

See Omori v. Brandeis Univ., 20-CV-11021-NMG, 2022 U.S. Dist. LEXIS 189787, at *15-16 (D. Mass. Oct. 18, 2022).

The Court cautioned that any such difference in value could not be based on a subjective assessment of educational quality and plaintiffs would have to demonstrate that the chosen graduate courses were an appropriate, consistent comparator for the Spring, 2020 courses at issue. Id. With their motion for class certification, plaintiffs have proffered a damages model which purports to meet those requirements.

The students' theory of liability and damages depends upon their ability to establish the actual value of the online education Brandeis students received in Spring, 2020 after the onset of COVID-19. If they are unable to do so, they cannot demonstrate, on a class-wide basis, that class members "sustained damages as a result" of the alleged breach nor be able to calculate the amount of those damages.

At the May, 2023 hearing on class certification, plaintiffs' counsel posited that individual adjustments to the proper amount of damages could be made based upon, e.g., scholarships that class members received, without undermining certification of the proposed classes. Presumably, plaintiffs would establish the actual value of online, post-COVID education on a class-wide basis but account for some damages issues with respect to the amount of tuition paid on an individualized basis.

The Court agrees that the prospect of resolving certain, individual damages issues with respect to scholarships and grants does not negate predominance here. See, e.g., George v. Nat'l Water Main Cleaning Co., 2014 WL 1004109, at *4-5 (D. Mass. Mar. 17, 2014) (explaining that individual issues with respect to damages do not necessarily predominant over common issues of liability). The crucial issue remains, however, whether plaintiffs can establish the actual value of the education Brandeis provided during the Spring, 2020 semester after it moved classes online. See Comcast Corp. v. Behrend, 569 U.S. 27, 35-36 (2013) (rejecting the notion that

Daniels, Rachel 6/12/2023
For Educational Use Only

Omori v. Brandeis University, Slip Copy (2023)

"any method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary").

**\*4** Plaintiffs' inability to determine an actual value to be applied class-wide would break down the nexus between their proffered damages model and the class-wide demonstration of liability and measurement of damages. Id. at 34 (considering arguments relevant to both the merits and to class certification and finding that the plaintiffs' "model falls far short of establishing that damages are capable of measurement on a classwide basis"). That failure would lead to countless questions about individual class members, the particular courses in which they were enrolled, the conduct of those courses post-COVID and which, if any, online courses offered pre-COVID were suitable comparisons. Such issues would predominate over common ones.

Plaintiffs advocate that the propriety of their damages model and of their expert's conclusions as to actual value are questions for the trier of fact to evaluate. They are correct to the extent that the Rule 23(b)(3) inquiry does not permit courts to "engage in free-ranging merits inquiries at the certification stage." Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013) (explaining that merits questions "may be considered to the extent" they are relevant to the Rule 23 analysis). The Supreme Court has emphasized, however, that plaintiffs must

> *prove* – not simply plead – that their proposed class satisfies ... the predominance requirement of Rule 23(b)(3).

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 275 (2014).

Here, plaintiffs' ability to demonstrate liability and damages on a class-wide basis is dependent upon the actual value of online, Spring 2020 education which plaintiffs propound and the propriety of their damages model.

### b. Plaintiffs' Damages Model for the Tuition Class and the Studio Fee Class

### i. The Tuition Class

Having found it necessary to consider plaintiffs' damages model at class certification, the Court begins with the Tuition Class. For the following reasons, the Court concludes that plaintiffs cannot establish the actual value of the post-COVID education that Brandeis students received during Spring, 2020 and, therefore, cannot satisfy Rule 23(b)(3) predominance.

Plaintiffs submit the following damages model for the Tuition Class, in which they:

> 1) derive a per-credit hour cost ratio between purportedly comparable graduate courses offered online and in-person prior to Spring, 2020;
>
> 2) apply that ratio class-wide to the tuition charged for in-person education in Spring, 2020 to determine the actual value of the online education Brandeis that students received post-COVID;
>
> 3) pro-rate the difference in value between the education proffered and the education received to account for the fact that only 8 of 17 weeks of the semester were moved online and, potentially;
>
> 4) offset damages by the amount of scholarships or grants allowed to students by the University. [1]

[1]    Plaintiffs do not account for Step 4 in their briefs or expert report but, at the hearing on class certification, counsel suggested that such a calculation could be included in their damages model.

The University contests the validity of Steps 1 and 2 and, upon careful review, the Court agrees with that challenge.

First, plaintiffs are unable to compare directly pre-COVID undergraduate courses offered both in-person and online because "Brandeis does not offer any undergraduate online programs". See Docket No. 130-17 at ¶ 32, Expert Report of Charles D. Cowan ("Cowan Report"). The parties and the

**Daniels, Rachel 6/12/2023**
**For Educational Use Only**

Omori v. Brandeis University, Slip Copy (2023)

Court were cognizant of that factor at the summary judgment stage but the Court, viewing the facts in the light most favorable to plaintiffs, contemplated that they might instead establish a difference in value attributable to in-person versus online education at Brandeis by demonstrating a "consistent difference in cost" between the University's in-person and online graduate programs. Omori, 2022 U.S. Dist. LEXIS 189787, at *16 (citing In re Suffolk Univ. Covid Refund Litig., 616 F. Supp. 3d 115, 118 (D. Mass. 2022)).

 **\*5** Plaintiffs' expert report explains, however, that tuition for graduate programs also varies based upon the kind of program (apart from the method of presentation) while charges for undergraduate programs do not. Cowan Report at ¶ 28. Furthermore, plaintiffs' damages model compares online graduate courses offered at the Graduate Professional Students division of the Rabb School of Continuing Education ("Rabb GPS"), which offers online masters' degrees "in fields that are related to business and executive education", to the in-person graduate programs offered at the Heller School of Social Policy and Management ("Heller"). Id. at ¶¶ 33, 36-37.

Plaintiffs purportedly opted for that comparison despite the different kinds of programs offered because Heller charges less for its in-person programs than do other graduate divisions and thus reflects a "more conservative approach" to determining the cost ratio between in-person and online education. Id. at ¶ 37. Nevertheless, plaintiffs' approach acknowledges that: 1) the tuition charged to graduate students at Brandeis varies by program, modality and other factors but 2) undergraduate students are charged the same tuition regardless of program.

Despite those drawbacks, the students' damages model applies the cost ratio between the online programs at Rabb GPS and the in-person programs at Heller to determine the "actual value" of the University's online, post-COVID programs based upon

> [t]he primary assumption ... that the ratio of the value of on-ground experience and the value of an online-only experience would remain

consistent across students of any level that have chosen to enroll at Brandeis.

Id. at ¶ 35.

That "primary assumption" is unsupported and no fact-finder could rely on the actual value it yields in order to make class-wide determinations. For instance, the online courses at Rabb GPS upon which plaintiffs rely were offered asynchronously but the post-COVID courses taken by class members were typically offered in real-time and taught by their usual professors. See, e.g., Michel v. Yale Univ., No. 20-CV-01080-JCH, 2023 WL 1350220, at *6 (D. Conn. Jan. 30, 2023) (explaining that asynchronous programs could not be compared to live programs because of differences in content, faculty size and other differentiators). Plaintiffs' damages model does not account for that difference or address whether it would impact certain courses and students but not others.

Nor does the model account for how COVID-19 itself may have affected the value of online education in Spring, 2020 or address whether that effect may have been more pronounced with respect to certain courses and students. See Comcast, 569 U.S. at 38 (damages model must translate "legal theory of the harmful event into an analysis of the economic impact of that event"). Furthermore, plaintiffs' damages model does not address the variation in scholarships, grants and aid provided for different kinds of programs or educational modalities. Such variation is not only pertinent on an individual level to the tuition paid by class members (an individual damages issue potentially compatible with class certification) but also to the class-wide, actual value of different programs.

Thus, the "actual value" of online, post-COVID education that plaintiffs proffer cannot be applied on a class-wide basis. Without such a value, the connection between their damages model and proof of liability and damages breaks down. A fact-finder evaluating those issues would instead be confronted with subjective and individualized questions, such as whether an individual student's post-COVID online education was, given her particular courses and experience, akin to her pre-COVID education or more comparable to the online graduate courses offered at Rabb GPS.

**Daniels, Rachel 6/12/2023**
**For Educational Use Only**

Omori v. Brandeis University, Slip Copy (2023)

**\*6** The out-of-circuit appellate decisions cited by plaintiffs are unpersuasive with respect to class certification. In each case, the appellate court noted that a price differential between in-person and online courses supported a claim for breach of implied contract at the motion to dismiss stage. See, e.g., Gociman v. Loyola Univ. of Chi., 41 F.4th 873, 885 (7th Cir. 2022); Rynasko v. New York Univ., 63 F.4th 186, 199 (2d Cir. 2023) (dicta that a price differential "may be highly relevant for showing damages"). Although that principle is consistent with this Court's prior decisions, it does not suggest a finding that plaintiffs' proposed damages model and class-wide theories are suitable for certification here.

Finally, the students cite class certification decisions in Arredondo v. Univ. of La Verne, 341 F.R.D. 47 (C.D. Cal. 2022) and Ninivaggi, 2023 WL 2734343. In Ninivaggi, the court stated that the "fair market value of an online education [at the University of Delaware] does not vary by student." Id. at \*9. As discussed above, the Court concludes that plaintiffs in the case at bar have not proffered an actual value of Spring 2020 online education that can be applied class-wide. As a result, their damages model necessarily implicates subjective and individualized questions. On the facts of this case, therefore, the value of the post-COVID education provided by Brandeis in Spring, 2020 would require individualized proof complicated by "the presence of thousands of plaintiffs." Id.

Arredondo presents an even sharper contrast. The Central District of California held that

> [r]egardless of the correct market value of online classes at University of La Verne, the value is capable of classwide calculation.

341 F.R.D. at 53.

The Court cannot come to a similar conclusion here. In Arredondo, Dr. Cowan served as the plaintiffs' expert and was able to compare the price of degrees offered in-person directly with the same degrees offered online "at a lower rate". His report indicates that the subject degrees were not "any different" from one another. To the contrary, as conceded by plaintiffs and Dr. Cowan here, there is no direct comparison

between the in-person and (limited) online courses offered by Brandeis. Moreover, for the reasons already discussed, the indirect comparison suggested by plaintiffs does not establish the actual value of the online education provided by Brandeis.

### ii. The Studio Fee Class

The parties address the Studio Fee Class only in passing. Studio fees charged by Brandeis varied by course and pertinent services and materials associated with the fees were provided to certain students after the Spring 2020 semester moved online. Other materials were provided pre-COVID but retained by students after the transition to online instruction.

Plaintiffs' proposed damages model would calculate the studio fee charged to individual class members and pro-rate it by the percentage of the time courses were held online. Cowan Report at ¶ 24. Although the plaintiffs contend otherwise, that approach means that any services and materials provided by Brandeis had zero value as soon as classes moved online. For instance, plaintiffs do not dispute that Yang, the named plaintiff who paid a studio fee, received up to $300 to purchase art supplies after his studio class went remote. Nevertheless, plaintiffs' damages model determines that he is entitled to $35.29 attributable to the studio fee ($75 fee × 8/17 weeks online).

Plaintiffs suggest that their model can be updated based on additional information obtained from the University but it is apparent that separate calculations would be necessary to determine which individuals sustained any damage at all. Furthermore, plaintiffs' generic commitment to determining individual damages at a future point does not accord with their treatment of Yang's supposed damages. Even if the Court were to countenance the allegations of a common injury with respect to studio fees, the existence of damages to any particular class member "turns on an assessment of the individual facts concerning that person." In re Asacol, 907 F.3d at 55.

### c. **Rule 23(b)(3)** Superiority

**\*7** The Court's conclusion as to superiority depends upon its findings on predominance. Because the actual value of online,

**Daniels, Rachel 6/12/2023**
**For Educational Use Only**

Omori v. Brandeis University, Slip Copy (2023)

post-COVID education in Spring, 2020 is indeterminable and there is no damages model applicable class-wide, individual issues prevent a finding of superiority. While class certification is an important mechanism for the resolution of cases in which "small amounts of damage [are inflicted] on large numbers of people", id. at 56, certification of the Tuition Class and/or Studio Fee Class would not be a more fair and efficient method of adjudicating this controversy. See Rule 23(b)(3).

**ORDER**

For the foregoing reasons, plaintiffs' motion for class certification (Docket No. 128) is **DENIED**.

**So ordered.**

**All Citations**

Slip Copy, 2023 WL 3511341

---

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.