IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

**ORION EDDLEMON,** individually and on behalf of all others similarly situated,

           Case Number: 1:20-cv-01264-MMM-JEH

    **Plaintiff,**

v.

**BRADLEY UNIVERSITY,** an Illinois not-for-profit corporation,

    **Defendant.**

### NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF'S <u>MOTION FOR CLASS CERTIFICATION</u>

        Matthew T. Peterson, ARDC: 6321290
        Brian W. Warwick; Florida Bar: 0605573
        Janet R. Varnell, Florida Bar: 0071072
        **VARNELL & WARWICK, P.A.**
        1101 E. Cumberland Ave., Ste. 201H, #105
        Tampa, Florida 33602
        T: 352-753-8600
        F: 352-504-3301

On February 4, 2022, Plaintiff filed his motion for class certification. [D.E. 41]. Since then, three relevant areas related to class certification law have developed: (1) 7th Circuit Court of Appeals rulings regarding (a) pleading requirements for a student's breach of contract and unjust enrichment claims; and (b) students' standing to collect third party payments; (2) other recent tuition and fee refund class certification rulings; and (3) proving Article III standing at certification after *TransUnion LLC v. Ramirez*, 210 L. Ed. 2d 568, 141 S. Ct. 2190 (2021)[1].

## I.     Recent 7th Circuit Rulings under Illinois Law

### A.  Pleading Requirements for Breach of Contract and Unjust Enrichment Are Met

In *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873 (7th Cir. 2022), students brought a class action against Loyola University alleging breach of contract and unjust enrichment after the school suspended in-person instruction and moved courses online. Reversing dismissal, the 7th Circuit found that students had sufficiently alleged that the school catalogues, registration portal, pre-pandemic practice, and different charges for Loyola's online versus on-campus programs were sources of an implied contract to provide both in-person instruction and access to the school's campus in exchange for tuition and fees. *Id.* at 884. Loyola's argument that a disclaimer and express reservation of rights meant that it could "change, at any time, without notice ... curriculum, course structure and content ... notwithstanding any information set forth in the catalog" was better resolved after the motion-to-dismiss stage. *Id*.

Subsequently, in *Hernandez v. Illinois Institute of Technology*, the 7th Circuit reversed the lower court's dismissal of tuition and fee claims, holding, as it did in *Gociman*, that a school's "customs, conduct, and materials such as 'catalogues, bulletins, circulars, regulations, and other

---

[1] As explained in Plaintiff's Brief in Support of Class Discovery ("Plaintiff's Discovery Brief") [D.E. 73], *TransUnion* has been interpreted to require class members' Article III standing to be proved at class certification. Some of the more recent cases interpreting *TransUnion* are noted in Plaintiff's Discovery Brief so will not be addressed here.

1

publications' may support an implied contract" if the materials evidence the school's intent to be bound. 63 F. 4th 661, 667 (7th Cir. 2023) (quoting *Gociman*, 41 F. 4th at 883). The 7th Circuit once again rejected the school's argument that it enjoyed unfettered discretion in responding to the pandemic because of disclaimers included in its materials. *Id*. at 669. Additionally, the court found that the plaintiff adequately alleged unjust enrichment. *Id*. at 671.

Both *Gociman* and *Hernandez* are instructive at class certification because Bradley argues that its Course Catalog's disclaimer that "the academic calendars are subject to revision" allows Bradley to cancel any number of weeks of classes without making up those weeks. *See* [D.E. 48, p.15-16]. Thus, like in *Loyola* and *Hernandez*, where the 7th Circuit declared that course catalogue disclaimers were better considered at the merits stage of the litigation, the same is true regarding Bradley's Course Catalog disclaimer. *See Gociman*, 41 F.4th at 884; *Hernandez*, 63 F. 4th at 665; *see also Eddlemon v. Bradley Univ.*, 65 F.4th 335, 341 (7th Cir. 2023) ("[A]ny attempt to cast doubt upon the sufficiency of [the academic catalogue and other items] to prove the alleged contractual promises goes to the merits of Eddlemon's claims, not to whether common questions exist and predominate. So, the district court did not err by rejecting Bradley's arguments regarding the sufficiency of Eddlemon's evidence."). Moreover, the interpretation at trial of Bradley's disclaimer will be the same for all students because the Academic Calendar does not vary from student to student.

### B. Students Possess Standing to Collect on Payments Made on Their Behalf

Bradley argues that Plaintiff's refund damages model fails because it includes amounts paid towards tuition and fees by third parties, such as parents, and that these amounts must be deducted in any damages analysis. [D.E. 48, p.10]. However, Plaintiff Eddlemon and the tuition and activity fee classes have standing to recover tuition and activity fee payments made on their

behalf by their parents or other third parties because the students themselves are the ones with a contractual relationship with the school and they are the ones who suffered the injury caused by the school's actions. In fact, although courts in the 7th Circuit and elsewhere have concluded that parents of adult students lack standing to bring similar COVID-19-related lawsuits against universities, numerous courts have held that the students can bring claims for payments made by parents. *See e.g., Ninivaggi v. Univ. of Delaware*, No. 20-CV-1478-SB, 2023 WL 2734343, at *2 (D. Del. Mar. 31, 2023) ("No need to "kick out students" from class who paid with money from outside sources for lack of standing because students were parties to allegedly breached contract); *Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937, 949 (C.D. Cal. 2022) (rejecting argument that class members are not ascertainable where parents and third parties may have paid for class members' education because students are intended beneficiaries of contract); *Metzner v. Quinnipiac Univ.*, 528 F. Supp. 3d 15, 26 (D. Conn. 2021) ("[I]t is the student … that has suffered the alleged injury-in-fact that is traceable to the alleged actions of [the university] for purposes of Article III"); *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 372 (D.N.J. 2021) (regardless of whether student's parent had standing; student suffered an injury by receiving a different, allegedly lesser education than expected); *Little v. Grand Canyon Univ.*, 2022 WL 266726, at *3–4 (D. Ariz. Jan. 28, 2022) (rejecting argument that student lacked standing where parents paid fees and costs and holding it was student who contracted with school; if student failed to pay, he, not parents, would be "on the hook," so irrelevant how he procured money to pay obligations that were ultimately his); *Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOx), 2020 WL 7350212, at *5 (C.D. Cal. Dec. 11, 2020) (student was intended beneficiary of any promises that school allegedly made and student, not parent, suffered any alleged injury that resulted from transition to remote instruction).; *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 524 F. Supp.

3

3d 1346, 1354–55 (S.D. Fla. 2021) (student had claim even where parent lacked standing); *Salerno v. Florida S. Coll.*, 488 F. Supp. 3d 1211, 1216 (M.D. Fla. 2020) (dismissing parent but not student for lack of standing and noting college does not pursue parents of students for unpaid balances but rather all financial and academic records are under student's name and ID number).[2]

Accordingly, Defendant's argument that Plaintiff lacks a viable class wide damages model is deeply flawed. Damages can be measured on a class wide basis as a percentage of total tuition and fees paid by each student because all students received only 14 weeks of instruction for the 15-week semester. The students are "on the hook" for their tuition and fees and thus should be able to collect refunds even where third party payments were made on their behalf. This is why Bradley's refund of room and board is relevant because Bradley would have made 7/15 refunds to students who had their parents or other third parties pay their room and board.

## II.     Recent College Covid Class Certification Decisions

### A.  **2023 *Ninivaggi v. Univ. of Delaware* is Highly Persuasive**

Plaintiff Eddlemon's case is one of first impression. No claims have been brought in any U.S. jurisdiction pursuant to Plaintiff Eddlemon's theory, *i.e.,* that a pro rata refund is owed where a school promised its students a 15-week school semester, but failed to provide the full 15 weeks either online or in person. All other tuition and fee cases in which class certification has been granted or denied concern plaintiffs seeking a refund for the difference in value of tuition paid for on-campus classes versus that of online classes during Covid-19 college closures. Notably, these cases involve colleges that provided the full schedule of weeks promised.

---

[2] A particularly relevant state case, *McDermott v. Ohio State Univ.*, 10th Dist. Franklin No. 22AP-76, 2022-Ohio-4780, 205 N.E.3d 58, 64, *appeal allowed*, 2023-Ohio-1326, 169 Ohio St. 3d 1500, 207 N.E.3d 835 is discussed below under Section IIB, *supra*. That case also held that students could bring claims despite their fees being paid by parents or other third parties ("Whether a third-party paid the fee on behalf of a class member is simply not the determinative factor as to whether all class members were injured in fact.")

4

Even though some of these cases may be relevant to the class certification issues here, no Illinois district court or 7th Circuit cases involve contested class certification orders, or subsequent appeals. Only cases outside the 7th Circuit include analysis undertaken in these postures. Importantly, in a recent filing in *Gociman*, the parties indicated they will move for preliminary approval of a class settlement by July 11, 2023, likely becoming the first of the Illinois cases – of many to come – to settle as a class. To the extent this Court wishes to consider other out-of-circuit cases that are based on a "difference in value" theory, a few cases provide guidance.

The most instructive federal case is *Ninivaggi, supra,* where the court conducted a rigorous Rule 23 analysis by considering each element of Plaintiff's breach of contract and unjust enrichment claims. 2023 WL 2734343, at *7. Regarding predominance, the court first found that "the existence of an implied contractual term about in-person learning is subject to class-wide proof." *Id*. "The conduct necessary to show that in-person education was part of the bargain will be the same for all class members" and "minor individualized questions [that the school] emphasizes, like whether each student saw the website, would not move the needle." *Id.* Next, the court declared, "[b]ecause the existence of an implied contract is amenable to class-wide proof, it is a common question. So is the breach of that contract. There is no evidence that in spring 2020, [the school] held classes in person for some students but not others." *Id*.

This analysis is useful when examining Bradley's argument that Plaintiff and the class may not have each seen the Academic Calendar or Student Activities Budget Review Committee ("SABRC") articles, which promise 15 weeks of classes and activities. *See id.* Such a "minor individualized question" should not "move the needle" because the Academic Calendar and SABRC articles are the same for all students, and can be offered as class-wide proof of an implied

5

contract. *See id.* Nor is there any evidence that Bradley did not cancel the same week of classes and activities for everyone; in fact, Bradley admits it cancelled the week.

*Ninivaggi* is also relevant to Bradley's argument that it was forced to cancel the week as a result of the Governor's stay-at-home orders. This amounts to an impossibility defense, which also will not vary from student to student, and is a common question. *Id.* at *8 (" [The school] will raise a common question through its key affirmative defense: impossibility. [The school] will argue that even if it did promise to hold classes in person, doing so was impossible during the pandemic. And whether [the school's] performance was impossible does not vary from student to student. Rather, it can be shown through the governor's order cancelling classes.")

*Ninivaggi* is likewise useful in considering Plaintiff's unjust enrichment claim and its relation to Plaintiff's breach of contract claim:

> [C]onsider the relation between plaintiffs' contract and unjust-enrichment claims. Plaintiffs plead unjust enrichment as an alternative to breach of contract. But the two converge here, as plaintiffs recognized at argument. *See* Tr. 74:2–75:17. If plaintiffs' contract with U. Delaware did not promise in-person classes, they would have no unjust-enrichment claim. U. Delaware would have given plaintiffs exactly what they bargained for and thus would not be unjustly enriched. But if in-person classes were a part of the bargain, then unjust enrichment may play a role in plaintiffs' case. As discussed, U. Delaware will likely argue that holding in-person classes was impossible. And when a contract is voided due to impossibility, the "benefits conferred by way of partial performance have no basis in a valid agreement." Restatement (Third) of Restitution § 34 cmt. c. Thus, the party "whose performance is more advanced"— in this case, the students, who had already paid full tuition — may have "a claim in restitution as necessary to prevent the unjust enrichment of the other." *Id.*; *cf.* Fleer Corp. v. Topps Chewing Gum, Inc., 539 A.2d 1060, 1063 (Del. 1988) (finding that the plaintiff had a claim in restitution when performance of an exclusive licensing agreement was impossible due to a court order that was later reversed); *see also* D.I. 15, at 13–14. Alternatively, if U. Delaware's performance was only partly impossible, then the contract was not voided but the students may have a claim in restitution for the part not performed. *Id.* § 270 & cmt. b (discussing partial impracticability).

In this case, even if Bradley had to cancel a week of classes because it was impossible not to do so, the school could still be unjustly enriched as a result. *See id.* If Bradley did not promise

6

a 15-week course, and was free to shorten the course time in an unfettered way, Bradley would have given Plaintiff what he bargained for and would not be unjustly enriched. *Id.* But if the full 15-week course was part of the bargain, the cancellation may have unjustly enriched Bradley.

Lastly, the *Ninivaggi* court addresses damages issues regarding full scholarships, partial scholarship, and grant monies, "U. Delaware says it is impossible to know who actually paid tuition because some students might have paid with money from outside sources, like scholarships. *See* D.I. 94, at 5–6. But as plaintiffs have defined this class, the only students excluded are those who received full rides from the school itself." 2023 WL 2734343, at *2 (Because school has records to determine which students did not get full rides, there is reliable way to determine the students who paid, whether with money from outside sources or not); *see also Omori v. Brandeis Univ.*, No. CV 20-11021-NMG, 2023 WL 3511341, at *3 (D. Mass. May 17, 2023) (The Court agrees that the prospect of resolving certain, individual damages issues with respect to scholarships and grants does not negate predominance here); *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 197–98 (E.D. Va. 2015) ("[i]n general, courts do not look favorably on the argument that records a defendant treats as accurate for business purposes are not accurate enough to define a class.")

In the instant case, Plaintiff defined the classes in the exact same manner as in *Ninivaggi*, to exclude scholarships, assistantships, and grants, and included only those students in the classes "who paid, or on whose behalf payment was made." [D.E. 41, at 1]. Bradley's Spring 2020 semester invoices itemize the amount of each full ride or partial scholarship, assistantship, and grant on each student's invoice. [D.E. 41-3] (Plaintiff's itemized invoice). Students who received full rides would be excluded from the Tuition Class because they did not pay, or have payment made on their behalf. Students, like Plaintiff, who received partial scholarships, assistantships, or grants, will just have those amounts deducted from the total tuition charged. For example,

7

Plaintiff's Spring 2020 invoice reflects that his tuition was $17,100 and that he received $6,000 in itemized scholarships--a $2,500 Bradley University Transfer/Cornell Scholarship and $3,500 Presidential Transfer Scholarship. This means Plaintiff, and any third parties who paid tuition on his behalf, paid $11,100 in tuition ($17,100 - $6,000), and Plaintiff would thus be entitled to a 1/15 refund from the $11,100, or $740, from those payments made by Plaintiff or third parties.

### B.  Recent Ohio State Court Class Certification is Instructive

Although *McDermott v. Ohio State Univ.,* 10th Dist. Franklin No 22AOP-76, 2022-Ohio-4780, 205 N.E.3d 58, is an Ohio state court case where certification was affirmed on appeal, the theory advanced is most analogous to Plaintiff's claims.[3] There, the trial court certified a class of students who paid a mandatory student union facility fee and sought recovery after Ohio State University ("OSU") closed the student union for the final 7 weeks of the semester. *Id.* at 62.

The Tenth District Court of Appeals affirmed certification of the mandatory student union fee class, ruling that common issues and common evidence would apply:

> Nevertheless, for purposes of class certification, the question whether full-time on campus students pay the student union facility fee in order [to] have access to the student union or to service the debt attributable to construction is a threshold question of liability common to all class members. As there is no dispute OSU used the fee income for debt service, the answer to that common question will generate an answer common to all class members. Indeed, if the court of claims rules the surrounding facts and circumstances show that the parties understood the student union facility fee was paid merely to service the debt associated with constructing the facility, and not to guarantee access by students and the public, that ruling will dispose of the implied contract and unjust enrichment claims of all class members seeking a prorated refund. This common issue can be decided based on common evidence such as the Buckeye Guide to Academic Policies, OSU's promotional materials, McDermott's testimony, and the testimony of OSU's administrative staff.

---

[3] Ohio state cases may be relevant in part because "the Supreme Court of Ohio has endorsed consulting federal law interpreting the federal [class action] rule [23] as appropriate and persuasive authority in interpreting [Ohio's class certification rule] Civ. R. 23." *Waitt v. Kent State University*, 2022 WL 17986762 (Ohio Ct. App. Dec. 29, 2022)

8

*Id.*, at *68. The court rejected OSU's argument that even if the student union fee was deemed an access fee, it would require hundreds or thousands of mini-trials to determine individual questions of damages as to who used the student union facility. *Id*. The court found that OSU lacked evidentiary support because full-time students living on campus could not opt out of the student union fee if they promised not to use the facility and additional charges were not applied to those students who frequently visited the student union facility. *Id*. Thus, the class could be certified.

The *McDermott* facts, similar to Plaintiff's facts, make that court's analysis persuasive. Whether Bradley promised 15 weeks of classes and on-campus activities is a threshold question of liability that is common to all class members. This common issue will be decided upon the common evidence that Plaintiff will present at the upcoming class certification hearing, such as Bradley's Course Catalog's Academic Calendar promising 15 weeks, testimony of Bradley staff, Bradley's historical length of semesters, and industry standards of semester length. The *McDermott* opinion also provides guidance on how to analyze Bradley's arguments regarding whether students would or would not have participated in activities while the campus was closed. *See id.*, at 69 (students unable to opt out of fee and no additional charges for frequent use).

### C. Other Recent Federal Class Certification Cases Are Distinguishable

In other federal jurisdictions, "difference in value" cases were denied certification for reasons that are distinguishable from Bradley's failure to provide a week of class. *See, e.g.*, *In re Suffolk Univ. Covid Refund Litig.*, No. CV 20-10985-WGY, 2022 WL 6819485, at *1 (D. Mass. Oct. 11, 2022) (class certification denied where Plaintiff could not provide common evidence capable of proof at trial that all class members suffered harm from transition from in-person to online classes, as some students may have enjoyed the transition or gotten more out of the classes); *Omori v. Brandeis Univ.*, No. CV 20-11021-NMG, 2023 WL 3511341, at *1 (D. Mass. May 17,

9

2023) (court questioned whether plaintiffs can establish value difference between in-person and online education).

There have likewise been a series of Ohio state court cases that initially granted class certification of "difference in value" cases, but were remanded on appeal. These cases are distinguishable not only in theory, but in the court's consideration as well. *See, e.g.*, *Cross v. Univ. of Toledo*, 10th Dist., 2022-Ohio-3825, 199 N.E.3d 699, ¶31 (abuse of discretion where "court's discussion did little more than repeat the language of class action rule"); *Weiman v. Miami Univ.*, 10th Dist. No. 222AP-36, 2022-Ohio-4294, ¶ 4 (abuse of discretion where court failed to consider defendant's damages model argument at all because court thought it was for the merits phase); *Smith v. Ohio State Univ.*, 10th Dist., 2022-Ohio-4101, ¶ 3, 200 N.E.3d 1249, 1252, *appeal allowed*, 2023-Ohio-758, ¶ 3, 169 Ohio St. 3d 1457, 204 N.E.3d 565 (abuse of discretion to accept switch to remote classes as economic injury based on pleading standard, and error to ignore defense arguments on insufficient market report); *Waitt v. Kent State Univ.*, 2022 WL 17986762 (Ohio Ct. App. Dec. 29, 2022), ¶ 10 (abuse of discretion to certify class where survey on difference of market value between in-person and online courses not yet performed and thus no common evidence of harm as a result) (citing *Smith v. Ohio State Univ.*, *supra*)).

For the foregoing reasons, Plaintiff submits this precedential and persuasive supplemental authority in support of his motion for class certification.

Dated: June 16, 2023                                **VARNELL & WARWICK, P.A.**

/s/ Matthew T. Peterson
Matthew T. Peterson, ARDC: 6321290
Brian W. Warwick; Florida Bar: 0605573
Janet R. Varnell, Florida Bar: 0071072
1101 E. Cumberland Ave., Ste. 201H, #105
Tampa, Florida 33602
T: 352-753-8600
F: 352-504-3301

10

*mpeterson@vandwlaw.com*
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*

**Counsel for Plaintiff**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 16, 2023, I electronically filed the foregoing with the Clerk of the Court through the CM/ECF System, which will send a notice of electronic filing to all counsel of record.

/s/ Matthew T. Peterson
Matthew T. Peterson