**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

**ORION EDDLEMON,** individually and on
behalf of all others similarly situated,

             **Case No.: 1:20-cv-01264-CRL-JEH**

    **Plaintiff,**

**v.**              **JURY TRIAL DEMANDED**

**BRADLEY UNIVERSITY,** an Illinois not-
for-profit corporation,

    **Defendant.**

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND SUPPORTING MEMORANDUM OF LAW

Plaintiff Orion Eddlemon ("Eddlemon" or "Plaintiff"), hereby moves this Court for an

Order: (i) granting class certification under Rule 23(b)(3), (ii) appointing Eddlemon as Class

Representative; and (iii) appointing undersigned counsel as Class Counsel, pursuant to Fed. R.

Civ. P. 23(g).

Eddlemon seeks certification of the following Classes:

> All students and former students of Bradley University who paid, or on whose
> behalf payment was made for tuition for on-campus classes for the Spring 2020
> Semester (the "Tuition Class")

Those students who received scholarships, grants, and/or assistantships that covered 100%
of tuition are excluded from the Tuition Class.

> All students and former students of Bradley University who paid, or on whose
> behalf payment was made, for an Activity Fee for the Spring 2020 Semester (the
> "Activity Fee Class")

## MEMORANDUM OF LAW

## I.    INTRODUCTION

Judge Mihm properly certified this case pursuant to Rule 23 after common evidence and argument was presented to him because the claims turn exclusively on common evidence. [D.E. 64].  While he may not have drafted his order in accordance with the 7th Circuit's claim by claim, element by element requirements with citations to record evidence, the outcome was correct.  This Court should reach the same result when all the evidence and arguments are evaluated.

Eddlemon claims that he and other students paid Bradley tuition in exchange for 15-weeks of class instruction and paid an $85 Activity Fee for 15-weeks of on-campus activities during the 2020 Spring Semester.  But Eddlemon and other students did not get the benefit of their bargain (or unjustly enriched Bradley) when Bradley cancelled one week of class instruction (did not occur on campus or online), and all activities for half the semester when students were sent home due to the COVID 19 pandemic.  Because all students suffered the same damages as a result of these cancellations, the requirements for certification under Rule 23 have been met.

## II.    ARGUMENT

### A.    Legal Standard

This Court has broad discretion to grant class certification. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.2d 935, 942 (2009). Fed. R. Civ. Proc. 23(c)(1)(A) provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Rule 23(b)(3) requires that common questions of law and fact predominate over questions affecting only individual class members, and that a class action is "superior to other available methods of adjudicating the controversy." Fed. R.Civ. P. 23(b)(3).  When assessing whether Plaintiff has met the Rule 23

requirements, the court must conduct a "rigorous analysis." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

However, the Seventh Circuit also clarified that while the Rule 23 rigorous analysis may entail some overlap with the merits, the District Court "may only consider the merits of a claim to the extent they are relevant to determine whether the Rule 23 prerequisites for class certification are satisfied." *Eddlemon v. Bradley University*, 65 F.4th 335, 341 (7th Cir. 2023) (internal citation omitted). "At the class certification stage, therefore, the court must walk a balance between evaluating evidence to determine whether a common question exists and predominates, without weighing that evidence to determine whether the plaintiff class will ultimately prevail on the merits." *Id.* (internal citation omitted).

Thus, Eddlemon must show that the prerequisites of Rule 23(a) and at least one prong of Rule 23(b) are satisfied for both his breach of contract and unjust enrichment claims. As the Seventh Circuit has advised, to determine "which issues are common, individual, and predominant," the court must "circumscrib[e] the claims and break[ ] them down into their constituent elements." *Id.* at 339 (internal citations omitted). Accordingly, Eddlemon will start with all the common evidence and then proceed to explain how that common evidence can be used to prove each element of the breach of contract and unjust enrichment claims, thereby satisfying the requirements of Rule 23.

### B.    Common Evidence Supporting Plaintiff's Breach of Contract and Unjust Enrichment Claims

Both Plaintiff's breach of contract claims and his alternatively pleaded unjust enrichment claims turn on the same five general categories of common evidence: (1) 15-weeks of course instruction; (2) 15-weeks of on-campus activities; (3) payment of tuition and activity fee, (4) breach of those obligations; and (5) damages.

### i.  Common Evidence of a 15-week Semester

First, there is ample evidence that an implied contract exists between Bradley and its students to provide a 15-week semester. Bradley's Spring 2020 Course Catalog included a 15-week Academic Calendar showing that classes were to be conducted between January 22, 2020 and May 5, 2020 (titled 2019-2020 Second Semester), with one-week for Spring Break built in. Exhibit 1, 2. The Catalog also declares at the bottom of each section, including the Academic Calendar: "*This catalog serves as a contract between a student and Bradley University.*" Exhibit 1, 2. Bradley's Course Catalog lists the specific courses are required to obtain a degree from each college within the University, such as the Foster College of Business. Exhibit 3. The Course Catalog also provides a course description for each course and how many credit hours will be achieved for completing each course. Exhibit 4. Unlike other colleges or universities, Bradley does not offer alternative class schedules for expedited completion for the Spring 2020 semester.  All classes offered by Bradley for the Spring 2020 semester were to occur over a 15-week course of instruction. Exhibit 2.

Second, Bradley's 2019-2020 Student Handbook incorporates the Course Catalog's 15-week Academic Calendar verbatim. Exhibit 5 (Handbook in full); Exhibit 6 (Course Catalog's 15-week calendar incorporated into Handbook).

Testimony from Bradley employees also provided evidence of a 15-week semester. Bradley's Vice President for Student Affairs, Nathan Thomas, testified that Bradley has utilized a 15-week semester since he began working at Bradley in July 2000. Exhibit 7. Bradley's Interim Associate Provost of Academic Affairs, Jobi Skaggs, testified that Bradley's semesters have traditionally been 15-weeks. Exhibit 8.

Bradley's response to Plaintiff's Request for Admission #5 also admitted that the Academic Calendar for the Spring 2020 semester was scheduled from January 22, 2020 to May 5, 2020. Exhibit 9. Additionally, Bradley's responses to Plaintiff's Request for Admissions 6, 7, and 8 admits that Bradley historically provided 15-weeks of instruction during the spring semesters in 2017, 2018, and 2019. Exhibit 10. Bradley produced no evidence that some courses of study within the University use a semester that consists of a time period other than 15-weeks for the Spring 20202 semester (Second Semester).

Further, a recent study conducted by Ohio State University, Cal Poly State University, and the University of California declares that it is industry custom for a university to operate on two 15-week semesters, and that in 2019, 95% of four year universities operated on a 15-week semester calendar. Exhibit 11, at p.6.

### ii.     Common Evidence Regarding the Activity Fee

The predominant common question for all Activity Fee Class Members is whether an implied contract existed for Bradley to provide 15-weeks of on-campus activities during the 2020 Spring Semester in exchange for the $85 Activity Fee paid by all students.  Whether or not Plaintiff and the class will ultimately prevail on the merits of this claim, the issue turns on common evidence.  First, there is no dispute that Bradley's Course Catalog did not offer online classes at the time students enrolled in the 2020 Spring semester. Exhibit 1.

Second, Bradley's Course Catalog explained that the 2019-2020 Activity Fee was to be paid by all students and was $85. Exhibit 12.

Bradley's website prior to the 2019-2020 school year declared: "Whether it's a snack in Michel Student Center, a concert at Renaissance Coliseum, games with friends at Late Night BU, multicultural activities or a student organization service project, Bradley University's campus is

5

always busy with fun activities." Exhibit 13. Bradley's marketing materials represents that the Markin Family Student Recreation Center has intramurals, club sports, and fitness classes, "available throughout the year." Exhibit 14. Bradley's marketing brochure for prospective students touts all of the on campus activities that the Markin Family Student Recreation Center offers. Exhibit 15.

While Bradley may argue that it provided some activities online before and after it switched to online courses due to COVID, there is common evidence that the Activity Fee paid by students were intended to fund on campus activities.  Exhibit 16 is the Spring 2020 Student Handbook's Student Activities Budget Review Committee Articles ("SABRCA"), which governs how the Activity Fee funds are to be allocated:

> All student activity moneys received based on $170.00 per student, per year for each student enrolled in nine (9) credit hours or more per semester.
>
> > a. 27% will be deposited into the SERF account.
> > b. 11% will be deposited into the Late Night BU account.
> > c. $38,000 will be deposited into the Club Sports account.
> > d. 20% will be deposited into the ACBU account.
> > e. 1% will be deposited into the SABRC operating account.
> > f. The remaining balance will be appropriated to the SABRC General Fund.

Exhibit 16, at Bradley2236. The SABRCA shows that the Activity Fee money was to be used for on campus activities. First, 27% of the money allocated to the Special Event Reserve Fund ("SERF") that is used to fund major on campus events (costs totaling $15,000 or more) on campus; past SERF events include Mike Posner/Jason Derulo, Weezer, Lupe Fiasco. Exhibit 17. This money is clearly dedicated for on campus concerts.

Second, 11% is to be allocated to "Late Night BU," which is an on-campus event that takes place in the Markin Center that is, "an alcohol-free night of entertainment planned, promoted and

run by students" and includes monthly events including "food from local restaurants, giveaways and a variety of activities. LNBU has featured card games, DJ party music, paintball, fencing competitions, crafts, glow-in-the-dark mini-golf and other amusements." Exhibit 18.

The $38,000 required to go to "Club Sports," are sports that occur on Bradley's campus or campuses of competing schools: "As a "middle ground" between NCAA Division I and intramurals, clubs travel regionally and compete in national tournaments. Student organizations manage the clubs, provide coaches and recruit players." Exhibit 19.

The 20% of the Activity Fee budget to be deposited into the Activities Counsel Bradley University ("ACBU") account. Bradley defines the ACBU as follows: "What is ACBU? We are in charge of planning events around campus throughout the semester!" Exhibit 20.

Finally, both the SABRC operating account and SABRC General Fund are subject to the SABRC 2020 Handbook, which was effective in the Spring 2020 semester. Exhibit 21. The SABRC Handbook does not mention online activities at all. *See id* generally. To the contrary, the Handbook specifically references on campus events such as: (a) "Any performance contract signed by the Director of Student Activities for a program must "be held on campus and is open to all students." (*Id*. at 5); (b) "Guidelines to assist students in providing food or dining services during events and functions on campus." (*Id.* at 6); (c) "Procedures for student organizations which seek to organize assemblies or protests on campus (*Id*. at 4).

### iii.    Common Evidence of Breach

There is common evidence that Bradley canceled one week of the Spring 2020 Semester and did not make it up. In Bradley's response to Request for Admissions Number 9 and 10, Bradley admits it cancelled one week of the Spring 2020 Semester and did not provide 15-weeks of on-campus classes. Exhibit 22. Nathan Thomas, Bradley's vice president for student affairs, testified

that Bradley did not provide any classes the week of March 23, 2020 through March 29, 2020. Exhibit 23. Bradley's Interim Associate Provost of Academic Affairs testified that Bradley extended spring break by one week by canceling one week of classes. Exhibit 24. Bradley's website posted to Bradley community on March 12, 2020 stated that Spring Break would be extended by one week. Exhibit 25. Bradley sent a B-News memo to faculty and staff on March 13, 2020 that the Markin Center was closed until further notice. Exhibit 26. Campus was closed for the final 7 weeks of the semester, and Bradley provided a 7/15 refund to students for room and board paid for on-campus housing because campus was going to be closed for the final 7 weeks of semester. Exhibit 27.

### iv.     Common Evidence of Charges and Payments

There is also evidence of common charges and payments by Plaintiff and members of the Classes in order to show performance and damages.  The tuition charged by Bradley is common as all students pay that same amount of yearly tuition for two 15-week semesters.  Specifically, Bradley's Course Catalog for the 2019-2020 school year shows the same common tuition rate applies to all courses of study and was established as $34,200 per year or $17,100 per semester. Exhibit 28.

Contract performance by students shall be measured at trial by whether the student has paid tuition to Bradley, which can be determined by Bradley's Billing Statement. Exhibit 29.  Plaintiff's damage model will compensate the Tuition Class by providing a 1/15 tuition refund for the amounts paid by each student, or for payments made on behalf of a student by a parent or other third party. The damage calculation shall exclude scholarships, grants, and assistantships because those are not payments made by or on behalf of the student.   Any scholarship, grant, or assistantship money will be deducted from a student's total tuition amount paid prior to calculating

their 1/15 refund. Students who received scholarships, grants, or assistantships that cover 100% of tuition would fall outside the class definition because they did not pay, or have payment made on their behalf.

As common evidence of tuition payments, Bradley provides each student with a Billing Statement for each semester which reflects the catalog's stated tuition rate of $17,100 per semester and adds to that amount any additional costs and charges that apply to each student. Exhibit 29. The Billing Statement also reflects how payments were made to Bradley by the student. *Id.* These Billing Statements are important to the claims at bar because they can be used to show the amount of tuition actually paid by the student, or on the student's behalf, for the 2020 Spring Semester.

For example, Plaintiff's Billing Statement Below, which is Exhibit 29, shows he received a $2,500 "Bradley University Transfer/Cornell Scholarship" and a $3,500 "Presidential Transfer Scholarship" for the 2020 Spring Semester.

| Tuition, Fees & Other Charges | | | | | |
|---|---|---|---|---|---|
| Spring Semester 2020 | 2020-01-22 | Tuition | | | 17,100.00 |
| Spring Semester 2020 | 2020-01-22 | Course Surcharges | | | 200.00 |
| Spring Semester 2020 | 2019-12-21 | Activity Fee | | | 85.00 |
| Spring Semester 2020 | 2019-12-21 | Health Fee | | | 120.00 |
| | | | | Subtotal: | 17,505.00 |

| Payments, Financial Assistance & Other Credits | | | | | |
|---|---|---|---|---|---|
| Spring Semester 2020 | 2019-12-21 | BU Transfer/Cornell Scholarship | | | -2,500.00 |
| Spring Semester 2020 | 2019-12-21 | Presidential Transfer Scholarship | | | -3,500.00 |
| Spring Semester 2020 | 2019-12-21 | Federal Direct Stafford Unsub Loan | | | -3,711.00 |
| Spring Semester 2020 | 2019-12-21 | Federal Direct PLUS Loan | | | -10,648.00 |
| | | | | Subtotal: | -20,359.00 |

| Other Activity | | | | | |
|---|---|---|---|---|---|
| Spring Semester 2020 | 2020-01-22 | Refund for Credit Balance | | | 2,854.00 |
| | | | | Subtotal: | 2,854.00 |

| | |
|---|---|
| Semester Charges | 17,505.00 |
| Semester Financial Aid and Payments | -20,359.00 |
| Adjustments | 2,854.00 |

The Billing Statement also shows that he paid, or had payment made on his behalf, for the remainder of his tuition through two different Federal Loans. *Id.* The Billing Statement also

reflects the $85 "Activity Fee" as being paid by each student. Because of his two scholarships, Eddlemon's Billing Statement shows that he actually paid $11,100 in tuition this semester. ($17,100 tuition - $6,000 in scholarships).  Under Plaintiff's damages model, Eddlemon would thus be entitled to a 1/15 refund from the $11,100 he actually paid in tuition, which equates to $740, (1/15 of $11,100).

While Bradley refused to provide Plaintiff copies of Billing Statements for other class members until after class certification[1], the Billing Statements issued to Plaintiff Eddlemon for other semesters reflect that such Billing Statements are routinely provided to each student by Bradley in the same template format and can be used post certification to calculate damages. Exhibit 30 (Eddlemon Billing Statements prior to and after Spring 2020).  Any student that has 100% of tuition covered by scholarship, grant, or assistantship will be reflected on the same Billing Statements and would simply not fall within the proposed Tuition Class and would be excluded because they did not pay or have payment made on their behalf by a third party.

According to Bradley's own website, scholarships and assistantships only cover tuition: "Scholarships and assistantships provide up to 100% tuition reduction on courses numbered 500 – 899 up to a maximum of 18 to 24 graduate semester hours per academic year, depending upon the program."[2] More specifically, the "Caterpillar Employee Dependents Scholarship," "Dean's Scholarship," "Legacy Scholarship," "Phi Theta Kappa," "Presidential Scholarship," "Presidential Transfer Scholarship," "Transfer Scholarship," and "University Scholarship" can "be applied to

---

[1] Exhibit 31, Bradley Response to Request for Production No. 3.
[2] https://www.bradley.edu/admissions/graduate/scholarships/

tuition only."[3]  In regard to grants, the "State of IL MAP Grant" is "restricted to tuition only," and the "Bradley Grant" can "be applied to tuition only."[4]

### C.        Common Evidence Regarding Breach of Contract Claims

The elements for breach of contract are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury. *Zirp-Burnham, LLC.*, 356 Ill. App. 3d at 600. Recently, in *Delisle v. McKendree Univ.*, the 7th Circuit addressed the pleading requirements for a breach of contract claim related to COVID-19-related university campus closures:

> Under Illinois law, the relationship between students and universities is a contractual one. *See Gociman*, 41 F.4th at 883; *Hernandez*, 63 F.4th at 666–67 (citing *Bosch v. NorthShore Univ. Health Sys.*, 440 Ill.Dec. 716, 155 N.E.3d 486, 495 (Ill. App. Ct. 2019)). To be more precise, "Illinois law generally recognizes an implied contract between a student and a school." *Bosch*, 440 Ill. Dec. 716, 155 N.E.3d at 495; see also *Gociman*, 41 F.4th at 883 (explaining that "the general nature and terms of the agreement are usually implied" in the university context (quoting *Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992))). That means the parties' obligations under the contract are "inferred from the facts and conduct of the parties, rather than from an oral or written agreement." *Hernandez*, 63 F.4th at 667 (quoting *BMO Harris Bank, N.A. v. Porter*, 423 Ill. Dec. 705, 106 N.E.3d 411, 421 (Ill. App. Ct. 2018)). But make no mistake, a student's implied contract with their university is enforceable, just like an express contract would be. See id. (citing *Steinberg v. Chicago Med. Sch.*, 69 Ill.2d 320, 13 Ill.Dec. 699, 371 N.E.2d 634, 640 (1977)).

73 F.4th 523, 524 (7th Cir. 2023).  The Court went on to hold that "students can establish the existence of an implied contract for in-person instruction and access to campus facilities and services by pointing to four primary sources of evidence:" (1) a university's statements in its official publications, such as course catalogs; (2) its class registration system and related policies;

---

[3] https://www.bradley.edu/offices/student/sfs/financial-assistance/assistance/

[4] https://www.bradley.edu/offices/student/sfs/financial-assistance/assistance/

(3) its pre-pandemic practice; and (4) any cost differential between in-person and online programs. *Id.* at 525.

Plaintiff asserts a breach of contract claim for both the Tuition Class and the Activity Fee Class.

### i.       Tuition Class Breach of Contract Claim

First, Plaintiff asserts that Bradley entered into an implied contract with its students to provide 15-weeks of course instruction during the 2020 Spring Semester.  Evidence of this implied contract stems from the Course Catalog, Academic Calendar, Student Handbook, testimony from Bradley's employees, Bradley's historical practices, industry custom, Billing Statements, which is all the common evidence set forth above in Section B(i). Plaintiff will present common evidence to argue the existence of an implied contract to provide 15-weeks of instruction because all of Bradley's students were on the same 15-week Academic Calendar. There are no students who attended Bradley subject to a different Course Catalog and Academic Calendar. A reasonable jury could find that an implied contract existed between Bradley and its students for Bradley to provide 15-weeks of course instruction based on the common evidence in Section B(i). *See Delisle*, 73 F.4th at 525.

Bradley argues that it had the right to cancel one week of classes under language in its Course Catalog's Academic Calendar stating that it has the right to "revise" the schedule. Exhibit 2.  However, that argument would apply equally to all students and therefore does not create any individual issues.  Furthermore, any attempt by Bradley to cast doubt upon the sufficiency of this evidence to prove that an implied contract exists goes to the merits of Plaintiff's claims, not to whether the issue will turn on common evidence.  *Eddlemon*, at 341. Ultimately, this evidence will

show that an implied contract exists for 15-weeks of course instruction or it does not.  Importantly, the answer to that question will be the same for all Bradley students.

Performance by Plaintiff and the Tuition Class can be shown by the Billing Statements, which shows if tuition was paid or not. Exhibit 29.

Plaintiff's evidence of breach in Section B(iii) will apply to all students as Bradley cancelled one week of classes for all students without adding a week at end of semester and closed campus for the final 7 weeks of the semester.  There is no evidence that the one week was cancelled for some students while others had class, as Bradley continuously states it closed to comply with Governor's order.  All Bradley students only received 14 weeks of course instruction during the 2020 Spring Semester, which is one week less than was scheduled and is one week less than it has traditionally provided to its students in exchange for the tuition amount paid.  As a result, if the jury finds that only providing 14 weeks of instruction rather than 15-weeks constitutes a breach of the implied contract, that breach would be common for all students.

As shown with the evidence in Section B(iv), Plaintiff's damages model is simple and straightforward and can be applied equally to all Tuition Class Members by reviewing each student's Billing Statement for the 2020 Spring Semester.  Plaintiff seeks damages equal to 1/15 of the tuition paid by each student to account for the one week of classes that were cancelled. Because of his $6,000 in scholarships, Eddlemon only paid $11,100 in tuition for the 2020 Spring Semester, as shown on his Billing Statement. Exhibit 29. Accordingly, his damages would equal $740 (1/15 of $11,100).  The same calculation can be made for each student despite variations that may exist as a result of scholarships, grants, etc.  But because the calculation is subject to uniform application among class members, such differences will not defeat certification. "Damages are susceptible of measurement across the entire class" if there is "a single or common method that

can be used to measure and quantify the damages of each class member." *Suchanek v. Sturm Foods, Inc*., 311 F.R.D. 239, 257–58 (S.D.Ill., 2015). "If damages are capable of measurement on a classwide basis, questions of individual damage calculations will not overwhelm questions common to the class." *Id.*

Accordingly, Plaintiff's breach of contract claim for the Tuition Class can be presented to a jury on common evidence. As explained more fully below, this claim meets the certification requirements.

### ii. Activity Fee Breach of Contract Claim

There is no dispute that there were no on-campus activities for 7 of the 15-weeks in the 2020 Spring Semester. Plaintiff asserts that he and Activity Fee Class Members had an implied contract with Bradley for 15-weeks of on-campus activities in exchange for a $85 Activity Fee. As set forth in Section B(ii), there is ample evidence that the activities were supposed to be on-campus. *See Delisle*, 73 F.4th at 525. The primary evidence that such activities were to be on-campus is the Student Handbook's SABRCA, explained in Section B(ii), which governs how the Activity Fee funds were to be allocated. Exhibit 16, at Bradley2236.

The important thing for this Court's certification analysis is that the formation of this implied contract will be decided on common evidence that applies to all students because these representations were made to all students by Bradley through common documents. To the extent that Bradley wants to argue that its online activities satisfied its contractual obligations, such arguments go to the merits of the claims rather than certification.

Performance can again be shown by the Billing Statement showing the $85 Activity Fee was paid. Exhibit 29. Breach can be shown by Bradley's admission that it closed campus for the

final 7 weeks of the semester and provided a refund of room and board for those weeks. Exhibit 27.

As the evidence in Section B(iv) shows, damages for this breach of contract claim are based on the difference between what the class member paid for and what they received. Because campus closed for all students, there were no on-campus activities for 7 of the 15-weeks in the 2020 Spring Semester. As a result, Plaintiff seeks damages equal to 47% (7/15) refund of the Activity Fees paid by each student as set forth on the 2020 Spring Semester Billing Statement for each student. "Damages are susceptible of measurement across the entire class" if there is "a single or common method that can be used to measure and quantify the damages of each class member." *Suchanek*, 311 F.R.D. at 257–58.

Accordingly, Plaintiff's breach of contract claim for the Activity Fee Class can be presented to a jury on common evidence. As explained more fully below, this claim also meets the certification requirements.

### D.    Common Evidence Regarding the Unjust Enrichment Claims

Under Illinois law, a claim for unjust enrichment exists when: (1) a defendant receives a benefit; (2) to the plaintiff's detriment; and (3) the defendant's retention of that benefit would be unjust. *Macon Cnty.*, 968 F. Supp. 2d at 965–66 (C.D. Ill. 2013). Generally, Illinois law permits a party to plead claims in the alternative, including pleading an unjust enrichment claim as an alternative to a breach-of-contract claim. *See Miller v. Lewis University*, 533 F.Supp.3d 678, 687 (N.D.Ill., 2021). Plaintiff can assert a quasi-contract claim for unjust enrichment in the event that Bradley successfully argues that there is no implied contract between them.

### i.    Tuition Class Unjust Enrichment Claim

In regards to the unjust enrichment Tuition Class claim, Eddlemon and the Tuition Class Members paid tuition for 15-weeks of class instruction for the 2020 Spring Semester. Plaintiff's Billing Statement shows Bradley received the benefit of tuition payments. Exhibit 29. A predominant common question of this claim is whether Bradley's cancellation of one week of its 15-week semester amounts to Bradley receiving a benefit to the detriment of Eddlemon and Tuition Class Members. Bradley received monies and Eddlemon paid monies for 15-weeks of classes but Bradley only provided 14 weeks of classes. *Supra* Section B(iii) (not providing 15-weeks). Regardless of which party ultimately prevails, the answer to this question will be the same for all class members because all students had the same one week of classes cancelled.

Bradley provided a 44% room and board refund for all students living on campus because it would be unjust to charge for room and board that students were not receiving since Bradley closed campus for the final 7 weeks of the 2020 Spring Semester. Exhibit 27. It would be similarly unjust for Bradley to retain payment for 15-weeks of class instruction when only 14 weeks of instruction were provided. It is a common question as to whether the retention of the full amount of tuition paid for the Spring 2020 semester would be unjust given that Bradley only provided 14 weeks of classes. Regardless of which party prevails, the answer to this question will be the same for all class members because the same week of classes were cancelled for all students.

Plaintiff's evidence of the damages model for the Tuition Classes unjust enrichment claim is the same as set forth above for the breach of contract claim and can be applied to all students for the same reasons.

### ii.      Activity Fee Unjust Enrichment Claim

The same analysis applies to the unjust enrichment claim involving the Activity Fee. Eddlemon and all Activity Fee Class Members paid, or had a payment made on their behalf, an $85 Activity Fee for 15-weeks of on-campus activities. This was a monetary benefit received by Bradley. Exhibit 29. Bradley received the benefit of these payments but did not have to incur the costs associated with such activities. For example, the costs associated with concerts, club sports or other on-campus activities were not incurred by Bradley despite it being paid for a full 15-weeks of on-campus activities. Exhibit 27 (Campus closed for final 7 weeks). Regardless of whether Plaintiff or Bradley prevails on this claim, the answer to whether Bradley was unjustly enriched will turn on common evidence and be the same for all class members because they all experienced the same 7 weeks of campus closure without any on-campus activities being provided during that time.

Plaintiff's evidence of the damages model in Section B(iv) for the Activity Fee's unjust enrichment claim is the same as set forth above for the breach of contract claim and can be applied to all students for the same reasons.

### E.      Predominance and Commonality

Because predominance under Rule 23(b)(3) carries the higher burden of showing not only that common questions exist, but that they "predominate" over any individual issues that may exist, addressing predominance first under Rule 23(b)(3) necessarily addresses commonality under Rule 23(a). The commonality prong of Rule 23 is satisfied if there are "questions of law or fact common to the class." *Lacy v. Cook Cty.*, 897 F.3d 847, 864 (7th Cir. 2018) (quoting Fed. R. Civ. P. 23(a)(2)). "The Supreme Court has explained that 'for purposes of Rule 23(a)(2) even a single common question will do.'" *Suchanek*, 764 F.3d at 755.

In *Eddlemon*, the 7th Circuit clarified the rigorous analysis that is required for predominance:

> The predominance inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453, 136 S. Ct. 1036, 194 L.Ed.2d 124 (2016). In other words, determining whether predominance is satisfied "requires more than a tally of common questions; the district court must consider their relative importance." *Santiago*, 19 F.4th at 1016 (citation omitted). This is because, at bottom, "the predominance requirement is [only] met when common questions represent a *significant* aspect of a case." *Ross*, 33 F.4th at 439 (emphasis added) (citation and internal quotation marks omitted).
>
> To determine "which issues are common, individual, and predominant," the court must "circumscrib[e] the claims and break[ ] them down into their constituent elements." *Santiago*, 19 F.4th at 1018; *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) ("Analysis of predominance under Rule 23(b)(3) begins, of course, with the elements of the underlying cause of action." (citation and internal quotation marks omitted)). As a result, we have explicitly instructed district courts to "begin [the class certification analysis] by identifying the elements of the plaintiff's various claims." *Simpson*, 23 F.4th at 713.

65 F.4th at 339.

Thus, Eddlemon need not prove that every single element of his claims is susceptible to class-wide proof, but only that common questions "predominate over any questions affecting only individual [class] members." *Amgen*, 568 U.S. at 469. The predominating common question in this case is whether Bradley entered into an implied contract with its students to provide for 15-weeks of course instruction and on-campus activities for the 2020 Spring semester.  The answer to these questions turns on the common evidence set forth in Section B.

Plaintiff's damages model also satisfies the predominance requirement of Rule 23 as other courts have approved similar methodologies for determining damages.  For example, the court in *Ninivaggi v. Univ. of Delaware*, addressed full scholarships, partial scholarship, and grant monies in connection with a class action damages model like the one presented by Plaintiff. 2023 WL 2734343, at *2 (D. Del. Mar. 31, 2023). After rejecting the school's argument that scholarships

made it too difficult to calculate damages, the court found it appropriate to exclude students who "received full rides from the school itself." *Id.*; S*ee also, Omori v. Brandeis Univ.,* No. CV 20-11021-NMG, 2023 WL 3511341, at *3 (D. Mass. May 17, 2023) (holding that individual damages issues with respect to scholarships and grants does not negate predominance).

Moreover, courts have also held that students can bring claims for payments made by parents because parents of adult students lack contractual privity and therefore, standing. *See e.g., Ninivaggi*, at *2 ("No need to "kick out students" from class who paid with money from outside sources for lack of standing because students were parties to allegedly breached contract); *Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937, 949 (C.D. Cal. 2022) (rejecting argument that class members are not ascertainable where parents and third parties may have paid for class members' education because students are intended beneficiaries of contract).

Therefore, Plaintiff's damages model of 1/15 tuition refund for the Tuition Class and 7/15 refund for the Activity Fee class are "susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *See Comcast v. Behrend*, 569 U.S. 27, 35 (2013). Thus, commonality under Rule 23(a)(1) and predominance under Rule 23 (b)(3) are satisfied.

### F.     The Classes Satisfy the Remaining Requirements of Rule 23(a)

Under Rule 23(a), a class action may be maintained when: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Since commonality has already been addressed, Plaintiff will address the remaining prerequisites.

i.        **The Classes are Sufficiently Numerous.**

Rule 23(a)(1) requires that class membership be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Although the numerosity requirement does not rest on any magic number, joinder is usually deemed impracticable when the class number is forty or more. *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017). When determining numerosity, the exact number of class members does not need to be established. *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009).

Rule 23(a)(1)'s numerosity standard is easily met here. Bradley's discovery responses assert that 7,759 students were listed in Bradley's student database for the Spring 2020 Semester. Exhibit 32. Therefore, Plaintiff estimates that there are 7,759 students who fall within the Tuition Class. Additionally, the Activity Fee Class consists of 4,622 student accounts that paid an Activity Fee for the Spring 2020 Semester. Exhibit 33. While Bradley has refused to provide the exact number of students, until after the class is certified, these numbers are sufficient to meet Plaintiff's burden as the impracticability of joining even a fraction of the class is obvious.  Thus, the numerosity requirement is easily established.

ii.        **Plaintiff's Claims are Typical of the other Members of the Classes' Claims**

Rule 23(a)(3) requires that the claims or defenses of the class representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Typicality is met if the named representative's claims arise from the same events or course of conduct that gives rise to the putative class members' claims. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). Typical does not mean identical. *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

Typicality is satisfied here for many reasons. First, Bradley's Course Catalog employed a standard form tuition fee structure for the 2020 Spring Semester, with $17,100 being the same amount charged for all full-time students including Plaintiff Eddlemon. Exhibit 16. All Tuition Class members were not provided all 15-weeks of course instruction due to Bradley's cancellation of one week of classes.  Thus, Plaintiff's Tuition claims are typical of the class members that he seeks to represent.

Similarly, each undergraduate student with 9 or more credit hours paid the same $85 Activity Fee as Plaintiff. Exhibit 28. All Bradley students only received on-campus activities for 8 of the first 15-weeks in the 2020 Spring Semester.  Since these time periods are the same for all students, including Eddlemon, the adjudication of his claims will be the same as all other Activity Fee class members.

The fact that Eddlemon and some other class members may have paid different amounts of tuition or activity fees as a result of grants, scholarships, or assistantships does not render the claims atypical. Each will receive the same pro-rata refund based upon the same damages formula. *See Balderrama-Baca v. Clarence Davids & Co.,* 318 F.R.D. 603, 613 (N.D. Ill. 2017) ("It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3).")

### iii.        Eddlemon and His Counsel will Adequately Represent the Classes

Rule 23(a)(4) requires that the class representative will fairly and adequately protect the interest of the class. Fed. R. Civ. P. 23(a)(4). To meet this requirement, representatives must be part of the class and possess the same interest and suffer the same injury as the class members. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 596 (1997). As long as the class representative and the class members' interests are aligned and are free of internal conflicts the class representative will

meet the adequacy requirement. *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 585 (N.D. Ill. 2018). The proposed representative plaintiff must also show that plaintiff's counsel is qualified, experienced, and able to conduct the litigation. Fed. R. Civ. P. 23(g)(1)(A).

Eddlemon has no conflicts of interest with absent Class members. He has every interest and intention of continuing to prosecute this case vigorously. To date, Eddlemon has actively participated in this litigation by providing documents in discovery and by attending his deposition. He has chosen to serve as Class Representative to ensure that all members of the Classes receive appropriate relief. There is no evidence that Eddlemon has any conflict with the class members he seeks to represent.

Moreover, Eddlemon is represented by highly qualified counsel with extensive experience conducting class and complex litigation, having been appointed to act as class counsel in more than 50 breach of contract and/or consumer protection class actions. Exhibit 34. Counsel have committed significant resources to developing the claims in this case, are committed to continuing to vigorously prosecute this action, and should be appointed to serve as Class Counsel under Fed. R. Civ. P. 23(g). *Id.*

### G. Class Action is the Superior Procedure for Managing this Case

Rule 23(b)(3) provides four non-exhaustive factors relevant to the superiority inquiry: (A) the class members' interests in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties in managing a class action. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014). Manageability is almost never a bar to class

certification. *Bakov v. Consol. World Travel, Inc.*, 2019 U.S. Dist. LEXIS 46510 (N. Ill. Mar. 21, 2019).

Eddlemon and the other Class members experienced virtually identical circumstances as a result of Bradley's cancellation of one week of classes and closure of its campus for the final 7 weeks of the 2020 Spring Semester. At its core, this is a case of common factual questions with answers driven by common evidence. Courts have found that plaintiffs satisfy Rule 23(b)(3)'s superiority requirement when they show that "classwide litigation of common issues will reduce litigation costs and promote greater efficiency," or that "no reasonable alternative exists." *Consolidated Fiberglass Prod. Co. v. Gemini Ins. Co.*, No. 09-CV-1632-H (WMC), 2011 WL 13180451, at *2 (S.D. Cal. Feb. 4, 2011).

This case involves more than 7,000 students who paid tuition, and 4,622 who paid the Activity Fee. Exhibit 32, 33. Without a representative, aggregate action, the vast majority of students will likely be unable to obtain relief. *See Lee v. JNL Construction Servs., LLC*, No. RDB-17-2765, 2019 WL3869412, at *5 (D. Md. Aug. 16, 2019) ("Rule 23(b)(3) class actions are particularly well-suited for cases in which small individual recoveries would not provide plaintiffs with enough incentive to prosecute."); s*ee also*, Fed. R. Civ. P. 1. A class action will allow this Court to resolve all the common questions of law and fact in one action and therefore avoid redundancy and the risk of inconsistent results.

### H.    The Classes are Definite and Ascertainable

Rule 23 contains an implicit threshold that members of a class be "identifiable and ascertainable." The definition of the class must be clearly defined and its parameters based on objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). Exhibit 29 is a standard Bradley University Billing Statement which contains the student's name and home

address, a unique student ID number, the amount Bradley charged each student for its Spring 2020 semester, including tuition and the activity fee paid.  These Statements also show how each student (or third party) made payment (loan or direct payment) and if a scholarship, grant, or assistantship was applied to the tuition. These Billing Statements can be used to determine class membership and damages for both Tuition and Activity Fee Class Members. Exhibit 20. As a result, class membership is based on objective criteria and is ascertainable.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court issue an Order (i) certifying the proposed Class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, (ii) appointing Eddlemon as the Class Representative, and (iii) appointing undersigned counsel as Class Counsel, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

Date: August 16, 2023

/s/ Matthew T. Peterson
Matthew T. Peterson, ARDC No. 6321290
Brian W. Warwick; Florida Bar: 0605573
Janet R. Varnell, Florida Bar: 0071072
VARNELL & WARWICK, P.A.
1101 E. Cumberland Ave., Ste. 201H, #105
Tampa, Florida 33602
T: 352-753-8600
*mpeterson@vandwlaw.com*
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

**ORION EDDLEMON,** individually and on
behalf of all others similarly situated,

                                              **Case Number: 1:20-cv-01264**

                  **Plaintiff,**

**v.**

**BRADLEY UNIVERSITY,** an Illinois not-
for-profit corporation,

                  **Defendant.**

## CERTIFICATE OF COMPLIANCE

    I, Matthew Peterson, certify that the memorandum in support of Plaintiff's Motion for

Class Certification complies with the type volume limitation. Microsoft Word was used and the

number of words is 7,095.

                                      /s/ Matthew T. Peterson
                                      Matthew T. Peterson

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 16, 2023, I electronically filed the foregoing with the Clerk of the Court through the CM/ECF System, which will send a notice of electronic filing to all counsel of record.

/s/ Matthew T. Peterson
Matthew T. Peterson