**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| ORION EDDLEMON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:20-cv-01264-MMM-JEH |
| v. | ) ) | Hon. Colleen R. Lawless |
| | ) | Hon. Mag. Jonathan E. Hawley |
| BRADLEY UNIVERSITY, an Illinois not-for-profit corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

<u>**DEFENDANT BRADLEY UNIVERSITY'S MEMORANDUM OF LAW IN**</u>
<u>**OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR CLASS CERTIFICATION**</u>

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 3

I.   Class Certification Requires a Rigorous Analysis of the Rule 23 Prerequisites................ 3

II.   Plaintiff Has Failed to Establish a Classwide Method of Demonstrating or Measuring Damages.................................................................................................................. 4

   A.   Plaintiff's Damages Models Are Not Capable of Proving or Measuring Damages on a Classwide Basis. ........................................................................................ 5

      1.   Plaintiff's Damages Models Are Individualized, Not Classwide. ................................ 6

      2.   Plaintiff's Models Wrongly Assume Uniformity Across All Students. ...................... 8

      3.   Plaintiff's Models Fail to Exclude Other Unrecoverable Amounts........................... 10

      4.   Plaintiff's Models Are Not Triable. ....................................................................... 11

   B.   Plaintiff's Damages Models Do Not Correspond to His Theories................................. 12

III.   Plaintiff Cannot Satisfy Commonality and Predominance on the Liability Elements of His Claims. ................................................................................................................... 14

   A.   Plaintiff Cannot Satisfy Commonality or Predominance for his Breach of Contract Claims. ................................................................................................................. 15

      1.   The Asserted Contract Terms Require Individualized Evidence............................... 15

          a.   Individualized Evidence Predominates with Respect to the Tuition Class's Alleged Contract Terms. ................................................................................ 15

          b.   Individualized Evidence Predominates with Respect to the Activity Fee Class's Alleged Contract Terms. ................................................................................ 18

      2.   Individualized Evidence Predominates with Respect to Performance. ...................... 19

      3.   Individualized Evidence Predominates with Respect to Breach................................ 19

      4.   Individualized Evidence Predominates with Respect to Injury. ................................ 21

   B.   Plaintiff Cannot Satisfy Commonality or Predominance for his Unjust Enrichment Claims. ................................................................................................................. 23

      1.   The Viability of Unjust Enrichment as an Alternative to Breach of Contract Is Individualized to Each Class Member. .................................................................... 24

2. There Is No Common Evidence of a Benefit to Bradley. ............................................. 25

3. There Is No Common Evidence of a Detriment to Either Class. ................................ 25

4. There Is No Common Evidence of Bradley's Purported Unjust Conduct. ................. 26

5. Bradley's Individualized Room-and-Board Refunds Do Not Support Class
Certification. .......................................................................................................... 26

IV. Plaintiff Is Not a Typical or Adequate Class Representative. ......................................... 27

V. Plaintiff Has Not Met his Burden with Respect to Superiority. ....................................... 28

CONCLUSION ........................................................................................................................ 30

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Amchem v. Windsor*,
   521 U.S. 591 (1997)...........................................................................................14, 27

*Avery v. State Farm Mutual Automobile Insurance Co.*,
   216 Ill. 2d 100 (2005) ...............................................................................................21

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)............................................................................... *passim*

*Cross v. University of Toledo*,
   199 N.E.3d 699 (Ohio Ct. App. 2022).......................................................................14

*Cruson v. Jackson National Life Insurance Co.*,
   954 F.3d 240 (5th Cir. 2020) ....................................................................................15

*DiPerna v. Chicago School of Professional Psychology*,
   893 F.3d 1001 (7th Cir. 2018) ...................................................................................23

*Duke v. Ohio University*,
   204 N.E.3d 752 (Ohio Ct. App. 2022) ...................................................................5, 22

*Eddlemon v. Bradley University*,
   65 F.4th 335 (7th Cir. 2023) .............................................................................. *passim*

*Evans v. Brigham Young University*,
   No. 1:20-CV-100-TS, 2022 U.S. Dist. LEXIS 36190 (D. Utah Feb. 28, 2022)..................8, 19

*Evans v. Brigham Young University*,
   No. 22-4050, 2023 U.S. App. LEXIS 11050 (10th Cir. May 5, 2023).....................................8

*Garcia de Leon v. New York University*,
   No. 21-Civ-05005 (CM), 2022 U.S. Dist. LEXIS 110787 (S.D.N.Y. Jun. 22,
   2022) ..............................................................................................................15, 21, 28

*General Telephone Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982).................................................................................................28

*Gesell v. Commonwealth Edison Co.*,
   216 F.R.D. 616 (C.D. Ill. 2003)...............................................................................28

*Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*,
   29 F.4th 839 (7th Cir. 2022) ...............................................................................3, 28

*Greenbrier Leasing Co. LLC v. Carroll*,
   No. 07-C-2884, 2008 U.S. Dist. LEXIS 46854 (N.D. Ill. Jun. 17, 2008)...............................12

*Groussman v. Motorola, Inc.*,
No. 10 C 911, 2011 U.S. Dist. LEXIS 134769 (N.D. Ill. Nov. 15, 2011) .............................28

*Howard v. Cook County Sheriff's Office*,
989 F.3d 587 (7th Cir. 2021) ...............................................................14

*Jamie S. v. Milwaukee Public Schools*,
668 F.3d 481 (7th Cir. 2012) ................................................................3

*Kartman v. State Farm Mutual Automobile Insurance Co.*,
634 F.3d 883 (7th Cir. 2011) ...............................................................21

*Keba v. Bowling Green State University*,
No. 22AP-226, 2022 Ohio App. LEXIS 4287 ....................................................10

*Kleen Prods. LLC v. International Paper Co.*,
831 F.3d 919 (7th Cir. 2016) ................................................................4

*Lilly v. Ford Motor Co.*,
No. 00-C-7372, 2002 U.S. Dist. LEXIS 5698 (N.D. Ill. Apr. 2, 2002) ...................................28

*In re Link-Up*,
2013 IL App. (1st) 113349...................................................................12

*Little v. Grand Canyon University*,
No. CV-20-00795-PHX-SMB, 2022 U.S. Dist. LEXIS 16174 (D. Ariz. Jan.
28, 2022) ..............................................................................26

*Macon County v. Merscorp, Inc.*,
968 F. Supp. 2d 959 (C.D. Ill. 2013) ....................................................11, 23

*Mayster v. Santacruz*,
2020 IL App. (2d) 190840 ...............................................................10, 12

*McGlenn v. Driveline Retail Merchandise, Inc.*,
No. 18-CV-2097, 2021 U.S. Dist. LEXIS 9532 (C.D. Ill. Jan. 19, 2021) ........................14, 21

*Messner v. Northshore University HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ...............................................................21

*Miller v. Lewis University*,
533 F. Supp. 3d 678 (N.D. Ill. 2021) .......................................................23

*Muro v. Target Corp.*,
580 F.3d 485 (7th Cir. 2009) ...............................................................27

*Omori v. Brandeis University*,
No. 20-11021-NMG, 2023 U.S. Dist. LEXIS 86168 (D. Mass May 17, 2023) .............5, 8, 21

*Orr v. Elyea*,
  279 F.R.D. 474 (C.D. Ill. Nov. 16, 2009) ............................................................21

*Pastor v. State Farm Mutual Automobile Insurance Co.*,
  No. 05 C 1459, 2005 U.S. Dist. LEXIS 22338 (N.D. Ill. Sep. 30, 2005).............................28

*Randall v. Rolls-Royce Corp.*,
  637 F.3d 818 (7th Cir. 2011) ..............................................................27

*Red Barn Motors, Inc. v. Nextgear Capital, Inc.*,
  915 F.3d 1098 (7th Cir. 2019) .............................................................15

*Retired Chicago Police Association v. City of Chicago*,
  7 F.3d 584 (7th Cir. 1993) ................................................................3

*Robin v. Doctors Officenters Corp.*,
  123 F.R.D. 579 (N.D. Ill. 1988)...........................................................27

*Robinson v. Sheriff of Cook County*,
  167 F.3d 1155 (7th Cir. 1999) ............................................................27

*Sacred Heart Health System v. Humana Military Healthcare Services*,
  601 F.3d 1159 (11th Cir. 2010) ...........................................................15

*Santiago v. City of Chicago*,
  19 F.4th 1010 (7th Cir. 2021) ............................................................14

*Simer v. Rios*,
  661 F.2d 655 (7th Cir. 1981) .............................................................14

*Smith v. Ohio State University*,
  200 N.E.3d 1249 (Ohio Ct. App. 2022).....................................................19

*In re Suffolk Univ. COVID Refund Litigation*,
  No. 20-10985-WGY, 2022 U.S. Dist. LEXIS 185297 (D. Mass. Oct. 11, 2022)...................28

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)...................................................................14, 23

*Weiman v. Miami University*,
  No. 22AP-36, 22AP-37, 2022 Ohio App. LEXIS 4040 .......................................21

*Zirp-Burnham, LLC v. E. Terrell Associates*,
  356 Ill. App. 3d 590 (1st Dist. 2005) ..............................................11, 14, 15

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................. *passim*

# INTRODUCTION

This is the second attempt by Plaintiff Orion Eddlemon ("Plaintiff") to certify two putative classes asserting claims for *pro rata* refunds of tuition and activity fees on theories of breach of contract and unjust enrichment. Plaintiff's claims arise out of the COVID-19 pandemic and the Governor's emergency orders requiring Defendant Bradley University ("Bradley") to halt in-person classes and to limit on-campus activities eight weeks into the Spring 2020 semester. Bradley promptly transitioned all courses to remote learning by extending Spring Break by one week. It programmed remote activities and clubs for students, kept all employees and student workers on payroll, and devoted 100% of the federal aid it received to benefit students—including direct financial assistance to eligible students who applied for such aid. Bradley worked with its accrediting body to ensure that students received full course credit for their classes, enabling students like Plaintiff to move forward with their life plans—which, in Plaintiff's case, meant an on-time graduation and acceptance to medical school.

Yet Plaintiff insists he and other students were deprived of one week of classes and seven weeks of activities. Plaintiff seeks to certify two classes,[1] comprised of "[a]ll students and former students of Bradley University who paid, or on whose behalf payment was made for": (i) "tuition for on-campus classes for the Spring 2020 Semester" (the "Tuition Class"); and (ii) "an Activity Fee for the Spring 2020 Semester" (the "Activity Fee Class") (collectively, the "Classes"). Doc. 83 at 1.

Judge Mihm initially certified Plaintiff's proposed Tuition and Activity Fee Classes, but the Seventh Circuit vacated, holding that the class certification ruling did not satisfy the "rigorous analysis" required by Rule 23 and governing precedent. *Eddlemon v. Bradley Univ.*, 65 F.4th 335,

---

[1] Plaintiff originally sought to certify three classes. *See* Doc. 41 at 1. The District Court denied certification of the Course Surcharge Class, which Plaintiff did not challenge. *See* Doc. 64 at 21-26.

338-41 (7th Cir. 2023). The Seventh Circuit found error in the Court's reliance on Plaintiff's bare allegations, failure to examine the record, failure to evaluate how Plaintiff would prove his claims with common evidence, and failure to separately analyze the elements of Plaintiff's claims. *Id*. It also disagreed with Judge Mihm's finding that he would "be able to fashion an appropriate formula for damages" without confronting the "many individual questions regarding damages[.]" *Id*. at 339-40. The Seventh Circuit vacated and remanded with a direction to "apply the appropriate legal framework to the existing record." *Id*. at 341.

Ignoring these errors, Plaintiff insists that "Judge Mihm properly certified this case" and chalks up the result to a mere failure to "draft[] his order" properly. Doc. 83 at 2. Not only does this discount the Seventh Circuit's express grounds for vacatur, but Plaintiff's own second Motion for Class Certification (the "Motion") belies his attempts to reduce the failure of his first motion to a mere drafting error. Disregarding the Seventh Circuit's direction to apply the "appropriate legal framework to the existing record," Plaintiff now attempts to bolster his Motion by adding dozens of new exhibits never previously offered. *Compare* Doc. 41 (original motion for class certification, with 8 exhibits), *with* Doc. 83 (current Motion, with 34 exhibits). Most of these exhibits are unsworn, unauthenticated documents that were never shown to a single witness at deposition, presented with Plaintiff's editorializing as to their meaning but without a word of sworn testimony that would enable these materials to be presented to a jury.[2] Plaintiff's tactics demonstrate his awareness that the "existing record" does not and cannot support class certification, but his efforts to go outside the record do not solve his problems. Even now, on Plaintiff's second attempt and with a four-fold increase in newly cited evidence, he remains unable to meet his burden of proof under the rigorous analysis mandated by Rule 23.

---

[2] Bradley will move to strike Plaintiff's unauthenticated, inadmissible exhibits by separate motion.

This Court should deny Plaintiff's Motion for four reasons.

<u>First</u>, Plaintiff still has not offered a viable damages model capable of measuring damages on a classwide basis for either Class, and individual issues predominate on damages.

<u>Second</u>, Plaintiff has not presented common, predominant evidence capable of proving the elements of his breach of contract and unjust enrichment claims classwide for either Class.

<u>Third</u>, Plaintiff is an atypical and inadequate class representative because his claims and Bradley's defenses are unique to Plaintiff's individual circumstances.

<u>Fourth</u>, a class action is not the superior method of resolving this dispute because such an adjudication will result in thousands of mini trials peculiar to each class member on each claim.

## ARGUMENT

### I.    Class Certification Requires a Rigorous Analysis of the Rule 23 Prerequisites.

To prevail on class certification, Plaintiff must satisfy the "explicit requirements" of Rule 23(a), including numerosity, commonality, typicality, and adequacy. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Plaintiff must also satisfy "one of the conditions" of Rule 23(b)—here, predominance and superiority under Rule 23(b)(3). *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493, 495-96 (7th Cir. 2012). "All of these elements are prerequisites to certification; failure to meet any one of these precludes certification as a class." *Retired Chicago Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993). Plaintiff "bears the burden of demonstrating that certification is proper by a preponderance of the evidence." *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 843 (7th Cir. 2022).

This Court "***must*** rigorously analyze the requirements of Rule 23." *Eddlemon*, 65 F.4th at 338 (emphasis in original) (quoting *Howard v. Cook Cty. Sheriff's Off.*, 989 F.3d 587, 598 (7th Cir. 2021)). This requires the court to "determine 'which issues are common, individual, and

predominant," and specifically to "circumscrib[e] the claims and break[] them down into their constituent elements." *Id*. at 339 (quoting *Santiago v. City of Chi.*, 19 F.4th 1010, 1018 (7th Cir. 2021)). The Seventh Circuit instructed on remand that this Court should "identif[y] the elements of Eddlemon's two claims and separately analyze[] them to better understand the relationship between each claim's common and individual questions." *Id*. at 339-40.

Applying a rigorous analysis in accordance with the Seventh Circuit's directions on remand, Plaintiff has failed to meet his burden of proving that common questions exist and predominate on the record before this Court, and he has also failed to meet his burden with respect to the Rule 23 elements of typicality, adequacy, and superiority.

## II.    Plaintiff Has Failed to Establish a Classwide Method of Demonstrating or Measuring Damages.

The most glaring defect in Plaintiff's case for class certification appears on the face of his Motion: Plaintiff has no viable classwide method of establishing or measuring damages, and highly individualized questions predominate and overwhelm common questions on damages. The Supreme Court declared in *Comcast* that a class action is "improperly certified" under Rule 23(b)(3) unless the plaintiff's damages model "establish[es] that damages are capable of measurement on a classwide basis," because, in the absence of such a model, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." 569 U.S. at 34. The court cannot accept just "***any*** method of measurement . . . no matter how arbitrary;" the model must also fit "the ***legal theory of the harmful event***" and "the economic impact ***of that event***." *Id.* at 36, 38 (citation omitted) (emphases in original). Thus, there are two relevant inquiries. First, the court "must see if there is a classwide method for proving damages[.]" *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 929 (7th Cir. 2016). Second, "the damages theory must correspond to the theory of liability." *Id*. If either proof fails, the class fails.

4

Here, Plaintiff's proposed classwide damages models fail in both respects. Multiple courts have rejected certification of similar putative tuition and fee classes for failure to present a viable classwide damages model. *See Omori v. Brandeis Univ.*, No. 20-11021-NMG, 2023 U.S. Dist. LEXIS 86168, at *10- (D. Mass May 17, 2023) (denying class certification of tuition and fee classes based on plaintiff's failure to identify viable classwide damages model); *see also Duke v. Ohio Univ.*, 204 N.E.3d 752, 758 (Ohio Ct. App. 2022) (reversing student refund class certification for unsupported damages model). Plaintiff's proposed damages models fare no better.

### A.    Plaintiff's Damages Models Are Not Capable of Proving or Measuring Damages on a Classwide Basis.

Plaintiff's own Motion leaves no doubt that he has no classwide method of demonstrating or measuring damages. To the contrary, his own proposed methodology expressly contemplates individualized damages determinations with no classwide method of measurement, guaranteeing that individual determinations will overwhelm common questions. Plaintiff's proposed damages model for the Tuition Class on the breach of contract claim is to provide "a 1/15 tuition refund for the amounts paid by ***each student***, or for payments made on behalf of a student by a parent or other third party," ***excluding*** "scholarships, grants, and assistantships because those are not payments made by or on behalf of the student." Doc. 83 at 8, 10, 13 (emphasis added). Plaintiff proposes to apply this method by individually "***reviewing each student's*** Billing Statement for the 2020 Spring Semester." *Id*. at 13 (emphasis added). Plaintiff proposes to use "the same" damages model for the Tuition Class for unjust enrichment. *Id*. at 16.

For the Activity Fee Class, Plaintiff's damages model similarly proposes "damages equal to 47% (7/15) refund of the activity fees paid by each student as set forth on the 2020 Spring Semester Billing Statement ***for each student***." *Id*. at 15 (emphasis added). Plaintiff does not propose to exclude "scholarships, grants, and assistantships" used to cover activity fees, because

according to Plaintiff, ten scholarships discussed on Bradley's websites can purportedly be applied to cover "tuition only," and Plaintiff infers from this that no scholarships, grants, or assistantships amongst the hundreds available to students can ever be applied to cover activity fees. *Id.* at 10-11. Plaintiff again proposes to use "the same" damages model for the Activity Fee Class for unjust enrichment. *Id.* at 17.

Plaintiff has failed to meet his burden of showing that either model "establish[es] that damages are capable of measurement on a classwide basis." *Comcast*, 569 U.S. at 34.

### 1.    Plaintiff's Damages Models Are Individualized, Not Classwide.

On their face, Plaintiff's models are not "classwide" methods of measuring damages, but rather individualized inquiries that would require the jury to sift through the Billing Statements "for each student," one by one, figure out what amounts should be included and excluded for each student's calculation, perform the calculation, add it to the total, and move on to the next student. *See* Doc. 83 at 13, 15.

According to Plaintiff, there are 7,759 students in the Tuition Class, and 4,622 students in the Activity Fee Class. *Id.* at 20. During the Spring 2020 semester, 4,433 students enrolled at Bradley were awarded at least one scholarship or grant, with approximately 590 different scholarships and grants awarded. Doc. 83-40 at No. 1. Total scholarship and grant awards ranged from $273 to $24,095 per student. *Id.* These do not include private scholarships paid directly to students; they only reflect scholarships and grants reported to the University. *See id.*

Thus, to apply Plaintiff's proposed model for the Tuition Class, the jury would be required to review 7,759 individual Billing Statements "for each student;" determine which items on each Billing Statement reflected payments "by or on behalf of" the student and which are among the 590 excludable "scholarships, grants, and assistantships;" and then question each individual student to determine whether they received private scholarships, grants, or assistantships not

reported to Bradley. After subtracting out the excludable amounts, the jury would then perform a 1/15 calculation on the remaining amount, add that individual total to the aggregate damages, and proceed to the next Billing Statement.

Similarly, for the Activity Fee Class, the jury would be required to review 4,433 individual Billing Statements "for each student;" determine what each student paid for his or her activity fee; apply the 7/15 calculation; add that individual total to the aggregate damages; and move on to the next Billing Statement. This scenario proceeds from Plaintiff's faulty assumption that "scholarships, grants, and assistantships" need not be excluded for the Activity Fee Class—a conclusion Plaintiff reaches by citing to website descriptions for 10 out of the 590 scholarships recorded by Bradley, and assuming that because these 10 scholarships are purportedly applied to "tuition only" then no scholarship, grant, or assistantship could be applied to activity fees.[3] Doc. 83 at 10-11; *compare with* Doc. 83-40 at No. 1. That is demonstrably wrong. There is no evidence of any tuition limitation for the other 580 scholarships, and the record reflects that many students received total scholarships and grants exceeding the "standard tuition" of $17,100, with some receiving more than $27,000 in total awards. Doc. 83-40 at No. 1. Even the sources to which Plaintiff cites do not support his claim. *See* Doc. 83 at 10-11 n. 2 (no limitation of scholarship to fees); n. 3 (referencing Pell Grant and FSEOG that include no tuition-only limitation). Nor do Plaintiff's citations account for the innumerable privates scholarships students may have received. Thus, the jury would be required to perform individualized exclusion inquiries for each member of the class based on their unique financial aid awards.

---

[3] The scholarship websites to which Plaintiff cites are not in the record, not authenticated by Plaintiff, and are not accompanied by a date to confirm this information was accurate during the Spring 2020 semester. As noted earlier, Bradley will move to strike these exhibits by separate motion.

In short, Plaintiff's damages models—even if executed as Plaintiff proposes—would require the jury to perform more than 12,000 individualized analyses of Billing Statements "for each student" to measure damages for the two classes. That is the very definition of "individual damage calculations" that "overwhelm questions common to the class." *Comcast*, 569 U.S. at 34. A damages model that requires such an individualized assessment is not a classwide model at all. *See Omori*, 2023 U.S. Dist. LEXIS 86168 at *14 (rejecting classwide damages model, criticizing plaintiff's failure to "address the variation in scholarships, grants and aid," which impact both individual and classwide recovery). The need to "individually inquire into" each student's payment circumstances requires denial of class certification. *Evans v. Brigham Young Univ.*, No. 1:20-CV-100-TS, 2022 U.S. Dist. LEXIS 36190, *9 (D. Utah Feb. 28, 2022), *aff'd* No. 22-4050, 2023 U.S. App. LEXIS 11050 (10th Cir. May 5, 2023).

### 2.    Plaintiff's Models Wrongly Assume Uniformity Across All Students.

A separate problem with Plaintiff's models is that both assume damages can be calculated using the same, uniform calculation for all class members: 1/15 for Tuition Class members and 7/15 for Activity Fee Class members, using a "standard" tuition of $17,100 (less exclusions) and a common activity fee of $85. But even accepting Plaintiff's premise that each student "lost" one week of classes and seven weeks of on-campus activities—itself an individual question as discussed *infra*—Plaintiff's assumed uniformity introduces serious error into his models.

The calculations of 1/15 of tuition and 7/15 of activity fees are unsupported because both wrongly assume that ***all*** students were enrolled in a 15-week term. This is not so. None of Plaintiff's exhibits indicate that all students were enrolled solely in 15-week class terms in Spring 2020, and in fact, the only testimony among his cited exhibits referencing class length confirms the opposite. Bradley's Interim Provost of Academic Affairs testified that even during a traditional

semester unimpeded by COVID-19, Bradley "will have some students taking courses that are less than 15 weeks" because course length depends "on the department [and] the discipline of the faculty member." Doc. 83-21 at 12:20-13:13. Contrary to Plaintiff's assertion that "no students who attended Bradley" were subject to a different Academic Calendar, *see* Doc. 83 at 4, 12, the record further confirms that Bradley did not limit itself to a 15-week semester. Indeed, Bradley has "***32 different terms***" with "a variety of calendars and options, depending on the intent of the faculty member[,] department, college, et cetera." Ex. 1, J. Skaggs Dep. at 9:5-12 (emphasis added). Professors have the discretion to "select the term that fits best for the learning experience for the particular course." Doc. 83-21 at 12:9-15, 13:5-13. Even assuming 1/15 or 7/15 would be the correct calculation for a student on a 15-week term, Plaintiff offers no model for the students enrolled under one of the other 31 terms, or how to identify those students or measure their damages.

Likewise, Plaintiff baselessly assumes that all students were charged the same standard tuition rate and activity fees. Plaintiff's Tuition Class formula relies on a $17,100 rate he claims applies to "all students," *see* Doc. 83 at 8, but this rate actually applies only to ***undergraduate students taking 12-16 credits***. Doc. 83-41 at 2. As Plaintiff's own cited document notes, students are charged different rates for: graduate programs; part-time status; and undergraduate credits taken beyond 16 credits, with the exception of 36 specific classes that can be taken at no extra charge. Doc. 83-41 at 2-3. Determining the correct formula to calculate the amount of each student's damages, or whether a student had been damaged at all, thus requires determining each student's status, credit hours, and specific courses. The same is true of the Activity Fee Class calculation. It assumes a standard $85 activity fee, but that fee applies only to ***undergraduate students taking 9 or more credit hours***. *See* 83-1 at 37, 83-25 (excerpt from Undergraduate

Catalog). Graduate students had a different fee structure, and in some cases none at all depending on their program. *See* Doc. 41-2 at 2.

Plaintiff's models also do not account for students enrolled in both on-campus and online courses. The Tuition Class definition limits recovery to tuition spent on on-campus classes, thereby excluding tuition spent on online courses. *See* Doc. 83 at 1. Yet, Plaintiff's uniform 1/15 calculation does not account for hybrid students.[4] Using Plaintiff's models for these students would result in overpayment for amounts not spent on on-campus classes.

Thus, the record does not support Plaintiff's use of 1/15, 7/15, $17,100, or $85 as the uniform inputs for a classwide damages model. Plaintiff provides no classwide method of measuring damages absent these defective assumptions. The individualized proofs necessary for each class member are an additional basis to deny class certification. *See Keba v. Bowling Green State Univ.*, No. 22AP-226, 2022 Ohio App. LEXIS 4287, at *5-6 (reversing student refund class certification, noting damages theories relying on individualized proof cannot be certified).

### 3.    Plaintiff's Models Fail to Exclude Other Unrecoverable Amounts.

Plaintiff's models also fail to exclude other amounts that were not paid by the class members, but rather by third parties, such as family members. Plaintiff blithely treats these as recoverable on the assertion that such payments were made "on behalf of" the student. But under Illinois law, breach of contract damages must "compensate the aggrieved party" for ***that party's*** loss, putting "the nonbreaching party into the same position" as before the breach "but not a better position[.]" *Mayster v. Santacruz*, 2020 IL App. (2d) 190840, ¶ 31. Awarding class members

---

[4] Plaintiff contradicts himself by asserting that Bradley did not offer online courses. *See* Doc. 83 at 5. Yet he made a judicial admission when he filed this case that Bradley did offer such courses, and he reaffirmed that admission with each amended pleading. Doc. 39 at ¶¶ 27-38. Documents cited in his Motion also confirm online classes were available. *See* Doc. 83-1 – 84-14; *compare* Doc. 83-22 – 83-23, *with* Ex. 2, Bradley's Resp. to Pl.'s Req. for Admission at No. 13 (noting Plaintiff omitted from the Motion a Request to Admit issued by him acknowledging Bradley's online courses).

amounts they did not pay would put them in a better position, not the same position, as before the breach. These third-party payments must therefore be excluded. And evidence of such third-party financial assistance would have to come directly from each individual student, as, for example, it was discovered through Plaintiff's deposition that his parents were responsible for one of the loans reflected on his Billing Statement. Ex. 3, O. Eddlemon Dep. at 46:9-12, 47:21-49:3.

In anticipation of this argument, Plaintiff asserts (based on out-of-circuit precedent) that third-party payors do not have standing to sue universities in tuition and fee refund cases. *See* Doc. 83 at 19 (asserting standing argument and citing *Ninivaggi v. Univ. of Del.*, 2023 WL 2734343, at *2 (D. Del. Mar. 31, 2023)). That misses the point. Whether third-party payors separately would have standing in Illinois is a distinct question from whether, under Illinois law, students can recover damages for amounts they did not pay. They cannot.

### 4.  Plaintiff's Models Are Not Triable.

Apart from all of the foregoing methodological flaws, Plaintiff also has a more basic problem: He has not identified any witness capable of presenting his models at trial. Plaintiff has not disclosed any expert witness to do so. And Plaintiff himself cannot testify to the models because he expressly rejected them under oath, declaring that he personally believes that he should get "what the jury deemed to be subpar from the beginning" for each of his courses. Ex. 3 at 159:11-19. Plaintiff attributed different values to each of his classes, ranging from a low of 10% to a high of 90%. Ex. 3 at 80:14-85:2. He further suggested the jury should "make an evaluation" as to the "lost value" of each course for each student. Ex. 3 at 18:1-24, 21:1-12. As for the Activity Fee Class, Plaintiff testified that he did not "know how much" each student used facilities like the Markin Student Center or participated in sports, and he thought the damages should be "whatever is deemed appropriate by the jury" for each student. *Id*. at 21:1-22:1. Lacking any expert or fact

witness supportive of his damages models, Plaintiff has no method of entering them into evidence at trial.

### B.   Plaintiff's Damages Models Do Not Correspond to His Theories.

Turning to the second part of the *Comcast* inquiry, Plaintiff also fails to establish that his damages models fit "the legal theory of the harmful event." 569 U.S. at 36, 38. Although damages are an element of both Plaintiff's breach of contract claim and his unjust enrichment claim, the measure of damages corresponding to each theory differs. *Compare Zirp-Burnham, LLC v. E. Terrell Assocs.*, 356 Ill. App. 3d 590, 600 (1st Dist. 2005), *with Macon Cty. v. Merscorp, Inc.*, 968 F. Supp. 2d 959, 965-66 (C.D. Ill. 2013). For breach of contract, the measure of damages "is the amount that will compensate the aggrieved party for the loss that the breach entailed." *Mayster*, 2020 IL App. (2d) 190840, ¶ 31. There should be no "windfall recovery." *In re Link-Up*, 2013 IL App. (1st) 113349, ¶ 19. For unjust enrichment, damages are measured by the "net gain to the defendant rather than the loss to the plaintiff." *Greenbrier Leasing Co. LLC v. Carroll*, No. 07-C-2884, 2008 U.S. Dist. LEXIS 46854, *18 (N.D. Ill. Jun. 17, 2008) (citations omitted).

Plaintiff's models do not correspond to either theory. Unjust enrichment is especially problematic, as Plaintiff's models do not even consider Bradley's "net gain." Plaintiff asserts the damages models can be "the same" for breach of contract and unjust enrichment for both classes. Doc. 83 at 16, 18. But both models look at what the class members allegedly ***lost***, not what Bradley purportedly ***gained***. By his own admission, Plaintiff has not provided any model to assess classwide damages in relation to the alleged gain to Bradley—or for that matter, any evidence whatsoever of a purported "gain" by Bradley. *See* Doc. 83 at 16-17. Plaintiff alleges Bradley received an "unjust gain" based on its receipt of federal funding. *See* Doc. 39 at ¶¶ 18-21, 116-119. But he offers no model to measure that "gain," and with good reason: The only evidence regarding Bradley's use of federal assistance confirms that Bradley applied 100% of these funds

12

to benefit students. *See* Ex. 4, D. Koch Dep. at 6:17-12:3; Ex. 5, Def.'s Objs. & Resps. to Pl.'s First Interrogs. at No. 9-10; Ex. 2 at No. 18-19. Different students received different aid amounts based on their financial aid status and applications. Ex. 4 at 6:17-8:10. Despite having the opportunity, Plaintiff did not apply for this assistance. Ex. 3 at 139:21-141:6. Plaintiff did, however, acknowledge it would be "reasonable" to deduct this assistance from the damages. Ex. 3 at 141:7-16. Yet Plaintiff's damages models do not account for these assistance payments at all.

As for breach of contract, Plaintiff's damages models all but guarantee that Plaintiff and the class members would recover a windfall. As discussed in § II.A, *supra*, Plaintiff's models do not exclude private scholarships, do not exclude third-party payments, do not apply any scholarship, grant, or assistantship exclusions to the Activity Fee Class, and do not rely on uniform charges amongst students. As a consequence, Plaintiff and the class members would recover more than the contemplated *pro rata* share of what they actually paid. Plaintiff himself exemplifies this. He received two scholarships totaling $6,000 for the Spring 2020 semester, with the balance paid through two loans. Doc. 83-42 at 2. Plaintiff's parents, not Plaintiff, are responsible for the larger of the two loans. Ex. 3 at 46:9-12, 47:21-49:3. Plaintiff personally paid a maximum of $3,711 towards his tuition and activity fee ***combined*** in Spring 2020. After all available financial aid was applied to Plaintiff's account, he received a "Refund for Credit Balance" of $2,854[5]—establishing that he only truly paid $857. Doc. 83-42 at 2. Using Plaintiff's *pro rata* formula, he should only be entitled to $56.56, but he claims he is owed ***13 times*** that amount. *See* Doc. 83 at 10 (citing $740 tuition refund for Plaintiff).

At bottom, Plaintiff's damages models rely on highly individualized evidence; rest on flawed assumptions; fail to deduct amounts that Plaintiff and the class members did not pay; have

---

[5] Plaintiff's models also fail to consider the impact of credit balance refunds issued to students like himself.

no supporting witness; and do not fit his theories. Because Plaintiff has failed to establish viable damages models capable of measuring classwide damages under *Comcast*, class certification is improper under Rule 23's rigorous analysis.

### III.   Plaintiff Cannot Satisfy Commonality and Predominance on the Liability Elements of His Claims.

Even if Plaintiff could satisfy commonality and predominance as to the damages elements of his claims—though he clearly cannot—the record further confirms Plaintiff cannot satisfy these requirements for the liability elements of his claims. "What matters to class certification" is "not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common ***answers*** apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted) (emphasis in original). Commonality is not satisfied simply by asserting that the class is entitled to a remedy based on the defendant's actions. *E.g.*, *Cross v. Univ. of Toledo*, 199 N.E.3d 699, 711 (Ohio Ct. App. 2022) (reversing student refund class certification).

Because commonality and predominance overlap, "they often rise or fall together." *Howard v. Cook Cty. Sheriff's Office*, 989 F.3d 587, 598 (7th Cir. 2021). Predominance is the "far more demanding" criterion. *McGlenn v. Driveline Retail Merch., Inc.*, No. 18-CV-2097, 2021 U.S. Dist. LEXIS 9532, *22 (C.D. Ill. Jan. 19, 2021) (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012)). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem v. Windsor*, 521 U.S. 591, 623 (1997). To determine predominance, this Court "begins, of course, with the elements of the underlying cause of action." *Santiago*, 19 F.4th at 1018 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). The Court then considers the "proof necessary for the various elements" and the "form that trial on these issues would take." *Simer v. Rios*, 661 F.2d

655, 672-673 (7th Cir. 1981).[6]

**A.    Plaintiff Cannot Satisfy Commonality or Predominance for his Breach of Contract Claims.**

Plaintiff's breach of contract claims require proof of: (1) a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) injury to the plaintiff. *Zirp-Burnham*, 356 Ill. App. 3d at 600. Each of these elements is predominantly individualized here.

**1.    The Asserted Contract Terms Require Individualized Evidence.**

The first element of breach of contract requires Plaintiff to provide evidence of a contract's "definite and certain terms." *Id.* The evidence on which Plaintiff relies to support both Classes' contract terms is predominantly individualized, not classwide. *See Garcia de Leon v. New York Univ.*, No. 21-Civ-05005 (CM), 2022 U.S. Dist. LEXIS 110787, at *50-51 (S.D.N.Y. Jun. 22, 2022) (denying student refund class certification where "claims require examination of individual contract language") (internal quotations and citation omitted). Where class certification must rely on individualized extrinsic evidence of the asserted contract's terms, class certification is inappropriate. *See Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*, 601 F.3d 1159, 1176-77 (11th Cir. 2010) (reversing class certification due to individualized contract issues arising from extrinsic evidence); *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 255 (5th Cir. 2020) (noting predominance not met where extrinsic evidence impacts contract interpretation); *cf. Red Barn Motors, Inc. v. Nextgear Capital, Inc.*, 915 F.3d 1098, 1102-03 (7th Cir. 2019) (requiring extrinsic evidence to yield common answers to satisfy predominance).

**a.    Individualized Evidence Predominates with Respect to the Tuition Class's Alleged Contract Terms.**

---

[6] Plaintiff cites to a case at the pleadings stage. *See* Doc. 83 at 11 (citing *Delisle v. McKendree Univ.*, 73 F.4th 523 (7th Cir. 2023)). As the Seventh Circuit confirmed, class certification is more than a "mere pleading standard" and requires ***proof*** through common evidence. *Eddlemon*, 65 F.4th at 338-39.

Plaintiff relies on four sources of purported common evidence that he says will support his alleged contractual promise of 15 weeks of classes: (a) the Catalog's "Academic Calendar" section; (b) a Student Handbook, which incorporates the Academic Calendar "verbatim"; (c) testimony from two Bradley officials; and (d) Bradley's responses to written discovery.[7] *See* Doc. 83 at 4-5, 12; Doc. 83-1, 83-15, 83-18 – 83-23. But even Plaintiff's own exhibits confirm that individual evidence predominates with respect to this asserted promise.

The only testimony cited amongst Plaintiff's exhibits confirms that class length is an individualized question. As previously discussed, Bradley's Interim Provost of Academic Affairs testified that even during a traditional semester unimpeded by COVID-19, Bradley "will have some students taking courses that are less than 15 weeks" because course length depends "on the department [and] the discipline of the faculty member." Doc. 83-21 at 12:20-13:13. And contrary to Plaintiff's assertion that "no students who attended Bradley" were subject to a different Academic Calendar, *see* Doc. 83 at 4, 12, the record confirms that Bradley did not limit itself to a 15-week semester and has "***32 different terms***" with "a variety of calendars and options, depending on the intent of the faculty member[,] department, college, et cetera." Ex. 1 at 9:5-12 (emphasis added). Professors have the discretion to "select the term that fits best for the learning experience for the particular course." Doc. 83-21 at 12:9-15, 13:5-13. A factfinder would thus have to evaluate each student individually to determine which of the 32 different terms, or what combinations of such terms, each class member received, with testimony from each professor who taught the hundreds of courses available at Bradley during this semester regarding the term length of each

---

[7] Plaintiff also cites for the first time a "study" about purportedly common university practices, which he failed to timely produce, has not authenticated, and did not rely on in support of his original motion. *See* Doc. 83 at 10; Doc. 83-24; *see generally* Doc. 41. Bradley will address Plaintiff's improper exhibits by separate motion. In any event, the views expressed in Plaintiff's "study" are unsupported by any source, have no direct applicability to Bradley, and cannot constitute a promise on Bradley's part.

course in which the Tuition Class members were enrolled.

Plaintiff also misrepresents the Catalog as common evidence, asserting it applies to **all** students when it is clearly delineated as an "Undergraduate Catalog," and thus has no bearing on graduate students. *See* Doc. 83-1 at 2. Plaintiff's class definition sweeps in graduate students, yet Plaintiff has cited no common evidence of a 15-week instruction promise for graduate students.

Moreover, aside from the Catalog's silence on individual course length, it plainly does not evince a promise of a specified number of weeks of instruction per semester. The Academic Calendar includes a clear disclaimer: "The academic calendars are subject to revision." Doc. 83-1 at 19. Plaintiff admitted he understood this language gave Bradley the contractual right to revise the academic calendar "[t]o a certain extent," and further acknowledged Bradley's right under the Catalog "to make changes in a program of study[.]" Ex. 3 at 131:7-132:13; *see also* Doc. 83-1 at 22 (noting Bradley' right to change program of study). Thus, Plaintiff's cited documents are not common evidence.

Plaintiff's own testimony and his other filings in this Court further confirm that he has no intention of relying solely on his so-called "common evidence" to prove the asserted 15-week promise. To the contrary, both in his testimony and in his opposition to Bradley's motion for summary judgment, Plaintiff has relied on **individual** course syllabi to support the asserted 15-week promise. *See* Ex. 3 at 129:14-130:3; Doc. 57 at 3, 5, 10, 17-19 (including subheading "Reasonable Jury Can Find that Plaintiff's Course Syllabi [P]romised 15 Weeks"). Syllabi are highly individual and vary greatly by course. *Compare* Ex. 6, SUPPORION0009-12, *with* Ex. 7, SUPPORION0025-29; *see also* Doc. 43-7 at ¶ 2(e), (h), ¶ 3 (authenticating syllabi). Neither of the two Spring 2020 syllabi produced by Plaintiff include even a reference to 15 weeks of classes. Ex. 6; Ex. 7.

Plaintiff's reliance on such individualized evidence to oppose summary judgment confirms even he does not believe the terms of the Tuition Class's contract can be resolved with common evidence. At trial, applying Plaintiff's own proofs in opposing summary judgment, the jury will have to consider not just the Catalog, Academic Calendar, and Handbook, but also each student's course syllabi for each course, to determine whether they make out a 15-week promise. These individualized assessments of each student's individual combinations of course syllabi from hundreds of different courses would overwhelm any common proofs.[8]

### b. Individualized Evidence Predominates with Respect to the Activity Fee Class's Alleged Contract Terms.

In support of the alleged promise of 15 weeks of on-campus activities, Plaintiff points to three sources of purported common evidence: (a) the Catalog; (b) Bradley's website; and (c) the Student Activities Budget Review Committee ("SABRC") Articles (the "Articles"). But just as the Catalog is silent on the number of weeks of classes for each course, so too it is silent on the number of weeks' worth of activities to be provided to students. *See generally* Doc. 83-1 – 83-14. Plaintiff has cited to no provisions within the Catalog identifiable as "common evidence" of a promise of 15 weeks of on-campus activities. Indeed, an "Academic" Calendar has no colorable connection to any asserted promise as to the length of time and frequency that ***activities*** would be offered. The Catalog is neither common nor individual evidence of the asserted promise, as it contains nothing related to the subject matter of the claim. Moreover, again, an "Undergraduate" Catalog is not "common" evidence of any promise associated with graduate student activity fees.

The remaining "common" documents cited by Plaintiff similarly contain no

---

[8] Plaintiff's citation to two Bradley officials' testimony does not help him. Both officials merely confirmed that Bradley continued a recognized practice during the Spring 2020 semester that it has used in the past—cancelling classes under necessary circumstances without extending the Academic Calendar and aligning with Department of Education guidance in administering its classes. *See* Ex. 8, N. Thomas Dep. at 20:3-14; Ex. 1 at 10:24-12:3. That is not evidence of any promise—common or individual.

representations—common or individual—about the number of weeks activities would be offered. *See* Doc. 83-26 – 83-29. Plaintiff has provided no evidence that the Articles were even distributed or accessible to the student body. To the contrary, the only evidence in the record on this point is from Plaintiff, who admitted he was not aware the Articles existed before this lawsuit. Ex. 3 at 31:7-13; Ex. 9, Pl.'s Supp. Ans. to First Interrogs. from Def. at No. 5. A document that students were unable to consider in advance of entering into their contract with Bradley is not common evidence at all.

### 2.   Individualized Evidence Predominates with Respect to Performance.

Plaintiff admits that for the second breach of contract element, performance, his proof rests solely on the individual Billing Statements for each student in both Classes. *See* Doc. 83 at 8, 13-14. But Billing Statements are not common evidence. As Plaintiff's own Motion reflects, each student receives an individualized invoice reflecting the amounts owed and payments made by that on student. *See id*. To determine whether each student performed, therefore, the jury will need to review each of the 7,000+ students' individual Billing Statements. And, if performance is not apparent on the face of the Billing Statement, individual students will be required to testify. Because the highly individualized evidence on which Plaintiff relies cannot resolve the question of student performance in one stroke, it does not meet the commonality and predominance standards. *See Evans*, 2023 U.S. App. LEXIS 11050 at *2-6 (affirming class certification denial because of individualized payment inquiries).

### 3.   Individualized Evidence Predominates with Respect to Breach.

Plaintiff fails to present any common evidence to establish breach on behalf of each Class, much less predominant common evidence. In support of this element, Plaintiff points only to the general conclusion that Bradley cancelled one week of classes and closed campus for seven weeks. *See* Doc. 83 at 7-8. But these generalizations ignore the myriad individual factors that must be

considered to prove a breach. *See Smith v. Ohio State Univ.*, 200 N.E.3d 1249, 1263-64 (Ohio Ct. App. 2022) (reversing student refund class certification, noting court cannot "treat[] the fact of closure of the campus and the cessation of in-person classes as dispositive" of certification).

With respect to the Tuition Class, the record shows that not all students who paid tuition were enrolled in classes with a 15-week instruction schedule, and not all classes were designed for a 15-week schedule. *See* Doc. 83-21 at 12:9-15, 13:5-13; Ex. 1 at 9:5-12. Consequently, the mere fact of campus closure does not support classwide resolution of breach for the Tuition Class. And Plaintiff has offered no evidence, common or individual, to suggest that students enrolled in any of the other 31 terms offered by Bradley failed to receive the customary amount of instruction, nor does he make such an allegation in his Complaint. *See generally* Doc. 39.

Even for students enrolled in 15-week courses, like Plaintiff, the record reflects that total number of hours of instruction received is not a good proxy for breach, and that individual inquiries must be undertaken. Plaintiff himself admitted that, despite paying the same tuition for the same number of credit hours, he received ***more*** total instruction hours during the Spring 2020 semester than he received the previous semester, even after accounting for the cancelled week. Ex. 3 at 59:22-61:15, 68:6-70:2; Ex. 10, ORION0001; Ex. 11, ORION0002; Doc. 83-43 at 2; Doc. 83-42; *see* Doc. 43-7 at ¶ 2(a)-(d) (authenticating documents). Plaintiff further admitted that professors have discretion to cancel classes and schedule makeups, and that he had other classes cancelled (including for a full week) without receiving makeups; yet, he is not seeking any recovery for those cancellations. Ex. 3 at 72:18-73:1, 109:14-117:11, 126:15-127:4; 164:16-165:1. There cannot be common evidence of individual professors' discretionary decisions to make up classes cancelled during the Spring 2020 semester to account for the cancelled week. Plaintiff's own testimony highlights this individualized issue, as even he personally experienced a professor's unilateral and

independent decision to cancel (and makeup) one weeks' worth of classes ***after*** the Spring 2020 semester. *See id*. Consequently, whether Bradley breached a promise to provide 15 weeks' worth of classes is dependent on different course schedules and professors' individual decisions, of which there is no common evidence.

As for the Activity Fee Class, the evidence of breach is, if anything, even more individualized. Bradley continued to offer remote activities, events, and resources to students. *See* Ex. 12, Bradley 002335; Ex. 13, Bradley 002162-64; Ex. 14, SUPPORION0155-57; Ex. 15, SUPPORION0235-60; *see* Doc. 43-7 at ¶ 2(i – j), Doc. 43-8 at ¶ 8(d), (g) (authenticating documents). Plaintiff continued to participate in student organizations virtually. Ex. 3 at 33:9-19, 72:5-7, 88:1-15. In addition, Plaintiff acknowledged that not all class members benefit from activity fees equally, and Plaintiff cannot speak to those differences. Ex. 3 at 19:1-10, 21:13-22:1. A portion of the unused activity fees also rollover to the next year. Doc. 39 at Ex. 2 at 14; Ex. 8 at 14:17-25; Doc. 43-8 ¶ 3. As such, reenrolling students like Plaintiff continued to benefit from Spring 2020 activity fees the following semester. Ex. 3 at 95:2-11. Whether Bradley breached an activity fee promise is thus highly dependent on individual class members' circumstances.

### 4. Individualized Evidence Predominates with Respect to Injury.

Bradley has already identified the failings inherent in Plaintiff's damages models, which also raise commonality and predominance issues. *See Weiman v. Miami Univ.*, No. 22AP-36, 22AP-37, 2022 Ohio App. LEXIS 4040, at *4-5 (reversing student refund class certification for commonality and predominance concerns in damages model). But on top of Plaintiff's defective damages models, determining whether a class member has in fact suffered an injury at all is also an individualized issue for both Classes, thus precluding class certification. *See Messner*, 669 F.3d at 824-26 (finding class definition sweeping in members who could not have been harmed should not be certified); *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 891 (7th Cir. 2011)

(denying certification where individual damages assessments were necessary); *McGlenn*, 2021 U.S. Dist. LEXIS 9532 at *21-29; *Orr v. Elyea*, 279 F.R.D. 474, 478 (C.D. Ill. Nov. 16, 2009). Illinois law requires a plaintiff to establish "an actual loss or measurable damages resulting from the breach in order to recover." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 149 (2005). Plaintiff cannot do so on a classwide basis through common evidence. *See Omori*, 2023 U.S. Dist. LEXIS 86168 at *17-18 (denying class certification where separate assessments "would be necessary to determine which individuals sustained any damage at all"); *see also Garcia de Leon*, 2022 U.S. Dist. LEXIS 110787 at *26-36 (denying student refund class certification where plaintiff failed to meet burden of common evidence that all class members suffered same injury and were "uniformly impacted"); *Duke*, 204 N.E.3d at 764-65 (reversing student refund class certification based on lack of common evidence that "all class members suffered some injury").

For the Tuition Class, there are several groups of students who have not suffered any harm. One such group is students awarded $17,100 or more in the Spring 2020 semester. Doc. 83-40 at No. 1. Even Plaintiff acknowledges students who received 100% tuition via scholarships should be omitted from the Tuition Class. Doc. 83 at 1. But the only method Plaintiff suggests to identify these students is through a review of their Billing Statements, which again requires individualized inquiry into each Billing Statement and each student's scholarships, grants, and assistantships.[9] Doc. 83 at 1. Moreover, neither Bradley's scholarship records nor the Billing Statements reflect private scholarships paid directly to the student, leaving open the possibility that even more

---

[9] Plaintiff asserts that "Bradley refused to provide Plaintiff copies of Billing Statements for other class members until after class certification." Doc. 83 at 10 (citing Exhibit 31). In reality, Plaintiff did not request these documents until over a year and a half after fact discovery closed. *See* Doc. 73 at 2. Exhibit 31 shows only a wide-sweeping request for "[a]ll contracts and agreements between Defendant and Spring 2020 students." *See* Doc. 83-44 at No. 3. Plaintiff's failure to request Billing Statements or otherwise meet and confer regarding Bradley's objection to an obviously overbroad request can hardly be construed as Bradley's "refusal" to produce a subset of documents that Plaintiff never identified.

students than Bradley has recorded have received more than $17,100 in deductible financial aid. And, as previously discussed, the Billing Statements do not differentiate payments by third-party payors rather than the class members, which also are not recoverable as damages. *See* § II.A.3, *supra*.

Other groups of students suffering no injury include students who participated in courses under one of the 31 other available terms; students who were enrolled in courses that were never scheduled to last 15 weeks; and students who attended makeup classes to compensate for the cancelled week of classes. Plaintiff has not offered any common evidence to address these issues. Excluding students who have suffered no injury necessarily requires individualized evidence.

The Activity Fee Class likewise encompasses class members that suffered no injury, including students who: (a) continued to participate in activities after the campus closure; (b) participated solely in remote activities prior to and after campus closure; or (c) had 100% of their activity fees covered by scholarships, grants, assistantships or third-party payors. *See* Doc. 83-40 at No. 1. Another group is graduate students subject to a different fee structure, who in some cases had no activity fee at all depending on their program, which would necessitate an individualized inquiry to determine. *See* Doc. 41-2 at 2. Similar to the Tuition Class, there is no common evidence to identify class members falling into these no-injury groups.

In sum, as to each element of his breach of contract claim for each Class, Plaintiff has again failed to meet the rigorous standards of Rule 23. Each element poses significant individualized questions that predominate for both Classes, and common evidence is not capable of "driv[ing] the resolution of the litigation." *Dukes*, 564 U.S. at 350. Consequently, neither Class should be certified on the breach of contract claims.

**B.     Plaintiff Cannot Satisfy Commonality or Predominance for his Unjust Enrichment Claims.**

Plaintiff's unjust enrichment claims are equally inappropriate for class certification. Unjust enrichment requires proof that Bradley received a benefit to Plaintiff's detriment, and allowing Bradley to retrain that benefit would be unjust. *Macon Cty.*, 968 F. Supp. 2d at 965-66. Plaintiff has not presented predominant common evidence as to any of these elements

1.   **The Viability of Unjust Enrichment as an Alternative to Breach of Contract Is Individualized to Each Class Member.**

First, unjust enrichment is considered an equitable claim and cannot stand where a contract exists between the parties. *Miller v. Lewis Univ.*, 533 F. Supp. 3d 678, 687 (N.D. Ill. 2021). As noted at summary judgment, Bradley does not dispute the existence of a contract governing the relationship between Bradley and its students. *See* Doc. 43 at 30. Nor could it. *E.g.*, *DiPerna v. Chi. Sch. of Prof'l Psych.*, 893 F.3d 1001, 1007 (7th Cir. 2018) (confirming relationship between university and student is contractual). By Plaintiff's own admission, there can be no viable unjust enrichment class for either tuition or activity fees where Bradley does not dispute the existence of a contractual relationship. *See* Doc. 83 at 15 (noting quasi-contract claim only viable "in the event that Bradley successfully argues that there is no implied contract [with its students]") (citing *Miller*, 533 F. Supp. 3d at 687 (dismissing student's unjust enrichment claims where university admitted to existence of contract)).

The incompatibility of an unjust enrichment claim with an existing contractual relationship has implications for class certification as well. As detailed in § III.B.1, *supra*, the terms of Bradley's contract with each class member is an individualized question. Just as the jury must inquire individually into such matters as each student's course syllabi to discern the terms of the contract as to Plaintiff and each class member, so too the viability of each class member's unjust enrichment claim turns on the existence and terms of that class member's contract. Because the contract requires individual inquiry, so too does the viability of unjust enrichment.

### 2.  There Is No Common Evidence of a Benefit to Bradley.

With respect to Bradley's benefit, Plaintiff has presented no evidence capable of proving this element on a classwide basis. Plaintiff *alleges* that Bradley's benefit turns on its receipt of CARES Act funding. Doc. 39 at ¶¶ 18-21, 116-119. But Plaintiff has offered no common evidence of such a benefit, and the record confirms that Bradley spent 100% of its federal aid to benefit students. *See* Ex. 4 at 6:17-12:3; Ex. 5 at No. 9-10; Ex. 2 at No. 18-19.

Plaintiff's only other source of a supposed benefit is Bradley's mere receipt of payments from students as evidenced by the Billing Statements. *See* Doc. 83 at 16. Not only are these statements highly individualized, as already discussed, but they say nothing about how those funds were spent to indicate any supposed benefit to Bradley – which quickly transitioned to remote learning in unexpected circumstances and continued to offer sufficient credit hours for students during the Spring 2020 semester to benefit the Tuition Class; and which continued to offer remote activities and resources following the transition and rolled over activity fee funds that were always slated for this distribution to benefit the Activity Fee Class.

### 3.  There Is No Common Evidence of a Detriment to Either Class.

With respect to both Classes' alleged detriment, Plaintiff again has not presented common evidence; he merely repeats his defective breach of contract analysis. Doc. 83 at 16. Plaintiff fails to grapple at all with Bradley's expenditures on continued education to allow students to timely complete their classes (and in some cases, graduate), which can hardly be considered a detriment to students. Even Plaintiff testified that he valued his education in terms of continuity, not total hours, because he believed receiving course credit each semester without interruption would benefit his medical school applications. Ex. 3 at 76:2-14; 94:13-95:1; 119:13-21; 120:10-13. And, as already discussed, even after the cancelled week, Plaintiff received more class instruction time during the Spring 2020 semester than his previous semester, in which he had enrolled the same

number of credits for the same cost. Furthermore, Plaintiff also ignores the COVID-19 grants Bradley issued to students—which vary from student to student—in discussing the purported detriment to students.

Plaintiff also has not provided any common evidence of a detriment to the Activity Fee Class. Plaintiff himself testified that student experiences and involvement in student activities are individualized issues into which he could offer no insight. Ex. 3 at 21:1-22:1.

### 4.     There Is No Common Evidence of Bradley's Purported Unjust Conduct.

Plaintiff is also required to establish that Bradley's conduct was unjust. Plaintiff has not identified any evidence at all, let alone common evidence, of unjust actions, dooming his request to certify the Classes for unjust enrichment. He asserts Bradley's actions are unjust because it received federal COVID-19 relief, but Bradley used all CARES Act funding for students' benefit. *See* Ex. 4 at 6:17-12:3; Ex. 5 at No. 9-10; Ex. 2 at No. 18-19. Such individualized considerations on unjust enrichment do not meet the predominance requirement. *See Little v. Grand Canyon Univ.*, No. CV-20-00795-PHX-SMB, 2022 U.S. Dist. LEXIS 16174, at *21-22 (D. Ariz. Jan. 28, 2022) (denying class certification of student unjust enrichment class because "individualized analysis . . . makes it unsuitable for class certification").

### 5.     Bradley's Individualized Room-and-Board Refunds Do Not Support Class Certification.

Plaintiff suggests that Bradley's room-and-board refunds somehow justify class certification of his unjust enrichment claims. *See* Doc. 83 at 16. Plaintiff incorrectly asserts that Bradley issued these refunds "because it would be unjust to charge room and board that students were not receiving[.]" Doc. 83 at 16. There is no evidence to support this bare assertion. Indeed, Plaintiff drastically mischaracterizes the refunds when he asserts that Bradley "provided a 44% room and board refund for all students living on campus[.]" Doc. 83 at 16. That is false, as Plaintiff

knows. Bradley's interrogatory answers attest that the room-and-board refunds were dependent on each individual student's circumstances, including when each student left campus.[10] In fact, Bradley stated that not "all students" even received such a refund. *See* Doc. 83-40 at 3. Far from bolstering Plaintiff's case for certification of his unjust enrichment claim, Bradley's individualized room-and-board refunds only confirm the predominantly individualized nature of the inquiry and show that the record does not support class certification for either Class.

**IV.     Plaintiff Is Not a Typical or Adequate Class Representative.**

Plaintiff has also failed to prove typicality and adequacy under Rule 23(a)(3) and (4), which are intertwined requirements. *See Robinson v. Sheriff of Cook Cty.*, 167 F.3d 1155, 1157 (7th Cir. 1999) (noting where plaintiff's claims are atypical, he is "not likely to be an adequate representative") (citation omitted). Typicality "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (citation omitted). Claims and defenses specific to a named plaintiff and not applicable to other class members render class certification improper. *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 821 (7th Cir. 2011). If the class representative's damages differ from the class, for example, there can be "no structural assurance of fair and adequate representation." *Amchem v. Windsor*, 521 U.S. 591, 627 (1997). Doubts as to adequacy should be resolved against certification. *Robin v. Doctors Officenters Corp.*, 123 F.R.D. 579, 580 (N.D. Ill. 1988) (citation omitted).

Here, the record amply demonstrates Plaintiff's claims are atypical of the proposed Classes. Perhaps most significantly, Plaintiff testified that his individual course syllabi set forth the terms

---

[10] Bradley issued these refunds to 1,838 students, with 1,814 housing refunds ranging from $693.00 to $2,183.85, and 1,717 meal plan refunds ranging from $697.00 to $959.20. *See* Doc. 83-40 at 2-3.

of his contract with Bradley, and reaffirmed this individualized claim in opposition to summary judgment. *See* Ex. 3 at 129:14-130:3; Doc. 57 at 3, 5, 10, 17-19. Thus, the survival of Plaintiff's individual claims turns on evidence not shared with the Classes. As to the Tuition Class, Plaintiff also: (a) received more total instruction hours in Spring 2020 than the previous semester even after accounting for the week of cancelled classes, confirming his lack of injury; (b) accepted professors' individual class cancellations without complaint; and (c) measured his educational goals in terms of continuity as opposed to instruction time.

For the Activity Fee Class, Plaintiff: (a) acknowledged his participation in remote activities; (b) admitted that other students' experiences with respect to activities would differ from his own; and (c) testified that activity fee damages would require individualized assessments. And Plaintiff expressly *rejected* the damages formulas he now attempts to advance, insisting he is entitled to separate and distinct individual damages for the "subpar" value of his remote classes (10% to 90%) and 50% of his activity fee, all based on his unique circumstances. Plaintiff also did not apply for assistance from Bradley, differentiating his unjust enrichment claim from those who did.

Because Plaintiff's circumstances and damages differ in material and idiosyncratic ways from the Classes he seeks to represent, his claims are not "so interrelated" to those of the Classes "that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982); *see also Garcia de Leon*, 2022 U.S. Dist. LEXIS 110787 at *36-39 (denying class certification of student refund claims where university raised defenses specific to class representative, including distinct injury).

## V. Plaintiff Has Not Met his Burden with Respect to Superiority.

To proceed under Rule 23(b)(3), Plaintiff must also prove a class action is the "superior"

method of adjudicating this controversy. Fed. R. Civ. P. 23(b)(3). "Judicial economy is not best served by using a class action . . . to engage in [] individualized analyses." *Groussman v. Motorola, Inc.*, No. 10-C-911, 2011 U.S. Dist. LEXIS 134769 at *11 (N.D. Ill. Nov. 15, 2011); *see also Gesell v. Commonwealth Edison Co.*, 216 F.R.D. 616, 626 (C.D. Ill. 2003). Plaintiff must "proffer a viable method of" resolving his claims "that does not require individualized, fact-based mini-trials for each potential class member." *Gorss Motels*, 29 F.4th at 846. Claims that rely on individual proof render a putative class action unmanageable. *Pastor v. State Farm Mut. Auto. Ins. Co.*, No. 05 C 1459, 2005 U.S. Dist. LEXIS 22338, *23 (N.D. Ill. Sep. 30, 2005); *see also Lilly v. Ford Motor Co.*, No. 00-C-7372, 2002 U.S. Dist. LEXIS 5698, *5 (N.D. Ill. Apr. 2, 2002). Other courts considering superiority in similar cases have held that these kinds of student refund claims should not be resolved through class actions. *See In re Suffolk Univ. COVID Refund Litig.*, No. 20-10985-WGY, 2022 U.S. Dist. LEXIS 185297, at *3-4 (D. Mass. Oct. 11, 2022) (denying class certification for lack of superiority).

Here, each element of Plaintiff's claims and both proposed Classes require individualized proof. Indeed, by Plaintiff's own admission, his class models require review of each student's Billing Statement by the jury. Plaintiff asserts that if predominance is satisfied, superiority is satisfied, and insists Plaintiff and the Class Members "experienced virtually identical circumstances[.]" Doc. 82 at 23. As is by now clear, that assertion is unsupported by the record, which demonstrates innumerable individualized circumstances that will necessarily drive the outcome of each claim for each Class. Plaintiff has the burden to establish how his claims can be effectively tried on behalf of the Classes, and he has not met that burden. If forced to proceed as a class action, this case will devolve into an endless series of mini-trials for each putative member of two separate Classes, comprising as many as 7,759 members. This simply is not manageable.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Plaintiff's Motion for Class Certification

with prejudice, and grant any other relief this Court deems equitable and just.

Dated: August 30, 2023                    Respectfully submitted,

**BRADLEY UNIVERSITY**

By:  <u>/s/ *Gregory E. Ostfeld*</u>
Gregory E. Ostfeld (Attorney No. 6257163)
ostfeldg@gtlaw.com
Tiffany S. Fordyce (Attorney No. 235063)
fordycet@gtlaw.com
Kara E. Angeletti (Attorney No. 6329388)
angelettik@gtlaw.com
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400

*Attorneys for Bradley University*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Kara E. Angeletti, certify that this brief complies with this Court's August 16, 2023 order extending the type-volume limits of Central District of Illinois Local Rule 7.1(B)(4) to 10,000 words because this Memorandum consists of 9,704 words, including all headings, footnotes, and quotations, according to the word processing system used to prepare this Memorandum.

*/s/ Kara E. Angeletti*

Kara E. Angeletti

<u>**CERTIFICATE OF SERVICE**</u>

I, Kara E. Angeletti, certify that on August 30, 2023, a true and correct copy of the **Defendant Bradley University's Memorandum of Law in Opposition to Plaintiff's Second Motion for Class Certification and Supporting Memorandum of Law** was served electronically through the Central District of Illinois CM/ECF electronic filing, and via electronic mail for all exhibits filed under seal, on all counsel of record.

/s/  *Kara E. Angeletti*

One of Defendant's Attorneys
