# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

**ORION EDDLEMON,** individually and on behalf of all others similarly situated,

**Case No: 1:20-cv-01264-CRL-JEH**

       **Plaintiff,**

v.

**BRADLEY UNIVERSITY,** an Illinois not-for-profit corporation,

       **Defendant.**

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO FILE SECOND NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff Orion Eddlemon ("Eddlemon") does not oppose Defendant Bradley University's ("Bradley") Motion to File its Second Notice of Supplemental Authority [Doc. 91], but disagrees with its characterization that the Fourth Circuit case, *Student A. v. Liberty University*, No. 6:20-cv-00023, 2023 WL 6612525 (W.D. Va. Oct. 10, 2023) ("*Student A*") is persuasive authority and thus supports its position. In fact, the case is clearly distinguishable on its facts, despite Bradley's attempt to gloss over those key distinctions. If anything, the case actually highlights the reason that Eddlemon's Motion for Class Certification [Doc. 83] should be granted.

I.   *Student A* **Background**

*Student A* was a putative class action brought by several students at Liberty University ("Liberty") who sought refunds for various fees and room and board they paid for the Spring 2020 semester. *Student A, supra*, at *1. The plaintiffs claimed that Liberty did not provide the activities and services for which they paid when Liberty responded to the Covid-19 pandemic and, according to the plaintiffs, effectively shut down its campus. *Id*.

Liberty is comprised of seventeen colleges and schools, all of which required different fees. *Id*., at *1, 17. In the spring of 2020, Liberty charged at least 645 different course fees for enrolled students in its undergraduate program. *Id*., *17. The undergraduate fees covered course fees, material fees, and online content fees, including fees for technology or equipment purchases, consumable materials, equipment maintenance, software licensing, website subscriptions, workshop costs, administrative costs, assessment fees, exam and exam certification, travel fees, and teacher stipends. *Id*. The court found that the named plaintiffs, incurred, at most, five of the 645 course-specific fees. *Id*.

The students also sought reimbursement for other fees, including student health fees, resident activity fees, parking registration fees, and room and board. *Id*. Although students were encouraged to leave campus during the spring semester, the campus was not actually closed, and students on campus continued to have access

to the student health center that was funded by the student health fees. *Id.*, at *18. Likewise, over 2000 students remained on campus in student housing after classes moved online. *Id.*, *21.

Liberty distributed credits and CARES Act funds to nearly 15,000 students as emergency financial aid. *Id.*, at *4. The amounts the school distributed took into account costs of (i) travel and transportation (e.g., vehicle insurance and rentals), (ii) internet and technology (e.g., cell phone charges and course fees), (iii) housing (e.g., shelter, utilities, housekeeping supplies, furnishings, and other household equipment), (iv) meals, (v) health services, (vi) parking, and (vii) activity fees. *Id.*, at *5. The amount of CARES Act funds Liberty disbursed to plaintiffs exceeded their damages. *Id.*, at *6.

The Liberty A court held that the plaintiffs were made whole by the school's payments, which more than offset their asserted damages. *Id.*, at *12-13. Because plaintiffs could not demonstrate any injury-in-fact and their claims were accordingly moot, the court denied their motion for class certification and dismissed their case. *Id.* at *13.

Nevertheless, the court went on to consider whether the plaintiffs, on the merits, could meet the requirements of Rule 23(a) and (b). *Id.*, at *14. It found that the plaintiffs failed to establish commonality because the school charged each student different fees depending on their academic program, course load, parking,

housing, and meal plan selection. *Id.*, at *17. The court further found that despite certain fees being standard such as the student health fees, the activity fees, the parking registration fees, and to some extent the room and board fees, because the campus remained open, whether and to what extent either the named plaintiffs or the putative class members were actually deprived of the benefit of those services depended on highly individualized circumstances unique to each student. *Id.*, at *17, 18. Because the plaintiffs' case was "all about fees," and all the fees were different among the students, the court held that the plaintiffs' attempt to center the case on the school's misconduct ignored the plaintiffs' own theory of the case that the school retained their fees. *Id.*, at *18. For "largely the same reasons" the court held that plaintiffs failed to establish typicality, predominance, and superiority. *Id.*, at *19, 21. The court thus denied the motion for class certification. *Id.*, at *24.

## II.   *Student A* is Inapposite

The *Student A* court found that the plaintiffs' claims were rendered moot because the university used CARES Act funds to reimburse plaintiffs and they therefore lacked an injury-in-fact. Of course, contrary to those facts, in this case, Bradley has refused to offer any refunds to students. In further contrast to the facts of *Student A*, Bradley charged the same activity fee to all students regardless of their program and closed the campus for seven weeks. Moreover, Bradley cancelled classes entirely for one week.

A. **The *Student A* Court Should Not Have Reached the Merits**

As an initial matter, the *Student A* court found that it lacked jurisdiction because the students lacked Article III standing. Thus, the court had no subject matter jurisdiction to hear the claim. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)). Accordingly, the *Student A* court should not have considered the merits of the class certification motion. Nevertheless, it did, and now Bradley suggests the case supports its position. It does not.

B. **Eddlemon Has Satisfied the Rule 23 Elements**

Unlike the *Student A* case, plaintiffs have shown that common questions predominate over any questions impacting individual class members. As Eddlemon has argued, common issues include whether the student's contract (including uniform documents like the Spring 2020 Course Catalogue and the 2019-2020 Student Handbook) guaranteed fifteen weeks of classes and on-campus activities. [Doc. 83]. Unlike the facts in *Student A*, students in Eddlemon's Tuition Class all agreed to pay the same tuition and Activity Fee, regardless of any individualized issues regarding how much of their tuition was covered by parent payments or loans

5

and scholarships. *Id.* Despite its promises, Bradley closed its campus entirely and cancelled a full week of classes. *Id.* It offered students no refunds. *Id.* Bradley does not contest these facts. This is obviously not the situation in Student A, where the campus remained open and the fees at issue were many and varied. Bradley's conduct was the same for all students – it did not shut down classes and activities for some students but not others. Bradley's conduct injured Eddlemon and each and every student in each putative class. Thus, whether or not Bradley breached the contract will turn on common evidence of breach to prove the elements of the claim, *i.e.*, the existence of the contract, the performance of Eddlemon and the students, Bradley's breach, and the resultant injury.

Bradley argues that it has raised objections to Eddlemon's class certification motion similar to those raised by the court in the Student A case. [Doc. 91-1.]. But in truth, Bradley's arguments ring hollow where the basic facts of the two cases differ so dramatically. Here, the answer to what was promised to Eddlemon and the putative class will resolve the dispute "in one stroke." That, according to the *Student A* court, was not the case given that the school had issued refunds, campus remained open, and students paid 645 different fees. Bradley misses the mark when it claims there are numerous parallels with the Student A case.

| | |
|---|---|
| Dated: December 14, 2023 | **VARNELL & WARWICK, P.A.**<br><br>/s/ Brian Warwick<br>Brian W. Warwick; Florida Bar: 0605573<br>Matthew T. Peterson, ARDC: 6321290<br>Janet R. Varnell, Florida Bar: 0071072<br>**400 N. Ashley Drive, Suite 1900**<br>Tampa, Florida 33602<br>T: 352-753-8600<br>F: 352-504-3301<br>*bwarwick@vandwlaw.com*<br>*mpeterson@vandwlaw.com*<br>*jvarnell@vandwlaw.com*<br>*ckoerner@vandwlaw.com*<br><br>***Counsel for Plaintiff*** |

7

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 14, 2023, I electronically filed the foregoing with the Clerk of the Court through the CM/ECF System, which will send a notice of electronic filing to all counsel of record.

/s/ Brian Warwick
Brian W. Warwick