IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| **ORION EDDLEMON**, individually and on behalf of all others similarly situated,<br><br>**Plaintiff**,<br><br>v.<br><br>**BRADLEY UNIVERSITY**, an Illinois not-for-profit corporation,<br><br>**Defendant**. | Case No. 1:20-cv-01264-MMM-JEH<br><br>Hon. Colleen R. Lawless<br>Hon. Mag. Jonathan E. Hawley |

### NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANT'S OPPOSITION TO CLASS CERTIFICATION AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Bradley University (the "University"), respectfully requests this Court take notice of supplemental authority in support of Defendant's Opposition to Class Certification (Doc. 84) and Defendant's Motion for Summary Judgment (Doc. 43). In support, the University states:

**INTRODUCTION**

Plaintiff filed his Second Motion for Class Certification on August 16, 2023. Doc. 83. The Second Motion for Class Certification was fully briefed on September 26, 2023. Doc. 89. The University has submitted two notices of supplemental authority opposing class certification, with its most recent filed on December 27, 2023. Doc. 91, 93.

The University filed its Motion for Summary Judgment on April 12, 2022. Doc. 43. The motion was fully briefed on June 13, 2022. Doc. 52, 57. The University also submitted a notice of supplemental authority in support of summary judgment on May 20, 2024. Doc. 94-95, 97.

Since the respective dates of these filings, additional authority relevant to this Court's analysis on both issues has been entered in federal, state, and appellate courts. The University brings these cases to the Court's attention to the extent the more recent authority might inform the

Court's decisions. As in the instant case, these new opinions are specific to similar tuition and fee refund cases against universities resulting from the COVID-19 pandemic, seeking relief for breach of contract and unjust enrichment. The University requests that this Court take notice of these cases to aid its assessment of class certification and summary judgment in this case.

## SUPPLEMENTAL AUTHORITY

I.  **Class Certification Authority**

   A.  *Schultz v. Emory University*

In *Schultz*, the Eleventh Circuit vacated the district court's order granting class certification for a tuition payor class seeking refunds following the defendant's transition to remote learning. No. 23-12929, 2024 U.S. App. LEXIS 26513, at *1-2 (11th Cir. Oct. 21, 2024), attached as Ex. A. The court first noted that damages can create individual issues capable of defeating class certification where "their computation either is (1) too complex and factually specific, or (2) accompanied by significant individual questions surrounding liability." *Id.* at *13-14 (citation omitted). To that end, the court held that the district court erred in assuming damages could be computed on a classwide basis, even where the plaintiff had not presented sufficient evidence—as Eddlemon has failed to do here—and had instead improperly required the defendant to disprove classwide computation. *Id.* at *14. Accordingly, the court vacated the class certification decision.

   B.  *Hall-Landers v. New York University*

In *Hall-Landers*, the student-plaintiff brought a putative class action seeking tuition refunds following the university-defendant's transition to remote learning during the COVID-19 pandemic. No. 20 Civ. 3250 (GBD)(SLC), 2024 U.S. Dist. LEXIS 221502, at *1 (S.D.N.Y. Dec. 6, 2024), attached as Ex. B. The student alleged claims for breach of contract, unjust enrichment and money had and received. *Id.* After the student's motion for class certification, the magistrate

judge recommended denying the motion as lacking sufficient evidence of predominance and superiority. *Id.* at *2.[1]

Regarding predominance, the court highlighted that the student's implied contract theory would break down into too many individual issues because the marketing and promises made to each student varied depending on the "particular college, school, and/or program in which [the students] are enrolled, as well as the number of credits they take in a given semester," *id.* at *47-48—similar to the number of classes allegedly promised at issue in the instant case. Because there was no form agreement (as is the case here), the *Hall-Landers* court determined that it "would be required to assess the materials relevant to each implied contract for each putative class member because the services each received depended on the NYU program they attended, whether NYU made a specific enforceable promise to provide in person instruction for that program (even each class), and the tuition they paid for it." *Id.* at *48.

The individualized issues in determining the formation of and terms for each implied contract also meant, by extension, that individualized issues would predominate for breach, injury, and causation. *Id.* at *49-50. Relatedly, the differences in each student's circumstances—including each student's school, program, and expectations—also required individualized inquiries into whether the defendant had been unjustly enriched. *Id.* at *51-57. The court further held that the students had not established that a class action was superior given the individualized issues. *Id.* at *57-58.

C. *Miazza v. Board of Supervisors of Louisiana State University*

In *Miazza*, the First Circuit Court of Appeal of Louisiana reversed the lower court's grant of class certification for tuition and fee refund classes. 394 So. 3d 874, 876-77 (La. Ct. App. 2024)

---

[1] The student-plaintiff filed objections to the magistrate's report and recommendation, which remains pending as of the filing of this Notice.

(decided Aug. 9, 2024), attached as Ex. C. The Louisiana Court of Appeals held that "[a] multitude of individualized inquiries and proof make up the liability and damages issues essential to the putative plaintiffs' implied contract claims," pointing to examples such as:

> [W]hich representations in each school's or college's catalogs, bulletins, and website materials did the putative plaintiff rely upon in developing his or her expectation and what particular facilities and on-campus opportunities did a putative plaintiff expect to utilize; whether the putative plaintiff has historically utilized on-campus facilities and opportunities; which facilities and/or on-campus opportunities, if any, were necessary for a particular school's or college's course completion; and whether a putative plaintiff was satisfied with the online instruction, course credits received, and grading options provided[; and] . . . whether a putative plaintiff actually suffered any financial loss, mindful of each student's particular situation[.]

*Id.* at 880-81. Because these issues are student-specific, which is also true of Eddlemon's class certification claims here, the students could not establish classwide evidence to support their breach of contract claims, and the trial court's class certification order holding that they had established commonality was "manifestly erroneous." *Id.* at 881. By extension, the court held that the students likewise could not establish predominance in support of class certification. *Id.*

### II. Summary Judgment Authority

#### A. *Bergeron v. Rochester Institute of Technology*

In *Bergeron*, the Second Circuit affirmed summary judgment for the defendant-university in a similar case. No. 23-271, 2024 U.S. App. LEXIS 31215, at *1 (2d Cir. Dec. 10, 2024), attached as Ex. D. First, confirming that the disclaimer in the university's materials, which is similar to the disclaimer in the University's catalog, applied to bar the breach of contract claims, the court held that the students failed to identify a specific promise of in-person instruction through the university's course catalogs, website, and other miscellaneous materials. *Id.* at *3-4. It further noted that neither "[p]assing references" to the alleged promise nor the university's prior conduct qualifies as a sufficiently "specific promise" to carry the students' breach of contract claims. *Id.* at

4

\*4-5. The court also affirmed summary judgment for the university on the students' unjust enrichment claims, holding that while there may be a dispute over the terms of the implied contract, there was no dispute that an implied contract governed the subject matter at issue. *Id.* at \*5.

### B. *Mooers v. Middlebury College*

In *Mooers*, the court granted the college's summary judgment motion where the student sought to recover prorated student activity fees after the college transitioned to remote learning in spring 2020. No. 2:20-cv-00144, 2024 U.S. Dist. LEXIS 189047, at \*1-2 (D. Vt. Oct. 17, 2024), attached as Ex. E. The court first rejected the student's argument that the college made a concrete promise to provide in-person, on-campus activities in exchange for the student activity fee. *Id.* at \*22-23. The student attempted to rely on "promotional, generalized, and laudatory statements," like Eddlemon does in the instant case, including statements pointing to "opportunities" for students, the number of clubs available, and the "community" the college provides. *Id.* at \*22-23. In response, the court noted, "[n]one of these statements is a specific and concrete promise that student activities will take place in-person and on-campus. The majority of courts, including this one, have recognized that aspirational statements are non-contractual in nature and cannot be enforced." *Id.* at \*23 (citation omitted).

Like Eddlemon here, the *Mooers* student also sought a prorated refund of the student activity fee after the college extended its spring break to adjust to the Vermont governor's executive order prohibiting in-person instruction and events. *Id.* at \*26. The student argued that because the college did not offer <u>any</u> student activities during that weeklong period, a prorated refund was necessary. *Id.* The court rejected this theory outright, highlighting that the student "cites no specific and concrete promise by [the college] that student activities would take place every day of the semester without interruption." *Id.* The court further noted that, even if such an

5

agreement had existed, such an agreement would have been unenforceable in light of the public safety issues surrounding in-person activities at the time. *Id.* at *26-27.

For these same reasons, the court also rejected the student's unjust enrichment claim: "It is undisputed that a valid contract existed between [the college and the plaintiff]. Because it did not require an in-person, on-campus education or student activities, or student activities during the Lost Week, the court cannot supply those missing contract terms through the doctrine of unjust enrichment." *Id.* at *33 (citations omitted). The same conclusion is warranted here.

### C. *Cordero v. Montana State University*

In *Cordero*, the Montana Supreme Court affirmed summary judgment for the university on breach of contract claims in a similar case. 553 P.3d 422, 425 (Mont. 2024) (decided Aug. 6, 2024), attached as Ex. F. The court held that the student had failed to identify evidence of a promise for a "complete in-person, on-campus educational experience." *Id.* at 428-29. Moreover, the university had a clear disclaimer that reserved its rights to change the very experience the student claimed was promised. *Id.* at 428-29. The court "[could] not fathom upholding a prorated refund of tuition and fees for [the university] being forced to close due to inclement weather that prohibits classes," implying that such a holding in light of a global pandemic was equally unreasonable. *Id.* at 429. Notably in the instant case, the University has previously canceled classes due to inclement weather and did not offer prorated refunds in those instances either. Doc. 43 at 9, 24.

### D. Michigan Court of Appeals Decisions

In December 2024, the Michigan Court of Appeals entered several decisions in favor of universities on tuition and fee refund cases.

#### i. *Stenger v. Ferris State University*

In *Stenger*, the Michigan Court of Appeals affirmed summary judgment for the university-

defendant on breach of contract and unjust enrichment claims. No. 358050, 2024 Mich. App. LEXIS 9658, at *22 (Dec. 4, 2024), attached as Ex. G. The court held that there was no evidence of an express promise to provide in-person instruction under all circumstances, and, like the University here, Ferris State University ("FSU") had reserved its right to change the delivery of instruction in its catalog, which also defeated the student's implied contract theory. *Id.* at *16-17. Similarly, the student had not identified any language capable of supporting the argument that the university promised specific services to be provided in exchange for fees. *Id.* at *19.

Finally, the court confirmed that the university was entitled to summary judgment on the unjust enrichment claims, specifically noting:

> Considering that the charges were necessitated by an unexpected global pandemic, that FSU still provided the essence of what it had intended to provide—educational instruction and various services for students—throughout the pandemic, that the fees continued to fund staff and maintenance expenses in accordance with the ordinary general purpose of the fees, and that there was no evidence of any agreement to provide education and services in any particular format, it is not *inequitable* or *unjust* for FSU to retain the tuition and fees it collected.

*Id.* at *21-22 (emphasis in original). The same is true of the University in the instant case.

    ii.  *Garland v. Western Michigan University*

In *Garland*, the Michigan Court of Appeals reversed the trial court and granted summary judgment for the university on breach of contract and unjust enrichment claims based both on tuition and fees. No. 356156, 2024 Mich. App. LEXIS 9663, at *1 (Dec. 4, 2024), attached as Ex. H. The court noted that the student had failed to identify any evidence to support the specific promise of in-person instruction or provision of specific services for the entire semester in exchange for tuition and fees. *Id.* at *12-13. The court further criticized the student's failure to identify the specific services that the student claimed should have been provided in exchange for fees, *id.* at *11—a failure Eddlemon likewise makes in his fee claims. Regarding the unjust

7

enrichment claims, the court held that there was no dispute that the relationship between the parties was contractual, and thus there was no basis for the unjust enrichment claims. *Id.* at *13-14.

### iii. *Allen v. Michigan State University*

In *Allen*, the Michigan Court of Appeals affirmed summary judgment for the university. Nos. 358135, 358136, 358137, 2024 Mich. App. LEXIS 9668, at *1 (Dec. 4, 2024), attached as Ex. I. The court first determined that the students had been unable to identify any evidence that the university "affirmatively promised and committed itself to providing only in-person instruction under all circumstances for the entire semester in exchange for tuition," or for specific on-campus services in exchange for fees. *Id.* at 33. By contrast, the university expressly reserved its rights to make changes to its programs and services, *id.* at *34, just as the University did in the instant case. The reservation of rights defeated both the express and implied contract theories. *Id.* at *39-40.

The *Allen* court also held that "it is wholly fair and just" for the university to retain the tuition and fees it collected during the pandemic because the university "successfully maintained the core of its educational mission—providing instruction and various services for students[.]" *Id.* at 40-41. As such, the university was entitled to summary judgment on the student's unjust enrichment claims. *Id.* at *41.

### iv. *Simmons v. Northern Michigan University Board of Trustees*

In *Simmons*, the Michigan Court of Appeals once again ruled in favor of the university, holding that the student failed to identify any evidence supporting an express or implied contract for in-person instruction. No. 358204, 2024 Mich. App. LEXIS 9653, at *6-8 (Dec. 4, 2024), attached as Ex. J. "Even assuming there is a general implied right to receive education and services in exchange for tuition and fees, . . . there is no legal authority supporting the contention that such an implied right extends to the precise manner of instructional delivery or type of service[.]" *Id.* at

8

*8 (internal citations omitted). Where the university had an "express written indication" that courses were subject to change, as the University does in this case, "there is no genuine issue of material fact that 'there was no offer—and thus no meeting of the minds—on any specific format for delivering education and services, and therefore, no enforceable contractual promise on these matters." *Id.* at *8-9.

The court likewise confirmed that the student did not have a viable unjust enrichment claim where the university continued to provide education and services, even if "in a manner that may have differed from the customary offerings." *Id.* at *11-12. Accordingly, the student could not prove that the university's retention of tuition and fees was unjust. *Id.* at *12-13.

   v.  ***Paymon v. Wayne State University***

In *Paymon*, the Michigan Court of Appeals affirmed summary judgment for the defendant university. No. 358128, 2024 Mich. App. LEXIS 9656, at *1 (Dec. 4, 2024), attached as Ex. K. The court confirmed that the student had not presented any evidence, "written or oral," that the university "had ever made a promise to provide exclusively in-person instruction under all circumstances in exchange for tuition or any particular type of student services (on campus or otherwise) under all circumstances in exchange for fees," *id.* at *11, similar to the lack of evidence Eddlemon presented on the same issues.

The court further noted that the student's attempt to rely on the university publications and a prior course of conduct did not establish the type of concrete promise required to carry her burden of proof on her breach implied contract claim. *Id.* at *13-14. The court also affirmed judgment for the university on the student's unjust enrichment claim due to the existence of a contract that governed the dispute. *Id.* at *16-17.

## CONCLUSION

The opinions discussed above, which were issued after briefing concluded on class certification and summary judgment, and after the University's most recent notices of supplemental authority, address central issues to those motions and demonstrate numerous parallels to the matters pending before this Court.

WHEREFORE, the University respectfully requests this Court take notice of these supplemental authorities in ruling on the University's Opposition to Class Certification and the University's Motion for Summary Judgment, grant the University's Opposition to Class Certification, grant the University's Motion for Summary Judgment, and grant any other relief this Court deems equitable and just.

Dated: March 3, 2025

Respectfully submitted,

**BRADLEY UNIVERSITY**

By: /s/ *Kara E. Angeletti*
Gregory E. Ostfeld (Attorney No. 6257163)
ostfeldg@gtlaw.com
Tiffany S. Fordyce (Attorney No. 235063)
fordycet@gtlaw.com
Kara E. Angeletti (Attorney No. 6329388)
angelettik@gtlaw.com
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400

*Attorneys for Bradley University*

## CERTIFICATE OF SERVICE

I, Kara E. Angeletti, certify that on March 3, 2025, a true and correct copy of **Defendant's Motion for Leave to File Notice of Supplemental Authority in Support of Defendant's Opposition to Class Certification and Defendant's Motion for Summary Judgment** was served electronically through the Central District of Illinois CM/ECF electronic filing on all counsel of record.

/s/ *Kara E. Angeletti*

One of Defendant's Attorneys